## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THINGS REMEMBERED, INC., *et al.*,[1] | ) Case No. 19-10234 (KG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 23** |

**ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS, (B) SCHEDULING AN AUCTION AND A SALE HEARING, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures"), (b) approving the Bid Protections to the Stalking Horse Bidder, (c) approving the form and manner of notice of the Auction and the Sale Hearing with respect to the Sale of all or substantially all of the Debtors' assets (the "Assets," as further defined in the Bidding Procedures), (d) scheduling an Auction and a Sale Hearing, and (e) establishing notice and procedures for the assumption and assignment of certain executory contracts and leases; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Things Remembered, Inc. (2696); TRM Holdco Corp. (5858); and TRM Holdings Corporation (2354). The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, **THE COURT FINDS THAT:**

A.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  The bases for the relief requested in the Motion are: (i) sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"); (ii) Rules 2002(a)(2), 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"); and (iii) Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.  Notice of the Motion has been given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Prepetition Agent; (iv) counsel to the Prepetition Agent; (v) the United States Attorney's Office for the District of Delaware; (vi) the Internal

Revenue Service; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) counsel to the Stalking Horse Bidder; (ix) all parties who have expressed a written interest in some or all of the Assets; (x) all known holders of liens, encumbrances, and other claims secured by the Assets; (xi) all parties to the Contracts to be assumed and assigned as part of the proposed Sale, and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.

E.    The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) schedule the Auction and Sale Hearing and approve the manner of notice of the Auction, Sale, and Sale Hearing; (iii) approve the procedures for the assumption and assignment of the Contracts, including notice of proposed cure amounts; and (iv) approve the Bid Protections as provided in the Stalking Horse APA and in this Order.

F.    The Bid Protections are (x) the product of extensive negotiations between the Debtors and the Stalking Horse Bidder, (y) a material inducement for, and condition of, the Stalking Horse Bidder's entry into the Stalking Horse APA, and (z) fair and reasonable in view of the fact that, if the Bid Protections are triggered, the Stalking Horse Bidder's efforts will have substantially increased the chances that the Debtors will receive the highest or otherwise best offer for the Acquired Assets. The Debtors have demonstrated a compelling business justification of the payment of the Breakup Fee and Expense Reimbursement (together, the "Bid Protections") under the circumstances set forth in the Stalking Horse APA and the Motion. The Bid Protections (i) are payable as provided in Section 9.2 of the Stalking Horse APA; (ii) are an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of Bankruptcy Code sections 503(b)(1) and 507(a)(2); (iii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder;

(iv) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to better and higher offers for the Acquired Assets; (v) was necessary to induce the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse APA; and (vi) is necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed acquisition of the Acquired Assets contemplated by the Stalking Horse APA.

G. The Bid Protections were a material inducement to, and express condition of, the Stalking Horse Bidder's willingness to submit a bid through execution of the Stalking Horse APA that will serve as a minimum or floor bid on which the Debtors, their creditors, suppliers, vendors, and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that, given the circumstances, the best possible price for the Acquired Assets (as defined in Stalking Horse APA) will be received. Accordingly, the Bidding Procedures and the Bid Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

H. The Bidding Procedures and the Stalking Horse APA were negotiated by the parties at arms' length and in good faith by the Debtors and the Stalking Horse Bidder.

I. The Motion, this Order, and the assumption and assignment procedures set forth herein are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtors and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

J. The sale notice, substantially in the form attached hereto as **Exhibit 2** (the "Sale Hearing Notice"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets to be sold; (v) instructions for obtaining copies of the Stalking Horse APA; (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable Purchase Agreement), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; (vii) notice of the proposed assumption and assignment of Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse APA (or to another Successful Bidder arising from the Auction, if any), and no other or further notice of the sale shall be required.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as provided herein.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

**I.    Important Dates and Deadlines.**

| Event | Date |
|---|---|
| Bid Deadline | February 28, 2019 |
| Contract Objection Deadline | March 1, 2019 |

{1229.002-W0054065.6}

| Event | Date |
|---|---|
| Sale Objection Deadline (except for Non-Stalking Horse Adequate Assurance Objections) | March 1, 2019 |
| Auction | March 4, 2019 |
| Non-Stalking Horse Adequate Assurance Objection Deadline | March 5, 2019 (noon prevailing Eastern Time) |
| Sale Hearing | March 6, 2019 |

3. **Notice of Successful Bidder.** The Debtors shall file a notice identifying the Successful Bidder as soon as practicable following the conclusion of the Auction.

4. **Sale Hearing.** The Sale Hearing shall commence on or before March 6, 2019, at __:__ a.m. (prevailing Eastern Time) before the Honorable Kevin Gross, at the Court, 824 North Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801. Upon entry of this Order, the Debtors are authorized to perform any obligations of the Debtors set forth in the Stalking Horse APA or other applicable Purchase Agreement that are intended to be performed prior to the Sale Hearing or entry of the Sale Order. The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

5. **Sale Objection Deadline.** Except for objections to the adequate assurance of future performance by a Bidder that is not the Stalking Horse (a "Non-Stalking Horse Adequate Assurance Objection"), which must be made on or before March 5, 2019 at noon (prevailing Eastern Time) (the "Non-Stalking Horse Adequate Assurance Objection Deadline"), objections, if any, to the Sale must be made on or before March 1, 2019, at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). Objections (including any Non-Stalking Horse Adequate

Assurance Objection) must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be *actually received* no later than the Sale Objection Deadline or Non-Stalking Horse Adequate Assurance Objection Deadline (as applicable) by the following parties:

| Counsel to the Debtors | Co-Counsel to the Debtors |
|---|---|
| Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn.: Angela Snell and Catherine Jun | Landis Rath & Cobb LLP<br>919 North Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Attn.: Adam G. Landis |
| Counsel to the Committee | The United States Trustee |
| Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn.: Eric R. Wilson and Jason R. Adams<br><br>Connolly Gallagher LLP<br>267 East Main Street<br>Newark, Delaware 19711<br>Attn: N. Christopher Griffiths | Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207, [Lockbox 35],<br>Wilmington, Delaware 19801<br>Attn: Timothy J. Fox |
| Counsel to the Prepetition Agent under the Debtors' Prepetition Credit Facility | Counsel to the Stalking Horse Bidder |
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn.: David N. Griffiths<br><br>Richards, Layton & Finger, P.A.<br>920 N. King Street<br>Wilmington, Delaware 19801<br>Attn: Zachary I. Shapiro | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, California 90067<br>Attention: Jeffrey N. Pomerantz<br>Maxim B. Litvak<br>E-mail: jpomerantz@pszjlaw.com<br>mlitvak@pszjlaw.com |

6. A party's failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale with the Successful Bidder pursuant to the applicable Purchase Agreement, including the assumption and assignment of the Contracts to the

{1229.002-W0054065.6}

Successful Bidder pursuant to the applicable Purchase Agreement, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation, such assumption and assignment. All rights to the extent they exist are reserved for a party to later seek relief from the Court, and the Debtors and all other parties reserve all defenses.

7. **Bid Deadline**. The deadline by which all Bids for the Debtors' Assets must be *actually received* by the parties specified in the Bidding Procedures is 5:00 p.m. (prevailing Eastern Time), on February 28, 2019 (the "Bid Deadline").

8. **Auction**. March 4, 2019 at 10:00 a.m. (prevailing Eastern Time), is the date and time the Auction, if one is needed. Such Auction will be held at the offices of counsel to the Debtors: Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022-4611, or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids. The Auction shall be transcribed by a court reporter. As set forth more fully in the Bidding Procedures, only Qualified Bidders shall be permitted to participate at the Auction, however, any party in interest may attend the Auction.

II. **Auction, Bidding Procedures, and Related Relief.**

9. The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets. Any party desiring to bid on the Assets or a portion thereof shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

10. The Stalking Horse Bidder is deemed a Qualified Bidder, and the Stalking Horse Bid as set forth in the Stalking Horse APA is deemed a Qualified Bid.

11. If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid): (a) the Debtors will not hold the Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Acquired Assets; and (c) the Debtors shall be authorized to seek approval of the Stalking Horse APA at the Sale Hearing.

12. If the Debtors receive one or more Qualified Bids from Qualified Bidders (other than the Stalking Horse Bidder), then the Debtors shall conduct the Auction in accordance with the Bidding Procedures.

13. Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or videotaped.

14. The Prepetition Agent, on behalf of the Prepetition Lenders (as defined herein), shall be deemed to be a Qualified Bidder and, subject to section 363(k) of the Bankruptcy Code, may submit a credit bid of the Prepetition Lenders' secured claim within the meaning of section 363(k) at any time during the Auction, unless otherwise ordered by this Court for cause; *provided, however*, that the Prepetition Agent shall not credit bid against the Stalking Horse Bid (excluding, for the avoidance of doubt, any subsequent Bid by the Stalking Horse Bidder).

15. In consultation with the Consultation Parties, the Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer; (b) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any Bid (other than the Stalking Horse Bid) that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in

conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders; and (c) at or before the conclusion of the Auction, may impose additional terms and conditions upon Qualified Bidders as the Debtors determine, in consultation with the Consultation Parties, to be in the best interests of the Debtors' estates in these cases.

16. No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### III. Breakup Fee and Expense Reimbursement.

17. The Breakup Fee and Expense Reimbursement are approved on the terms set forth in the Stalking Horse APA. The Debtors are authorized and directed to pay any and all amounts owing to the Stalking Horse Bidder on account of the Breakup Fee within three (3) Business Days following the consummation of an Acquisition Proposal (as defined in the Stalking Horse APA) to the extent provided in the Stalking Horse APA. On or before the third (3rd) business day following the termination of the Stalking Horse APA to the extent provided therein, the full amount of the Expense Reimbursement shall be deemed to be transferred into a segregated account which funds shall only be used to pay the Expense Reimbursement subject to the objection period set forth in the next sentence and such funds shall be deemed not to constitute property of the Debtors' estates, <u>provided, however,</u> that if any amount of the Expense Reimbursement is disallowed by the Court, such funds shall be deemed to (i) have been transferred from the segregated account to the Debtors, and (ii) be property of the Debtors'

estates. Documentation regarding the Expense Reimbursement shall be provided to counsel to the Debtors, the Prepetition Agent, the official committee appointed in these chapter 11 cases and the Office of the United States Trustee for the District of Delaware, who shall have a 14-day review period and opportunity to object. If an objection is submitted in writing to the Stalking Horse Bidder prior to the expiration of the 14-day review period, the portion of the Expense Reimbursement subject to any such objection shall not be paid until the objection is resolved.

18. The Breakup Fee and the Expense Reimbursement (if payable under the Stalking Horse APA in accordance with its terms and the terms of this Order, and until such Breakup Fee and/or Expense Reimbursement is paid) shall be an allowed superpriority administrative expense claim in the Debtors' chapter 11 cases pursuant to sections 503(b)(1) and 507(a)(2).

## IV. Assumption and Assignment Procedures.

19. The procedures set forth below regarding the assumption and assignment of the Contracts (each, an "Assigned Contract," and, collectively, the "Assigned Contracts") proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to section 364(f) of the Bankruptcy Code in connection with the Sale (the "Assumption Procedures") are hereby approved to the extent set forth herein.

20. These Assumption Procedures shall govern the assumption and assignment of all of the Debtors' Assigned Contracts to be assumed and assigned in connection with the Sale under the Stalking Horse APA, subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "Cure Payments"):

    a.    **Initial Cure Notice.** On February 15, 2019, the Debtors served a notice of potential contract assumption (the "Initial Cure Notice"), in the form attached hereto as **Exhibit 3** via first class mail on all counterparties to all potential Assigned Contracts and provided a copy of the same to the

    Stalking Horse Bidder and the Consultation Parties. The Initial Cure Notice informed each recipient of (i) the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (ii) the title or a description of the executory contract or lease, (iii) the name of the counterparty to the executory contract or lease, (iv) the Debtors' good faith estimates of the Cure Payments (if any) required in connection with the executory contract or lease, and (v) the Sale Objection Deadline.

b. **The Contract Assumption Notice.** Within 1 business day of entry of this Order (the "Assumption and Assignment Service Deadline"), the Debtors shall post on their case website (http://cases.primeclerk.com/ThingsRemembered) and serve an amended notice of contract assumption (the "Contract Assumption Notice" and together with the Initial Cure Notice, the "Contract Notices"), in substantially the form attached hereto as **Exhibit 4** via email, facsimile or overnight mail on all counterparties to all potential Assigned Contracts and provide a copy of the same to the Stalking Horse Bidder and the Consultation Parties. The Contract Assumption Notice shall inform each recipient of (i) the timing and procedures relating to assumption and assignment, (ii) the identity of the Stalking Horse Bidder (as assignee, if applicable), (iii) the Sale Objection Deadline, and (iv) the Non-Stalking Horse Adequate Assurance Objection Deadline; provided, however, that service of the Contract Notices do not constitute an admission that any contract is an executory contract or unexpired lease or that the stated Cure Payment constitutes a claim against the Debtors or a right against the Stalking Horse Bidder (or other Successful Bidder, and all rights with respect thereto being expressly reserved). Further, the inclusion of a contract on the Initial Cure Notice is not a guarantee that such contract will ultimately be assumed and assigned.

c. **Cure Payments.** The payment of the applicable Cure Payments by the Debtors and/or Stalking Horse Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder, and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

d. **Adequate Assurance Information.** Within 24 hours of the Bid Deadline, the Debtors shall distribute, on a confidential basis, Adequate Assurance Information received from Bidders besides the Stalking Horse to all counterparties to potential Assigned Contracts. The Stalking Horse shall distribute the Stalking Horse's Adequate Assurance Information to counterparties to potential Assigned Contracts immediately upon its receipt of an executed confidentiality agreement from such counterparties.

e. **Supplemental Contract Assumption Notice.** To the extent the Debtors, at any time after the Assumption and Assignment Service Deadline (i) identify additional Assigned Contracts to be assumed and assigned to

the Stalking Horse Bidder or Successful Bidder, (ii) remove Assigned Contracts from the list of executory contracts and leases ultimately selected as Assigned Contracts that the Stalking Horse or a Successful Bidder, as applicable, proposes be assumed and assigned to it in connection with a Sale, (iii) and/or modify the previously stated Cure Payment associated with any Assigned Contracts, the Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such Assigned Contracts and their counsel of record, if any. Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Notices. The Stalking Horse Bidder may designate additional Assigned Contracts to be assumed and assigned up to two business days prior to closing, and may remove Assigned Contracts from the list of Assigned Contracts up to two business days prior to closing. The recipient of a Supplemental Assumption Notice shall have no less than three (3) Business Days to object to the proposed Cure Amount(s) and/or the assumption and assignment of the potential Assigned Contract(s) listed in the Supplemental Assumption Notice.

f. **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (w) proposed counsel and co-counsel to the Debtors, (x) counsel to the Stalking Horse Bidder, (y) the Notice Parties (as defined in the Bidding Procedures), and (z) any other party that has filed a notice of appearance in these chapter 11 cases, so as actually to be received on or before the Sale Objection Deadline, the Non-Stalking Horse Adequate Assurance Objection Deadline or the deadline set forth in the Supplemental Assumption Notice, as applicable.

g. **Dispute Resolution**. In the event that the Debtors and the non-debtor counterparty cannot resolve any objection to the Cure Payment, the Assigned Contract may be assumed by the Debtors and assigned to the Stalking Horse Bidder or Successful Bidder, as applicable, *provided that* the Debtors shall segregate the cure amount that the counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties. Any objection to the proposed assumption and assignment of a contract or related cure proposed in connection with the Sale that remains unresolved as of the commencement of the Sale Hearing shall be heard at the Sale Hearing or a later date as

may be fixed by the Court and/or agreed by the Debtors, the applicable counterparty and the Stalking Horse Bidder or Successful Bidder, as applicable.

h. **Contract Assumption**. No Assigned Contract shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Assigned Contracts or (ii) the date the Sale has closed.

21. Any party failing to timely file an objection to the cure amount or the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Contract Notices or a Supplemental Assumption Notice, as applicable, is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract, (c) the related relief requested in the Motion, and (d) the Sale. Such party may be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, or Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

V. **Sale Hearing Notice.**

22. The Sale Hearing Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. Within one (1) business day following entry of this Order, the Debtors shall cause the Sale Hearing Notice to be served on: the following parties or their respective counsel, if known: (a) the Notice Parties (as defined in the Bidding Procedures); (b) counsel to the Stalking Horse Bidder; (c) all parties to executory contracts and leases to be assumed and

{1229.002-W0054065.6}

assigned, or rejected as part of the proposed Sale; (d) all parties who have expressed a written interest in some or all of the Assets; (e) all known holders of liens, encumbrances, and other claims secured by the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) the Federal Trade Commission; (i) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (j) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

## VI. Miscellaneous.

23. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

24. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

25. This Court exclusive retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: February 21, 2019
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE