**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| THINGS REMEMBERED, INC., *et al.*,[1] | ) ) Case No. 19-10234 (KG) |
| Debtors. | ) ) (Joint Administration Requested) ) ) **Re: Docket Nos. 22 & 70** |

**FINAL ORDER (A) AUTHORIZING POSTPETITION USE
OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED LENDERS, (C) MODIFYING THE
AUTOMATIC STAY AND (D) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 22] (the "Motion") of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for entry of an interim order (the "Interim Order") and a final order (this "Final Order"): (a) authorizing the Debtors, pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of this Final Order, and (ii) provide adequate protection to Cortland Capital Market Services LLC ("Cortland"), as administrative agent (in such capacity, the "Prepetition Agent") under the Credit Agreement (as defined herein), and the other Prepetition Secured Lenders (as defined herein); (b) authorizing the grant of adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Bankruptcy Code sections

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Things Remembered, Inc. (2696); TRM Holdco Corp. (5858); and TRM Holdings Corporation (2354). The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

544, 545, 547, 548, 549, and 550 or any other similar state or federal law (collectively, the "Avoidance Actions"); (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order; (d) except to the extent of the Carve Out (as defined herein), waiving all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law; and (e) granting related relief; and the Court having considered the Motion, the *Declaration of Robert J. Duffy, Chief Restructuring Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 22] (the "First Day Declaration"), the evidence submitted or adduced and the arguments of counsel made at the hearing to consider the entry of, among other things, the Interim Order (the "Interim Hearing"), and the hearing, if any, to consider entry of the Final Order (the "Final Hearing"), and the record of these Chapter 11 Cases; and notice of the Motion, the Interim Hearing and the Final Hearing, if any, having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the applicable Local Rules; and all objections, if any, to the relief requested in the Motion on a final basis having been withdrawn, resolved, or overruled by the Court; and it appearing that entry of this Final Order is in the best interests of the Debtors, their estates, creditors, and equity holders, and essential for the maximization of the assets of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A.      <u>Petition Date</u>.  On February 6, 2019 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

B.      <u>Debtors in Possession</u>.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  No trustee or examiner has been appointed in these chapter 11 cases.  On February 15, 2019, the Office of the U.S. Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "<u>Creditors' Committee</u>").

C.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these proceedings, and the persons and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.      <u>Debtors' Representations</u>.  Subject to the limitations contained in paragraph 4 below, the Debtors represent, admit, stipulate, and agree (collectively, the "<u>Debtors' Stipulations</u>") as follows:

(i)      *Loan Documents*.  Prior to the Petition Date, certain of the Prepetition Secured Parties (as defined herein) made certain loans, advances, and other extensions of credit pursuant to that certain Credit Agreement, dated as of May 24, 2012 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified, the "<u>Credit Agreement</u>"

---

[2]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052.

and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Loan Documents" (as defined therein) the "Loan Documents"), by and among Things Remembered, Inc., as borrower ("TRM"), and TRM Holdings Corporation, as holdings ("TRM Holdings", and together with TRM, collectively, the "Loan Parties"), the Term Lenders (as defined in the Credit Agreement) from time to time party thereto (the "Secured Term Lenders"), the Revolving Credit Lenders (as defined in the Credit Agreement) from time to time party thereto (the "Secured Revolving Lenders", and together with the Secured Term Lenders, collectively the "Prepetition Secured Lenders"), and the Prepetition Agent (collectively with the Prepetition Secured Lenders, and any other "Secured Party" (as defined in the Credit Agreement), the "Prepetition Secured Parties"). All indebtedness, liabilities, and obligations under the Loan Documents, specifically to the extent constituting "Obligations" (as defined in the Credit Agreement), including with respect to (i) the Revolving Credit Facility (as defined in the Credit Agreement; such obligations the "Revolving Credit Obligations") and (ii) the Term Facility (as defined in the Credit Agreement; such obligations, the "Term Obligations"), are collectively referred to herein as the "Prepetition Secured Obligations".  Each of the Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Loan Parties in accordance with its terms.

(ii)    *Revolving Credit Obligations*.  As of the Petition Date, the Loan Parties were justly and lawfully indebted and liable under the Loan Documents, without defense, counterclaim, or offset of any kind to the Secured Revolving Lenders, and in the aggregate amount of not less than $18,723,738.81 in respect of loans and other financial accommodations

made by the Secured Revolving Lenders, including accrued and unpaid interest, fees, and costs and expenses with respect to the foregoing.

(iii)    *Term Obligations*.  As of the Petition Date, the Loan Parties were justly and lawfully indebted and liable under the Loan Documents, without defense, counterclaim, or offset of any kind to the Secured Term Lenders in the aggregate amount of not less than $124,921,105.40 in respect of loans and other financial accommodations made by the Secured Term Lenders, pursuant to, and in accordance with, the Loan Documents, including accrued and unpaid interest, fees, and costs and expenses with respect to the foregoing.

(iv)    *Liens and Collateral*.  Pursuant to and as more particularly described in the Loan Documents, the Prepetition Secured Obligations are secured by, among other things, first priority liens and mortgages on, security interests in, and assignments and pledges of (collectively, the "Prepetition First Priority Liens"), all of the Loan Parties' right, title, and interest in substantially all of the Loan Parties' property, other than certain excluded assets (as more fully described in the Loan Documents, the "Prepetition Collateral"), subject to any other valid, perfected, and unavoidable lien or security interest otherwise existing as of the Petition Date that is senior to the security interest of the Prepetition Secured Parties (collectively, the "Permitted Prior Liens" and each a "Permitted Prior Lien").

(v)    *Validity of Prepetition First Priority Liens and Prepetition Secured Obligations*.  The Prepetition First Priority Liens are (a) valid, binding, perfected, duly recorded and enforceable liens on, and security interests in, all of the Prepetition Secured Parties' respective right, title, and interest in, and to, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable,

contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "<u>claim</u>" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity.  The Prepetition First Priority Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted in consideration of the making and/or continued making of loans, commitments, and/or other financial accommodations under the Loan Documents.  No portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law.

(vi)     *Adequate Protection for the Prepetition Secured Parties*.  As a result of the authorization for the Debtors to use the Cash Collateral, the use, sale, or lease of the Prepetition Collateral, and the imposition of the automatic stay, the Prepetition Secured Parties are entitled to receive adequate protection pursuant to Bankruptcy Code sections 361, 362, 363, and 364 for any diminution in the value, from and after the Petition Date, of their interests in the Prepetition Collateral (including the Cash Collateral) resulting from the automatic stay and/or from the Debtors' use, sale or lease of the Prepetition Collateral, or otherwise during the chapter 11 cases. As adequate protection, the Prepetition Secured Parties will receive the adequate protection described in this Final Order (including the adequate protection set forth in paragraph 8 hereof). In light of such adequate protection, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral, solely on the terms and conditions set forth in this Final Order. The adequate protection provided herein and other benefits and privileges contained

herein are consistent with and authorized by the Bankruptcy Code and are necessary to obtain such consent.

E.      <u>Good Cause</u>.  Good cause has been shown for entry of this Final Order, and the entry of this Final Order is in the best interests of the Debtors and their estates and creditors. Among other things, the relief granted herein will permit the Debtors to preserve and maintain the value of their assets. The stipulated terms of the Debtors' use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Final Order, are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

F.      <u>Good Faith</u>.  The Debtors' use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtors and the Prepetition Secured Parties and the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral shall be deemed to have been made in "<u>good faith.</u>"

G.      <u>Notice</u>.  The Debtors have caused notice of the Motion, the Interim Hearing and the Final Hearing and the relief requested therein to be provided by facsimile, email, overnight courier, or hand delivery on the following parties: (i) the Office of the U.S. Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Prepetition Agent; (iv) counsel to the Prepetition Agent; (v) the United States Attorney's Office for the District of Delaware; (vi) the Internal Revenue Service; (vii) the state attorneys general for all states in which the Debtors conduct business; (viii) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in the Prepetition Collateral; (ix) the Creditor's Committee; and (x) any party that requests service pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the

Debtors of the Motion, the relief requested therein, and of the Final Hearing is good, sufficient, and appropriate and complies with Bankruptcy Rules 2002, 4001(b), (c), and (d).

**BASED UPON THE STIPULATED TERMS SET FORTH HEREIN, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      <u>Motion Granted</u>.  The Motion is GRANTED to the extent provided herein on a final basis.  Any objection to the relief requested in the Motion to the extent not withdrawn or resolved is hereby overruled.  Except as otherwise set forth herein, the Interim Order is hereby ratified in all respects as it was in effect from the date of entry through and including entry of this Final Order.

2.      <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order, the Court hereby authorizes the Debtors to use the Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined herein) (such period, the "<u>Budget Period</u>"), for the disbursements set forth in the 13-week cash disbursements and receipts budget (which budget shall include a 13-week forecast of transaction costs and capital expenditures) attached as **<u>Exhibit 1</u>** hereto (as such budget may be modified from time to time by the Debtors with the prior written consent of the Prepetition Agent as set forth in this paragraph and in paragraph 3(a) of this Final Order (the "<u>Budget</u>"), and for no other purposes.

3.      <u>Budget</u>.

(a)      Subject to the deviation allowance(s) provided below (each a "<u>Permitted Deviation</u>"), the Debtors will not permit for any applicable Measurement Period (as defined herein):  (i) the actual receipts and collections during such Measurement Period to be less than

8

ninety percent (90%) of the projected receipts set forth on the Budget for such Measurement Period; or (ii) the actual disbursements during such Measurement Period to exceed one hundred ten percent (110%) of the projected disbursements set forth on the Budget for such Measurement Period (excluding for purposes of Budget testing set forth in this paragraph 3(a), Allowed Professional Fees (as defined in paragraph 15(a) of the Final Order), Adequate Protection Fees (as defined in paragraph 8(d) of the Final Order), and payments to the U.S. Trustee).   The Debtors shall be permitted to carry forward unused amounts to successive weeks on a line-by-line basis for purposes of Budget testing set forth in this paragraph 3(a), with no carry-over surplus to any other line item(s) or to a Subsequent Budget Period (as defined herein), if any, except to the extent agreed to in writing as set forth in this paragraph.  The Prepetition Agent may, in its sole discretion, agree in writing to the use of the Cash Collateral (i) in a manner or amount which does not conform to the Budget (other than Permitted Deviations) (each such approved non-conforming use of Cash Collateral, a "<u>Non-Conforming Use</u>") or (ii) for the period following the extension of the Termination Date pursuant to paragraph 5 of this Final Order (such period, the "<u>Subsequent Budget Period</u>").  If such written consent is given, the Debtors shall be authorized pursuant to this Final Order to expend Cash Collateral for any such Non-Conforming Use or any such Subsequent Budget Period in accordance with a subsequent Budget (a "<u>Subsequent Budget</u>") without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Final Order for any such use of Cash Collateral; *provided* that each such permitted Non-Conforming Use shall be deemed a modification to the Budget for all testing purposes.  The Debtors shall provide notice of any Non-Conforming Use, Subsequent Budget Period and Subsequent Budget to the  United States Trustee and the Creditors' Committee.

(b)        Commencing on the date of entry of the Interim Order, and continuing every week thereafter, the Debtors shall deliver to the Prepetition Agent, with a copy to the Creditors' Committee, a weekly sales report.

(c)        During any Remedies Notice Period (as defined herein), the Debtors may only use Cash Collateral to pay the following amounts and expenses solely in accordance with the respective Budget line items: (i) the Carve-Out (as defined herein); (ii) obligations for unpaid and accrued payroll and sales taxes; (iii) other expenses critical to keeping the business operating; and (iv) any such other obligations subject to the prior written consent of the Prepetition Agent.

(d)        Notwithstanding anything to the contrary set forth in this Final Order, the Cash Collateral and the Carve Out may not be used:  (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Prepetition Secured Parties or seek relief that would impair the rights and remedies of the Prepetition Secured Parties under the Loan Documents or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief that would impair the ability of the Prepetition Secured Parties to recover on the Prepetition Secured Obligations or seeking affirmative relief against the Prepetition Secured Parties; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Secured Obligations

or Prepetition First Priority Liens on the Prepetition Collateral; or (C) for monetary, injunctive, or other affirmative relief against the Prepetition Secured Parties or their Prepetition First Priority Liens on the Prepetition Collateral that would impair the ability of the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Secured Obligations; (ii) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, lien, or interests (including the Prepetition First Priority Liens) held by or on behalf of the Prepetition Secured Parties; (iii) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions against the Prepetition Secured Parties; or (iv) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Prepetition First Priority Liens or any other rights or interests of the Prepetition Secured Parties; *provided, however*, an amount up to $100,000.00 of Cash Collateral nevertheless may be used by the Creditors' Committee solely to investigate the foregoing matters within the Challenge Period (as defined herein).

4.    Effect of Stipulation on Third Parties.

(a)    *Generally*.    The representations, admissions, stipulations, agreements, releases, and waivers set forth in this Final Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtors, their estates and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtors), creditors, responsible persons, examiners with expanded powers, any other estate representative, and all parties in interest and all of their successors in interest and assigns, including, without limitation, the Creditors' Committee, unless, and solely to the extent that, a

party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined herein) is irrevocably waived and relinquished) (a) has timely filed the appropriate papers, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 3(d) of this Final Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (i) with respect to parties in interest other than the Creditors' Committee, seventy-five (75) calendar days from the date of entry of the Interim Order, and (i) with respect to the Creditors' Committee, the earlier of (x) sixty (60) calendar days from the date of appointment of the Creditors' Committee and (y) the date of entry of this Final Order, as the applicable period may be extended by the Court for good cause shown pursuant to an application filed by a party in interest before the expiration of the Challenge Period (as defined herein), or otherwise extended in writing from time to time in the sole discretion of the Prepetition Agent (with respect to the Loan Documents) (as applicable for clauses (i) and (ii), the "Challenge Period"); and (b) the Court enters judgment in favor of the plaintiff or movant in any such timely and property commenced Challenge proceeding, and any such judgment has become final and is not subject any further review or appeal.

(b)    *Binding Effect.*    To the extent no Challenge is timely and properly commenced during the Challenge Period by a party with requisite standing, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file

any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on the Debtors, their estates, all creditors, any person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case (as defined herein) for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. More specifically, as to (i) any parties in interest, including the Creditors' Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (ii) any and all matters that are not expressly the subject of a timely Challenge: (A) any and all such Challenges by any party (including, without limitation, the Creditors' Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in these Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Cases (as defined herein)), shall be deemed to be forever waived and barred, (B) all of the findings, Debtors' Stipulations, waivers, releases, affirmations, and other stipulations hereunder as to the priority, extent, validity, and enforceability as to the Prepetition Secured Parties' claims, lien, and interests shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (C) the Prepetition Secured Parties and each their respective agents, officers, directors, employees, attorneys, consultants, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Prepetition Lien and Claim Matters and shall not be subject to any further objection or challenge by any party at any time.

(c)    *No Standing*. Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors and/or their bankruptcy estates, including, without limitation, any Challenge with respect to the Loan Documents or the Prepetition Secured Obligations.

5.    <u>Termination Date</u>.    The Debtors' authorization, and the Prepetition Secured Parties' consent, to use Cash Collateral in accordance with this Final Order shall terminate on the earliest to occur of (the "<u>Termination Date</u>"):  (i) June 1, 2019, unless such date is extended pursuant to the written consent by the Prepetition Agent; (ii) the termination or non-consensual modification of this Final Order or the failure of this Final Order to be in full force and effect; (iii) the entry of an order of this Court terminating the Debtors' right to use Cash Collateral; (iv) the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (individually, a "<u>Successor Case</u>" and collectively, the "<u>Successor Cases</u>"); (v) the appointment of a trustee or an examiner with expanded powers; (vi) the delivery of a Termination Date Declaration (as defined herein) by the Prepetition Agent, as set forth in paragraph 14 below; and (vii) March 29, 2019 (unless such period is extended by the Prepetition Agent) if the Final Order, in form and substance acceptable to the Prepetition Agent, has not been entered by the Court on or before such date.

6.    <u>Reporting Requirements/Access to Records</u>. The Debtors shall provide the Prepetition Agent with all reporting and other information required to be provided to the Prepetition Agent under the Loan Documents, respectively.  In addition to, and without limiting, whatever rights to access the Prepetition Agent has under the Loan Documents, subject to existing confidentiality agreements, upon reasonable notice and to the extent reasonably

requested, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Prepetition Agent, respectively, to: (i) have access to and inspect the Debtors' assets; (ii) examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, directors, attorneys, consultants, and financial advisors. In addition, the Debtors shall provide the additional information listed below to the Prepetition Agent. Further, the Debtors shall provide any new Budget and Variance Report (as defined below) to counsel to the Creditors' Committee.

(a)    Weekly (or more or less frequently as may be agreed to between the Debtors and the Prepetition Agent) calls with the Prepetition Agent and its advisors;

(b)    Presentations to the Prepetition Secured Parties at times and places as the Prepetition Agent may reasonably request;

(c)    Beginning on the Thursday following the second full week following the Petition Date, and every two (2) weeks thereafter, an updated rolling 13-week cash flow forecast of the Debtors and their subsidiaries substantially in the form of the Budget (each, a "Proposed Budget"), which Proposed Budget, upon written approval by the Prepetition Agent, shall become the new Budget;

(d)    Beginning on the Thursday following the second full week following the Petition Date, a weekly/variance reconciliation report (a "Variance Report") on the Thursday of each week setting forth on a weekly basis for the prior week and on a cumulative basis from the Petition Date through the fourth (4th) full week after the Petition Date and then on a rolling two (2) week basis at all times thereafter (each of the foregoing, a "Measurement Period") the Debtors' (i) total cash receipts and (ii) total disbursements, noting therein variances from amounts set forth for such periods in the Budget;

(e)     Beginning on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person (as defined herein) shall deliver to the Prepetition Agent a statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date") (collectively, "Estimated Fees and Expenses"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided*, that within one business day of the occurrence of the Termination Declaration Date (as defined herein), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date;

(f)     Except in the event not reasonably practicable, the Debtors shall provide copies of all substantive motions, applications, other pleadings, and proposed forms of order with respect thereto (all of which shall be in form and substance reasonably acceptable to the Prepetition Agent) to the Prepetition Agent at least two (2) business days prior to the filing of any such substantive motions, applications, other pleadings, and proposed forms of order with respect thereto with the Court; and

(g)     Beginning March 30, 2019, and the thirtieth (30th) day of each month thereafter, a monthly and year-to-date income statement and balance sheet beginning with the year-to-date period ended March 2, 2019.

7.      Insurance.  At all times, the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the Collateral (as defined herein) on substantially the same basis as maintained prior to the Petition Date.

8.      Adequate Protection. In consideration for the Debtors' use of the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Parties shall receive the following Adequate Protection:

(a)      *Adequate Protection Liens*.  Subject only to the Carve Out and the terms of this Final Order, pursuant to Bankruptcy Code sections 361, 363(e) and 364, and in consideration of the stipulations and consents set forth herein, as adequate protection for and solely to the extent of any diminution in the value, from and after the Petition Date, of the Prepetition Secured Lenders' interests in the Prepetition Collateral (including Cash Collateral) resulting from: (i) the use, sale, or lease of the Prepetition Collateral; and (ii) the imposition of the automatic stay (the "Adequate Protection Obligations"), the Debtors hereby grant to the Prepetition Agent, for the benefit of the Prepetition Secured Parties an additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected, *nunc pro tunc* to the Petition Date, postpetition security interest in and lien on (the "Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, all of the right, title and interest of the Debtors and their "estates" (as created pursuant to Bankruptcy Code section 541(a)) in, to, and under all present and after-acquired property and assets of the Debtors of any nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all cash and Cash Collateral of the Debtors, and any investment of such cash and Cash Collateral, accounts

receivable and other rights to payment, whether arising before or after the Petition Date, inventory, general intangibles, chattel paper, real property and leaseholds and proceeds thereof (*provided, however*, Adequate Protection Liens shall only be granted on the leaseholds if expressly permitted under the lease, and to the extent that any lease prohibits the granting of a lien thereon, the Prepetition Agent shall be granted a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests), plants, fixtures, machinery, equipment, commercial tort claims, deposit accounts, cash and cash equivalents, rights under letters of credit, capital stock and other equity or ownership interest held by the Debtors, including equity interests in subsidiaries and all other investment property, investments, patents, trademarks, trade names, copyrights, licenses, rights under license agreements and other intellectual property, inter-company notes or receivables due to each Debtor, all of the Collateral (as defined in the Credit Agreement), and all proceeds from Avoidance Actions of the Debtors or their estates, and as to all of the foregoing, all rents, issues, products, proceeds and profits generated by any of the foregoing (collectively, the "Collateral"). The Adequate Protection Liens are subject or subordinate only to (1) the Carve Out, and (2) the Permitted Prior Liens.   Moreover, the Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551, (y) any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) any other lien or security interest under Bankruptcy Code sections 361, 363, or 364 or otherwise except as expressly provided in this Final Order.

(b)     *Prepetition Secured Parties' Superpriority Claims.* Pursuant to Bankruptcy Code section 507(b), the Prepetition Agent for the benefit of the Prepetition Secured

Parties, effective as of the entry of this Final Order, are hereby further granted an allowed superpriority administrative expense claim (the "Superpriority Claim") in each of the chapter 11 cases or any Successor Case, for the diminution in the value of the Prepetition Collateral, if any, subsequent to the Petition Date, which claims shall be junior only to the Carve Out, but shall be senior to and have priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment) and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever. The Superpriority Claim shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all assets and properties of each of the Debtors. Except for the Carve Out, the Superpriority Claim shall not be made subject to, or *pari passu* with, any claim heretofore or hereinafter granted or created in any of the chapter 11 cases or any Successor Cases, shall be valid and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in any of the chapter 11 cases or any Successor Cases.

(c)     *Payment of Fees and Expenses*.    As further adequate protection, the Debtors shall pay in cash, without the need for the filing of formal fee applications: (i) immediately upon entry of this Final Order, the reasonable and documented out-of-pocket professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Prepetition Secured Parties under the Loan Documents arising prior to

the Petition Date; and (ii) the reasonable and documented out-of-pocket professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the Prepetition Secured Parties under the Loan Documents arising subsequent to the Petition Date (the "Adequate Protection Fees").  After delivery of a monthly summary statement of any requested Adequate Protection Fees (which shall include the total number of hours billed by attorney or other professional and a summary description of services) to counsel for the Debtors, the U.S. Trustee, and the Creditors' Committee, the Debtors shall pay such fees, costs, and expenses within ten (10) days from delivery thereof. Any and all amounts paid by the Debtors as Adequate Protection Fees are deemed permitted uses of Cash Collateral and not subject to the Budget or any Variance Report.

(d)     *Payment of Interest to Prepetition Secured Parties.*  As further adequate protection, the Debtors shall pay, in cash, interest to the Prepetition Secured Parties at the non-default rate in effect as of the Petition Date at such times as provided for in and in accordance with the terms of the Loan Documents. For the avoidance of doubt, to the extent that any electronic funds transfers payable to the Debtors are returned or reversed for any reason, the Prepetition Agent shall be authorized to apply as adequate protection the proceeds of Cash Collateral to reimburse the Prepetition Agent an amount equaling the provisional credit provided to the Debtors for any such returned or reversed electronic funds transfer.

(e)     *Adequate Protection Reservation.*  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief

with respect to the use of Cash Collateral or for additional adequate protection, without prejudice to the respective rights of the Debtors, the Creditors' Committee, or any party in interest to contest the seeking of such relief by the Prepetition Secured Parties. Each of the Debtors shall be jointly and severally liable for the Adequate Protection provided for herein.

(f)     *Application of Proceeds of Collateral.*   The Debtors shall make payments to the Prepetition Agent to be applied toward the Prepetition Secured Obligations to the extent provided in the Budget; *provided*, *however*, that such payments shall be subject to disgorgement to the extent any Challenge asserted in accordance with the terms of this Final Order is ultimately sustained by the Court.

9.     <u>Modification of Automatic Stay</u>.   The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to provide the adequate protection provided herein; (b) permit the Debtors to perform such acts as the Prepetition Secured Parties may reasonably request to assure the perfection and priority of the Adequate Protection Liens granted herein; and (c) authorize the Debtors to make payments in accordance with the terms of this Final Order.

10.     <u>Cash Management</u>.   The Debtors shall maintain their cash management arrangements in a manner consistent with the final order [Docket No. 193] granting the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 7], entered or to be entered substantially contemporaneously herewith.  The Debtors shall not use, sell or lease any material

assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the Prepetition Agent.

11.    <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral or the Collateral outside of the ordinary course of business without the prior written consent of the Prepetition Agent, as applicable, unless such sale, transfer, lease, encumbrance or other disposition is approved by the Court and results in the indefeasible payment in full in cash of the Prepetition Secured Obligations and, with respect to any letters of credit, either replacement thereof or the posting of Cash Collateral in the amount of 105% of such letters of credit.

12.    <u>Milestones</u>.  The Prepetition Secured Parties have conditioned the Debtors' use of Cash Collateral on compliance with the following requirements by the applicable date set forth below (collectively, the "<u>Milestones</u>"):

(a)    Entry of an interim order in form and substance reasonably acceptable to the Prepetition Agent approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consultant Agreement, (II) Approving Procedures for Store Closing Sales, (III) Approving the Implementation of a Customary Store Bonus Program and Payments to Non-Insiders Thereunder, and (IV) Granting Related Relief* (the "<u>GOB Sale Motion</u>") within  three (3) business days of the Petition Date and entry of a final order in form and substance reasonably acceptable to the Prepetition Agent approving the GOB Sale Motion within thirty (30) days of the Petition Date;

(b)    Filing of a bid procedures motion for the sale of substantially all of the Debtors' assets (the "<u>Bid Procedures Motion</u>"), together with one or more stalking horse asset purchase agreements (in form and substance reasonably acceptable to the Prepetition Agent)

(each a "Stalking Horse Agreement") executed by one or more stalking horse bidders (each, a "Stalking Horse Bidder") reasonably acceptable to the Prepetition Agent, as applicable, no later than the two (2) calendar days after the Petition Date;

(c)    Entry of an order in form and substance reasonably acceptable to the Prepetition Agent approving bid procedures and other sale-related procedures and protections by the date that is twenty-one (21) calendar days from the Petition Date;

(d)    Commencement of an auction of substantially all of the Debtors' assets (the "Auction") by the date that is twenty-eight (28) calendar days from the Petition Date;

(e)    Within thirty (30) calendar days from the Petition Date, the Debtors shall obtain entry of an order in form and substance reasonably acceptable to the Prepetition Agent approving the sale of certain of the Debtors' assets related thereto as contemplated the applicable Staking Horse Agreement ("Sale Order"), which provides that the net sale proceeds shall be applied to the Prepetition Secured Obligations;

(f)    Closing of the sale provided for in the Sale Order by the date that is thirty-two (32) calendar days from the Petition Date; and

Each of the dates or periods in this paragraph 12 may be extended by mutual agreement between the Debtors and the Prepetition Agent, which agreement may be evidence by an e-mail confirmation between the parties.  For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones or any other terms of this Final Order shall constitute an Event of Default hereunder.

13.    Events of Default.  The occurrence of any of the following events, unless waived in writing by the Prepetition Agent, shall constitute an event of default (each, an "Event of Default"):

(a)    the Debtors' continued use of Cash Collateral after the Termination Date without the written consent of the Prepetition Agent;

(b)    the Debtors' failure to (i) comply with the Budget, as required by paragraph 3(a) hereof, and related reporting and covenant requirements, as required by paragraph 6 hereof, or (ii) perform, in any material respect, any of their obligations under this Final Order, including, but not limited to, the Debtors' failure to make any payments required under paragraphs 8(c) and 8(d) hereof, dispose of Prepetition Collateral or Collateral in compliance with paragraph 11 hereof, or comply with the Milestones under paragraph 12 hereof;

(c)    the Debtors obtaining postpetition credit or incurring postpetition indebtedness that is (i) secured by a security interest, mortgage or lien on all or any portion of the Prepetition Collateral or Collateral which is equal to or senior to, any security interest, mortgage or lien of the Prepetition Secured Parties in the Prepetition Collateral or the Adequate Protection Liens in the Collateral, or (ii) entitled to priority administrative status which is equal to or senior to the Adequate Protection Superpriority Claims;

(d)    any lien or security interest purported to be created under the Loan Documents shall cease to be, shall be asserted by the Debtors not to be, or shall otherwise be determined by the Court not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Loan Documents or herein;

(e)    the failure by the Debtors to deliver to the Prepetition Agent any of the documents or other information required to be delivered pursuant to this Final Order when due or any such documents or other information shall contain a material misrepresentation;

(f)        dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to chapter 7, or the appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases;

(g)        an order shall be entered staying, reversing, vacating, amending, or rescinding any of the terms of this Final Order without the consent of the Prepetition Agent;

(h)        the filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Collateral securing the Prepetition Indebtedness or any of the Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(i)        the entry of an order or judgment by this Court or any other court: (i) modifying, limiting, subordinating, or avoiding the priority of the obligations of the Debtors under this Final Order, the obligations of the Debtors under the Loan Documents, or the perfection, priority, or validity of the Prepetition First Priority Liens or the Adequate Protection Liens; (ii) imposing, surcharging, or assessing against the Prepetition Secured Parties' claims or the Prepetition Collateral or the Collateral, any costs or expenses, whether pursuant to Bankruptcy Code section 506(c) or otherwise; (iii) impairing any of the Prepetition Secured Parties' right to credit bid; and (iv) authorizing the obtaining of postpetition credit or the incurrence of postpetition indebtedness that is secured by a security interest, mortgage, or other lien on all or any portion of the Prepetition Collateral or Collateral which is equal to or senior to any security interest, mortgage, or other lien of the Prepetition Secured Parties, or granted herein

or entitled to administrative expense priority status which is equal or senior to that granted to the Prepetition Secured Parties herein;

(j)     the sale of the Debtors' assets outside the ordinary course of business without the prior written consent of the Prepetition Agent; or

(k)     any Cash Collateral or the Carve Out is used, whether or not pursuant to Court order, in a manner not permitted by this Final Order, including paragraph 3 hereof.

14.     <u>Exercise of Remedies</u>. Upon the occurrence and at any time during the continuation of an Event of Default, the Debtors shall immediately cease using Cash Collateral and the Prepetition Agent may, upon five (5) business days' (the "<u>Remedies Notice Period</u>") written notice to counsel to the Debtors, counsel to the Creditors' Committee, and the U.S. Trustee (which such notice may be by electronic mail) (a "<u>Termination Date Declaration</u>") and in accordance with the terms and conditions of this Final Order, exercise the rights and remedies available under the Loan Documents, this Final Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to this Final Order and apply the same to such obligations; *provided*, *however*, the Prepetition Secured Parties may only enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Prepetition Collateral located thereon pursuant to (a) a separate written agreement with or the written consent of the landlord, (b) rights available under applicable non-bankruptcy law, or (c) upon further order of the bankruptcy court after notice to the landlord and an opportunity to be heard.  The automatic stay under section 362 of the Bankruptcy Code shall be deemed immediately modified and vacated to the extent necessary to permit such actions.  The Debtors or the Creditors' Committee shall be entitled to seek an

emergency hearing with the Court during the Remedies Notice Period for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing and such other matters as the Court may wish to consider.  Upon the expiration of the Remedies Notice Period, the Prepetition Agent shall be permitted to exercise all remedies set forth herein, in the Loan Documents, and as otherwise available at law without further order of or application or motion to the Court.  Any delay or failure of any of the Prepetition Secured Parties to exercise rights under any Loan Document or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.  Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Final Order shall survive the Termination Date.

       15.    <u>Carve Out; Payment of Estate Professionals</u>.

       (a)    *Generally.*  As used in this Final Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (solely with respect to the Creditors' Committee, strictly subject to the Budget and the line items applicable to such Creditors' Committee professionals set forth therein) (the "<u>Committee Professionals</u>" and, together with the Debtor

Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Prepetition Agent of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (the amounts in (i)-(iii) collectively are the "Pre-Carve Out Trigger Notice Cap"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $400,000 incurred after the first business day following delivery by the Prepetition Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); *provided*, that, the Carve Out shall not include any bonus, transaction, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the foregoing for Professional Persons; *provided further*, that nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses. For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and upon termination of the Debtors' right to use Cash Collateral by the Prepetition Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)     *Carve Out Reserves.*  On the day on which a Carve Out Trigger Notice is given by the Prepetition Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Pre-Carve Out Trigger Notice Cap.  The

Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Loan Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 15, then, any excess

funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 15, prior to making any payments to the Prepetition Agent or any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Loan Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Agent for application in accordance with the Loan Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Obligations (as defined in the Loan Documents) or increase or reduce the Prepetition Secured Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in any Loan Documents, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the 507(b) Claim, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

    (c) *Reservation of Rights.*  The Prepetition Secured Parties reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the Budget. The payment of any fees or expenses of the Professional Persons

pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Prepetition Secured Parties, or to any holder of a Permitted Prior Lien, or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties in the Collateral or Prepetition Collateral (or their respective claims against the Debtors).

(d)    *Payment of Allowed Professional Fees Prior to the Termination Declaration Date.*    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)    *No Direct Obligation To Pay Allowed Professional Fees.*    None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    *Payment of Carve Out On or After the Termination Declaration Date.* Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

16.    <u>Release</u>.  Subject to paragraph 4 of this Final Order, the Debtors on behalf of themselves and their estates (including any successor trustee or other estate representative in any of the Chapter 11 Cases or Successor Cases) and any party acting by, or through, the Debtors or their estates, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully, forever waives and releases the Prepetition Agent and each of the other

Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accounts, attorneys, affiliates, and predecessors in interest of any and all "<u>claims</u>" (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Loan Documents or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "<u>lender liability,</u>" recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law and any and all claims and causes of action regarding the validity, priority, perfection or avoidability of the liens or the claims of the Prepetition Agent and the other Prepetition Secured Parties.

17.    <u>Committee Settlement</u>.    Prior to the entry of this Final Order, the Debtors, the Creditors' Committee, and the Prepetition Secured Parties agreed to the terms of a global settlement (the "<u>Committee Settlement</u>") to address the Creditors' Committee's potential challenges to this Final Order.  The Committee Settlement provides as follows: (i) the Debtors shall make payments to the Prepetition Agent to be applied toward the Prepetition Secured Obligations to the extent provided in the Budget; (ii) the Debtors shall pay all accrued but unpaid postpetition stub rent (*i.e.*, rent incurred for the period from February 6, 2019 through February 28, 2019) for any non-residential real property leases that were not assumed and assigned to Enesco (as defined in the First Day Declaration) in connection with the sale of substantially all of

the Debtors' assets within the later of (x) five Business Days after entry of this Final Order and (y) the date that the Debtors complete their reconciliation of such amounts; (iii) the Debtors, the Prepetition Secured Parties, and the Creditors' Committee shall agree on an amount sufficient to satisfy all reasonably anticipated allowed claims arising under section 503(b)(9) of the Bankruptcy Code and the Debtors shall establish a reserve in such amount, provided, that in no event shall such reserve exceed $500,000 absent the consent of the Prepetition Secured Parties; and (iv) to the extent applicable, the Prepetition Secured Parties covenant not to pursue any claims of the Debtors arising under section 547 of the Bankruptcy Code.  As a result of the Committee Settlement, the Creditors' Committee has agreed to the termination of the Challenge Period and not to assert a Challenge.  Nothing in this Final Order is approving any distribution that is inconsistent with the Bankruptcy Code's priority scheme.

18.    <u>Local Texas Tax Authorities</u>.    Notwithstanding any provisions of the Interim Order or this Final Order, any senior liens currently held by the Local Texas Tax Authorities[3] (to be defined/listed), shall neither be primed by nor subordinated to any liens granted thereby. Furthermore, from the proceeds of the non-ordinary course sale of any of the Debtors' assets located in the state of Texas, the amount of $33,000 shall be set aside by the Debtors in a segregated account (the "<u>Local Texas Tax Account</u>") as adequate protection for the secured claims of the Local Texas Tax Authorities. The liens asserted by the Local Texas Tax Authorities shall attach to the Local Texas Tax Account to the same extent and with the same priority as the liens the Local Texas Tax Authorities assert against such assets of the Debtors. The Local Texas Tax Account shall be maintained solely for the purpose of providing adequate protection to the Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor and

---

[3] The Local Texas Tax Authorities are Bexar County, Cameron County, Dallas County, Ector CAD, El Paso, Frisco, Hidalgo County, Irving ISD, Lewisville ISD, McAllen, McLennan County, Nueces County, Tarrant County and Victoria County, Texas.

shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a floor or cap on the amounts the Local Texas Tax Authorities may be entitled to receive. Furthermore, the claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. Funds in the Local Texas Tax Account may be distributed upon agreement between the Local Texas Tax Authorities and the Debtors, with the consent of the Prepetition Agent, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities and the Prepetition Agent.

19.     _Reversal, Modification, Vacatur, or Stay_.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Final Order shall not affect the validity or enforceability of any Adequate Protection Liens, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Obligations, incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (a) this Final Order shall govern, in all respects, any use of Cash Collateral or Adequate Protection Liens or Adequate Protection Superpriority Claims incurred by the Debtors prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Prepetition Secured Parties shall be entitled to all the benefits and protections granted by this Final Order with respect to any such use of Cash Collateral or such Adequate Protection Liens or Adequate Protection Superpriority Claims incurred by the Debtors.

20.     _Reservation of Rights_.  Notwithstanding anything to the contrary herein, the entry of this Final Order and the transactions contemplated hereby shall not constitute an admission nor be deemed an admission by the Prepetition Secured Parties that absent their consent to the Debtors' use of Cash Collateral under this Final Order their interest in the Prepetition Collateral

would be adequately protected. Except as otherwise expressly set forth herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:    (a) the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection; (b) any of the Prepetition Secured Parties' rights under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the Prepetition Agent to (i) request modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of the Chapter 11 Cases, conversion of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) seek to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Parties.

21.    <u>No Waiver for Failure to Seek Relief</u>.  The failure or delay of the Prepetition Secured Parties to seek relief or otherwise exercise any of their rights and remedies under this Final Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Prepetition Secured Parties.

22.    <u>Section 507(b) Reservation</u>.    Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for the Adequate Protection Obligations during the Chapter 11 Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Secured Parties, that the adequate protection granted herein does in fact adequately protect the Prepetition Secured Parties against

any diminution in value of their interests in and against the Prepetition Collateral (including the Cash Collateral).

23.    <u>Section 552(b) Waiver</u>.  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "<u>equities of the case</u>" exception shall not apply.

24.    <u>Section 506(c) Waiver</u>.  The Debtors and their estates waive any claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Secured Parties upon the Prepetition Collateral or Collateral.

25.    <u>No Marshalling/Application of Proceeds</u>.  In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "<u>marshalling</u>" or any other similar doctrine with respect to any of the Prepetition Collateral or Collateral or any proceeds thereof.

26.    <u>Good Faith</u>.  Based on the findings set forth in the Interim Order and this Final Order and the record made during the Interim Hearing, the Final Hearing, if any, and in these Chapter 11 Cases, pursuant to Bankruptcy Code sections 105, 361, 363, and 364, the Debtors and the Prepetition Secured Parties are hereby found to be entities that have acted in "<u>good faith</u>" in connection with the negotiation and entry of this Final Order and are entitled to the protections afforded by Bankruptcy Code section 363(m).

27.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

28.    <u>No Liability to Third Parties</u>.  In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the

36

Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "<u>responsible person</u>" or "<u>owner or operator</u>" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtors.  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose upon the Prepetition Secured Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtors and/or their affiliates (as defined in Bankruptcy Code section 101(2)).

29.    <u>Master Proof of Claim</u>.  Neither the Prepetition Agent nor any of the Prepetition Secured Parties will be  required to  file proofs of  claim in any of the Cases or successor cases, and the Debtors' stipulations herein, including, without limitation, in paragraph D hereof, shall be  deemed to constitute a  timely filed proof of claim against the applicable Debtors. Notwithstanding the foregoing, the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, but not required, in its sole discretion, to file (and amend and/or supplement, as it sees fit) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable Loan Documents; *provided* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

30.    <u>Binding Effect of Final Order</u>.  The provisions of this Final Order shall be binding upon all parties in interest in the Chapter 11 Cases, including the Prepetition Secured Parties, any statutory committees that may be appointed in any Chapter 11 Cases, and the Debtors and their

respective successors and assigns and shall inure to the benefit of the Prepetition Secured Parties, the Debtors and their respective successors and assigns. This Final Order shall bind any trustee hereafter appointed or elected for the Debtors' estates whether in the Chapter 11 Cases or in the event of the conversion of the Chapter 11 Cases to liquidation cases under chapter 7 of the Bankruptcy Code. Such binding effect is a benefit of the Prepetition Secured Parties' bargain in connection with the Debtors' use of Cash Collateral and is an integral part of this Final Order. Any payments to be made by the Debtors under any order (including any "First Day" order) shall be made in accordance with this Final Order and the Budget.

31.    Survival.    The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any chapter 11 plan, (ii) converting the Chapter 11 Cases to chapter 7 cases, or (iii) dismissing the Chapter 11 Cases. The terms and provisions of this Final Order, including, for the avoidance of doubt, the provisions in paragraph 4 hereof, as well as the adequate protection granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of any of the foregoing orders, and such claims and liens shall maintain their priority as provided by this Final Order, the Loan Documents and to the maximum extent permitted by law until all of the Prepetition Secured Obligations are indefeasibly paid and satisfied in full in cash.

32.    Effect of Dismissal.    If the Chapter 11 Cases are dismissed or converted, then neither the entry of this Final Order nor the dismissal or conversion of the Chapter 11 Cases shall affect the rights of the Prepetition Secured Parties (to the extent of the adequate protection provided hereunder) under the Loan Documents or this Final Order, and all rights and remedies thereunder of the Prepetition Secured Parties (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed

or converted. If an order dismissing the Chapter 11 Cases is entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (i) the adequate protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until the Adequate Protection Obligation have been satisfied, (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the adequate protection provided for herein, and (iii) any hearing on a motion to dismiss the Chapter 11 Cases shall require at least twenty one (21) days prior notice. The provisions of this Final Order, and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any chapter 11 plan, dismissing the Chapter 11 Cases or converting the Chapter 11 Cases from chapter 11 to chapter 7.

33.    Findings of Fact and Conclusions of Law.    This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

34.    Order Effective upon Entry.    Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

35.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction and power to enforce this Final Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

**Dated: March 29th, 2019**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**