## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| RMBR LIQUIDATION, INC., *et al.*,[1] | ) | Case No. 19-10234 (KG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF
## RMBR LIQUIDATION, INC. AND ITS DEBTOR AFFILIATES

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
919 Market Street
Suite 1800
Wilmington, Delaware 19801
Telephone:     (302) 467-4410
Facsimile:     (302) 467-4450
Email:          landis@lrclaw.com
                mcguire@lrclaw.com
                brown@lrclaw.com

**KIRKLAND & ELLIS LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          christopher.greco@kirkland.com
                derek.hunter@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
Spencer A. Winters (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          spencer.winters@kirkland.com

*Co-Counsel to the Debtors*

Dated:  April 24, 2019

> THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.  THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.  THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT (THIS "DISCLOSURE STATEMENT") TO CERTAIN HOLDERS OF CLAIMS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE DEBTORS' JOINT CHAPTER 11 PLAN OF RMBR LIQUIDATION, INC. AND ITS DEBTOR AFFILIATES (THE "PLAN"). NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE. PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE IX HEREIN.

THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND ALL OF THE ACTIONS NECESSARY TO EFFECTUATE THE PLAN. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE INCORPORATED BY REFERENCE HEREIN. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS WITHIN THE MEANING OF SECTION 27A AND SECTION 21E OF THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"). SUCH STATEMENTS MAY CONTAIN WORDS SUCH AS "MAY," "WILL," "MIGHT," "EXPECT," "BELIEVE," "ANTICIPATE," "COULD," "WOULD," "ESTIMATE," "CONTINUE," "PURSUE," OR THE NEGATIVE THEREOF OR COMPARABLE TERMINOLOGY, AND MAY INCLUDE, WITHOUT LIMITATION, INFORMATION REGARDING THE DEBTORS' EXPECTATIONS WITH RESPECT TO FUTURE EVENTS. FORWARD-LOOKING STATEMENTS ARE INHERENTLY UNCERTAIN AND ARE SUBJECT TO CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER FROM THOSE EXPRESSED OR IMPLIED IN THIS DISCLOSURE STATEMENT AND THE FORWARD-LOOKING STATEMENTS CONTAINED HEREIN. MAKING INVESTMENT DECISIONS BASED ON THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND/OR THE PLAN IS, THEREFORE, SPECULATIVE.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THEIR BOOKS AND RECORDS OR THAT WAS OTHERWISE MADE

AVAILABLE TO THEM AT THE TIME OF SUCH PREPARATION AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES.    ALTHOUGH THE DEBTORS BELIEVE THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES.    THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER.    THE DEBTORS OR THE PLAN ADMINISTRATOR MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED.    ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO, AND EXPRESSLY DISCLAIM ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE.    HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT.    THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED PLAN AND RELATED AMENDED DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.

CONFIRMATION AND CONSUMMATION OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED IN ARTICLE XI OF THE PLAN.    THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED OR, IF CONFIRMED, THAT SUCH MATERIAL CONDITIONS PRECEDENT WILL BE SATISFIED OR WAIVED.    YOU ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING BUT NOT LIMITED TO THE PLAN AND ARTICLE IX OF THIS DISCLOSURE STATEMENT ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED BEFORE VOTING," BEFORE SUBMITTING YOUR BALLOT TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.    THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AND INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS OR INTERESTS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND ANY TRANSACTIONS CONTEMPLATED THEREBY.

THE DEBTORS AND THE PREPETITION SECURED LENDERS SUPPORT CONFIRMATION OF THE PLAN AND URGE ALL HOLDERS OF CLAIMS WHOSE VOTES ARE BEING SOLICITED TO ACCEPT THE PLAN.

**TABLE OF CONTENTS**

Page

**ARTICLE I. INTRODUCTION** .................................................................................................. 1
    A.    Overview of the Plan ...................................................................................... 1
    B.    The Plan Structure ......................................................................................... 2
    C.    The Adequacy of this Disclosure Statement ................................................ 2

**ARTICLE II. TREATMENT OF CLAIMS AND INTERESTS** ............................................ 3
    A.    Administrative Claims and Priority Tax Claims ........................................... 5

**ARTICLE III. VOTING AND CONFIRMATION** ................................................................. 6
    A.    Classes Entitled to Vote on the Plan ............................................................ 6
    B.    Votes Required for Acceptance by a Class ................................................... 6
    C.    Certain Factors to Be Considered Prior to Voting ....................................... 7
    D.    Classes Not Entitled to Vote on the Plan ..................................................... 7
    E.    Solicitation Procedures .................................................................................. 7
    F.    Voting Procedures ......................................................................................... 8
    G.    Disputed Claims Procedures ......................................................................... 9
    H.    Confirmation Hearing .................................................................................. 10

**ARTICLE IV. BUSINESS DESCRIPTION** ......................................................................... 10
    A.    Corporate History ........................................................................................ 10
    B.    Prepetition Capital Structure ....................................................................... 11

**ARTICLE V. EVENTS LEADING TO THE CHAPTER 11 CASES** ................................ 12
    A.    Adverse Industry Trends and Operational Challenges. ............................... 12
    B.    Supply Chain and Vendor Challenges. ....................................................... 13
    C.    Unsustainable Store Footprint. .................................................................... 13
    D.    Restructuring Efforts. .................................................................................. 13

**ARTICLE VI. EVENTS OF THE CHAPTER 11 CASES** ................................................. 14
    A.    First Day Pleadings and Other Case Matters .............................................. 14
    B.    Bid Procedures and Sale Motion ................................................................ 15
    C.    Executory Contracts and Unexpired Leases ............................................... 15
    D.    Store Closing Process .................................................................................. 17
    E.    Schedules and Statements ............................................................................ 17
    F.    Litigation Matters ....................................................................................... 17
    G.    Claims Bar Date .......................................................................................... 17

**ARTICLE VII. SUMMARY OF THE PLAN** ...................................................................... 18
    A.    Means for Implementation of the Plan ........................................................ 18
    B.    Settlement, Release, Injunction, and Related Provisions ........................... 21

**ARTICLE VIII. STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN** ...................... 26
    A.    Confirmation Hearing .................................................................................. 27
    B.    Confirmation Standards ............................................................................... 27
    C.    Alternative Plans ......................................................................................... 28
    D.    Acceptance by Impaired Classes ................................................................ 29
    E.    Confirmation Without Acceptance by All Impaired Classes ...................... 29

**ARTICLE IX. CERTAIN RISK FACTORS TO BE CONSIDERED BEFORE VOTING** ...................... 30
    A.    Risk Factors that May Affect Recoveries Available to holders of Allowed Claims Under the Plan .................................................................. 30

B.      Certain Bankruptcy Law Considerations ......................................................................31
C.      Disclosure Statement Disclaimer ...............................................................................33
D.      Liquidation under Chapter 7 ......................................................................................35

**ARTICLE X. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES** ........................**35**
A.      Certain U.S. Federal Income Tax Consequences to the Debtors.................................36
B.      Certain U.S. Federal Income Tax Consequences to holders of General Unsecured Claims ...........36
1.      Disputed Ownership Fund Treatment .........................................................................36
C.      Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of
        General Unsecured Claims..........................................................................................38
D.      Information Reporting and Backup Withholding.........................................................39
E.      FATCA.........................................................................................................................39

**ARTICLE XI. RECOMMENDATION OF THE DEBTORS** ...........................................................**41**

## EXHIBITS

EXHIBIT A    Joint Chapter 11 Plan

EXHIBIT  B    Disclosure Statement Order

EXHIBIT C    Liquidation Analysis

# ARTICLE I.

## INTRODUCTION

This disclosure statement (this "<u>Disclosure Statement</u>") provides information regarding the *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"), which the Debtors are seeking to have confirmed by the Bankruptcy Court.[2] A copy of the Plan is attached hereto as **<u>Exhibit A</u>**. The rules of interpretation set forth in Article I of the Plan shall govern the interpretation of this Disclosure Statement.

The Debtors believe that the Plan is in the best interests of the Debtors' Estates. As such, the Debtors recommend that all holders of Claims entitled to vote accept the Plan by returning their ballots (each, a "<u>Ballot</u>") so as to be **<u>actually</u> <u>received</u>** by the Claims, Noticing, and Solicitation Agent (as defined herein) no later than **<u>May 29, 2019, at 11:59 p.m. (prevailing Eastern Time)</u>**. Assuming the requisite acceptances to the Plan are obtained, the Debtors will seek the Bankruptcy Court's approval of the Plan at the Confirmation Hearing.

## A.     Overview of the Plan

The Debtors propose to liquidate under chapter 11 of the Bankruptcy Code. Under chapter 11, a debtor may reorganize or liquidate its business for the benefit of its stakeholders. The consummation of a chapter 11 plan of liquidation is the principal objective of these Chapter 11 Cases. A chapter 11 plan sets forth how a debtor will treat claims and equity interests.

The primary objective of the Plan is to maximize the value of recoveries to all holders of Allowed Claims and Allowed Interests and generally to distribute all property of the Estates that is or becomes available for distribution generally in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that the Plan accomplishes this objective and is in the best interest of the Estates.

A bankruptcy court's confirmation of a chapter 11 plan binds the debtor, any entity or person acquiring property under the plan, any creditor of or equity security holder in a debtor, and any other entities and persons to the extent ordered by the bankruptcy court pursuant to the terms of the confirmed plan, whether or not such entity or person is impaired pursuant to the plan, has voted to accept the plan, or receives or retains any property under the plan. Among other things (subject to certain limited exceptions and except as otherwise provided in the Plan or the Confirmation Order), the Confirmation Order will discharge the Debtors from any debt arising before the Effective Date, terminate all of the rights and interests of pre-bankruptcy equity security holders and substitute the obligations set forth in the Plan for those pre-bankruptcy Claims and Interests. Under the Plan, Claims and Interests are divided into Classes according to their relative priority and other criteria.

Each of the Debtors is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan contemplates the substantive consolidation of the Debtors' estates. The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, confirmation and distributions. If this substantive consolidation is approved, then for all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit.

Generally speaking, the Plan:

- provides the vesting of all Available Cash from the proceeds of Sales Transactions in the Post-Effective Date Debtors, for the purpose of distribution to holders of Claims;

- provides for the full and final resolution of funded debt obligations;

---

[2]     Unless otherwise specified herein, capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

- designates a Plan Administrator to wind down the Debtors' affairs, pay and reconcile Claims, and administer the Plan in an efficacious manner; and

- provides for 100 percent recoveries for holders of Administrative Claims, Secured Tax Claims, Priority Tax Claims, Other Priority Claims and Other Secured Claims.

The Debtors believe that Confirmation of the Plan will avoid the lengthy delay and significant cost of liquidation under chapter 7 of the Bankruptcy Code.

The Plan classifies holders of Claims and Interests according to the type of the holder's Claim or Interest, as more fully described below. Holders of Claims in Class 4 (Revolver Claims) are entitled to vote to accept or reject the Plan.

**B.      The Plan Structure**

Pursuant to the Plan, the Debtors, the Post-Effective Date Debtors, the Plan Administrator, or the Disbursing Agent will pay or provide for payments of Claims as follows:

- the Debtors or the Post-Effective Date Debtors shall pay Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, Allowed Other Secured Claims and Allowed Other Priority Claims from the Priority Claim Reserve;

- the Debtors shall fund the Professional Fee Escrow Account, which Professional Fee Escrow Account shall be used to pay Allowed Professional Fee Claims;

- holders of Allowed Class 4 Revolver Claims against each of the Debtors will receive their Pro Rata share of Available Cash in an amount not to exceed $18,723,738.81 in full and final satisfaction of all Revolver Claims;

- existing Intercompany Interests will be cancelled without any distribution to the holders of such Interests; and

- existing Interests in Holdco will be cancelled without any distribution to the holders of such Interests.

The Debtors believe that the Plan is in the best interest the Estates, including holders of Class 4 Revolver Claims, and urge such holders to vote to accept the Plan.

**C.      The Adequacy of this Disclosure Statement**

Before soliciting acceptances of a proposed plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a written disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of a chapter 11 plan. The Debtors submit this Disclosure Statement in accordance with such requirements. This Disclosure Statement includes, without limitation, information about:

- the Debtors' corporate history and structure, business operations, and prepetition capital structure and indebtedness (Article IV hereof);

- the events leading to the Chapter 11 Cases (Article V hereof);

- the significant pleadings Filed in the Chapter 11 Cases and certain relief granted by the Bankruptcy Court in connection therewith (Article VI hereof);

- the classification and treatment of Claims and Interests under the Plan, including identification of the holders of Claims entitled to vote, the procedures for voting on the Plan, and projected recoveries (Articles II, III, VII, and VIII hereof);

- the method of distribution of any recoveries that may be available to certain holders of Claims pursuant to the Plan, the process for resolving Disputed Claims, and other significant aspects of the Plan (Article VII hereof);

- the releases contemplated by the Plan that are integral to the overall settlement of Claims pursuant to the Plan (Article VII hereof);

- the statutory requirements for confirming the Plan (Article VIII hereof);

- certain risk factors that holders of Claims should consider before voting to accept or reject the Plan and information regarding alternatives to Confirmation of the Plan (Article IX hereof); and

- certain United States federal income tax consequences of the Plan (Article X hereof).

In light of the foregoing, the Debtors believe that this Disclosure Statement contains "adequate information" to enable a hypothetical reasonable investor to make an informed judgment about the Plan and complies with all aspects of section 1125 of the Bankruptcy Code.

The Plan and all documents to be executed, delivered, assumed, and/or performed in connection with the Consummation of the Plan, including the documents to be included in the Plan Supplement, are subject to revision and modification from time to time prior to the Effective Date (subject to the terms of the Plan).

## ARTICLE II.

## TREATMENT OF CLAIMS AND INTERESTS

The following chart provides a summary of the anticipated recovery to Holders of Claims and Interests under the Plan. Any estimates of Claims and Interests in this Disclosure Statement may vary from the final amounts Allowed by the Bankruptcy Court. Your ability to receive distributions under the Plan depends upon the ability of the Debtors to obtain Confirmation and meet the conditions necessary to consummate the Plan.

*The recoveries available to holders of Claims are estimates and actual recoveries may materially differ based on, among other things, whether the amount of Claims actually Allowed exceeds the estimates provided below. In such an instance, the recoveries available to holders of Allowed Claims could be materially lower when compared to the estimates provided below. To the extent that any inconsistency exists between the summaries contained in this Disclosure Statement and the Plan, the terms of the Plan shall govern.*

| Class | Claim/Interest | Plan Treatment | Projected Amount of Claims | Projected Plan Recovery |
|---|---|---|---|---|
| 1 | Secured Tax Claims | (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or<br><br>(b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period. | $0 | 100% |
| 2 | Other Secured Claims | (i) payment in full in Cash of such holder's Allowed Other Secured Claim;<br>(ii) the collateral securing such holder's Allowed Other Secured Claim;<br>(iii) Reinstatement of such holder's Allowed Other Secured Claim; or<br>(iv) such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired. | $0 | 100% |
| 3 | Other Priority Claims | Each holder of an Allowed Other Priority Claim shall receive payment in full in Cash of such holder's Allowed Other Priority Claim from the Priority Claim Reserve or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired. | $0 | 100% |
| 4 | Revolver Claims | In full and final satisfaction of all Revolver Claims, the following shall be paid to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full: (i) any Available Cash after the funding of the Priority Claims Reserve, the Professional Fee Escrow Account and the Wind Down Amount and the reserve or payment in full of all Allowed Secured Tax Claims and All Other Secured Claims, and (ii) any Reserve Residuals. | $18,723,738.81 | 76.4% |
| 5 | Term Loan Claims | Holders of Term Loan Claims will receive no distribution from the Debtors or their Estates under the Plan. | $124,921,105.40 | 0% |
| 6 | General Unsecured Claims | Holders of General Unsecured Claims will receive no distribution from the Debtors or their Estates under the Plan. | $60,259,080 | 0% |

| Class | Claim/Interest | Plan Treatment | Projected Amount of Claims | Projected Plan Recovery |
|-------|---------------|----------------|----------------------------|-------------------------|
| 7 | Intercompany Interests | Intercompany Interests shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests. | N/A | N/A |
| 8 | Interests in Holdco | Interests in Holdco will be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Interests in Holdco will not receive any distribution on account of such Interests in Holdco. | N/A | N/A |

Except to the extent that the Debtors and a holder of an Allowed Claim or Interest, as applicable, agree to a less favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such holder's Allowed Claim or Interest. Unless otherwise indicated, each holder of an Allowed Claim or Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter, the timing of which shall be subject to the reasonable discretion of the Post-Effective Date Debtors or the Plan Administrator, as applicable.

**A.        Administrative Claims and Priority Tax Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

**1.    Administrative Claims**

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment from the Priority Claims Reserve.

Except for Professional Fee Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Post-Effective Date Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Post-Effective Date Debtors and the requesting party by the Administrative Claim Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order, of the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Bar Date or the Administrative Claim Bar Date, as applicable, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Priority Claims Reserve, the Debtors or their property and the Post-Effective Date Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Post-Effective Date Debtors or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

The failure to object to Confirmation by a Holder of an Allowed Administrative Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code; provided, however, that the Holders of such Claims shall be deemed to consent to the treatment on account of such Claims as provided herein.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim that is Allowed by Final Order.

    **2.    Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of an Allowed Priority Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment from the Priority Claims Reserve.

## ARTICLE III.

## VOTING AND CONFIRMATION

The Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Debtor, including that (i) the Plan has classified Claims and Equity Interests in a permissible manner, (ii) the Plan complies with applicable provisions of the Bankruptcy Code, (iii) the Debtor has complied with applicable provisions of the Bankruptcy Code, (iv) the Debtor has proposed the Plan in good faith and not by any means forbidden by law, (v) the disclosure required by section 1125 of the Bankruptcy Code has been made, (vi) the Plan has been accepted by the requisite votes of creditors (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code), (vii) the Plan is feasible and confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, (viii) the Plan is in the "best interests" of all holders of Claims or Equity Interests in an impaired Class by providing to such holders on account of their Claims or Equity Interests property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless the Holder has accepted the Plan, and (ix) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on Confirmation, have been paid or the Plan provides for the payment of such fees on the Effective Date.

**A.    Classes Entitled to Vote on the Plan**

The following is the only Class entitled to vote to accept or reject the Plan (the "Voting Class"):

| Class | Claim | Status |
|-------|-------|--------|
| 4 | Revolver Claims | Impaired |

If your Claim or Interest is not included in the Voting Class, you are not entitled to vote and you will not receive a Solicitation Package (as defined herein) or a Ballot.  If your Claim or Interest is included in the Voting Class, you should read your Ballot and carefully follow the instructions set forth therein.  Please use only the Ballot that accompanies this Disclosure Statement or the Ballot that the Debtors, or the Notice, Claims, and Balloting Agent on behalf of the Debtors, otherwise provides to you.

**B.    Votes Required for Acceptance by a Class**

Under the Bankruptcy Code, acceptance of a chapter 11 plan by a class of claims or interests is determined by calculating the amount and, if a class of claims, the number, of claims and interests voting to accept, as a percentage of the allowed claims or interests, as applicable, that have voted.  Each Class of Claims entitled to vote on the Plan will have accepted the Plan if:  (a) the holders of at least two-thirds in dollar amount of the Claims actually voting in each Class vote to accept the Plan; and (b) the holders of more than one-half in number of the Claims actually voting in each Class vote to accept the Plan.

C.      **Certain Factors to Be Considered Prior to Voting**

There are a variety of factors that all holders of Claims entitled to vote on the Plan should consider prior to voting to accept or reject the Plan, including the following:

- the financial information contained in this Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and this Disclosure Statement;

- although the Debtors believe that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtors can neither assure such compliance nor that the Bankruptcy Court will confirm the Plan;

- the Debtors may request Confirmation without the acceptance of all Impaired Classes entitled to vote in accordance with section 1129(b) of the Bankruptcy Code; and

- any delays of either Confirmation or Consummation could result in, among other things, increased Administrative Claims or Professional Fee Claims.

While these factors could affect distributions available to holders of Allowed Claims under the Plan, the occurrence or impact of such factors will not necessarily affect the validity of the vote of holders within the Voting Class or necessarily require a re-solicitation of the votes of such holders.

For a further discussion of risk factors, please refer to Article IX hereof, entitled "Certain Risk Factors to be Considered Before Voting."

D.      **Classes Not Entitled to Vote on the Plan**

Under the Bankruptcy Code, holders of claims and interests are not entitled to vote if their contractual rights are unimpaired by the proposed plan, in which case they are conclusively presumed to accept the proposed plan, or if they will receive no property under the plan, in which case they are deemed to reject the proposed plan. Accordingly, the following Classes of Claims and Interests are not entitled to vote to accept or reject the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 5 | Term Loan Claims | Impaired | Deemed to Reject |
| 6 | General Unsecured Claims | Impaired | Deemed to Reject |
| 7 | Intercompany Interests | Impaired | Deemed to Reject |
| 8 | Interests in Holdco | Impaired | Deemed to Reject |

E.      **Solicitation Procedures**

1.      *Notice, Claims, and Balloting Agent*

The Debtors retained Prime Clerk LLC to act, among other things, as the notice, claims, and balloting agent (the "Notice, Claims, and Balloting Agent") in connection with the solicitation of votes to accept or reject the Plan.

### 2.  *Solicitation Package*

The Voting Record Date is May 7, 2019.  The Voting Record Date is the date on which it will be determined which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim.  Such Holders who are entitled to vote to accept or reject the Plan as of May 7, 2019 will receive appropriate solicitation materials (the "Solicitation Package"), which will include, in part, the following:

- the appropriate Ballot(s) and applicable voting instructions, together with a pre-addressed, postage pre-paid return envelope;  and

- this Disclosure Statement, including the Plan as an exhibit thereto.

### 3.  *Distribution of the Solicitation Package and Plan Supplement*

The Debtors will cause the Notice, Claims, and Balloting Agent to distribute the Solicitation Packages to holders of Claims in the Voting Classes on or before May 10, 2019.

The Solicitation Package (except for the Ballots) may also be obtained: (a) from the Notice, Claims, and Balloting Agent by (i) visiting https://cases.primeclerk.com/ThingsRemembered; (ii) writing to RMBR Liquidation, Inc., *et al.*, Ballot Processing Center, c/o Prime Clerk LLC, 830 3rd Ave, 3rd Floor New York, NY 10022; and/or (iii) emailing thingsrememberedballots@PrimeClerk.com with a reference to "Things Remembered" in the subject line; or (b) for a fee via PACER at http://www.deb.uscourts.gov.

At least 7 days prior to the Confirmation Hearing, the Debtors intend to file the Plan Supplement.  If the Plan Supplement is updated or otherwise modified, such modified or updated documents will be made available at https://cases.primeclerk.com/ThingsRemembered.  The Debtors will not serve paper or CD-ROM copies of the Plan Supplement; however, parties may obtain a copy of the Plan Supplement (a) from the Notice, Claims, and Balloting Agent by (i) calling the Debtors' restructuring hotline for US/Canada toll free at (844) 339-4117 and for International at (929) 333-8981; (ii) visiting the Debtors' restructuring website at: https://cases.primeclerk.com/ThingsRemembered; (iii) writing to RMBR Liquidation, Inc., *et al.*, Ballot Processing Center, c/o Prime Clerk LLC, 830 3rd Ave, 3rd Floor New York, NY 10022; and/or (iv) email thingsrememberedballots@PrimeClerk.com with a reference to "Things Remembered" in the subject line; or (b) for a fee via PACER at http://www.deb.uscourts.gov.

As described above, certain holders of Claims may not be entitled to vote because they are Unimpaired or are otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code.  In addition, certain holders of Claims and Interests may be Impaired but are receiving no distribution under the Plan, and are therefore deemed to reject the Plan and are not entitled to vote.  Such holders will receive only the Confirmation Hearing Notice and a non-voting status notice.  The Debtors are only distributing a Solicitation Package, including this Disclosure Statement and a Ballot to be used for voting to accept or reject the Plan, to the holders of Claims or Interests entitled to vote to accept or reject the Plan as of the Voting Record Date.

## F.    Voting Procedures

If, as of the Voting Record Date, you are a holder of a Claim in Class 4, the Voting Class, you may vote to accept or reject the Plan in accordance with the Solicitation Procedures by completing the Ballot and returning it in the envelope provided.  If your Claim or Interest is not included in the Voting Class, you are not entitled to vote and you will not receive a Solicitation Package.  Except as otherwise set forth herein, the Voting Record Date and all of the Debtors' solicitation and voting procedures shall apply to all of the Debtors' creditors and other parties in interest.

1.  *Voting Deadline*

**The Voting Deadline is May 29, 2019, at 11:59 p.m.**, prevailing Eastern Time (the "Voting Deadline"). To be counted as a vote to accept or reject the Plan, a Ballot must be properly executed, completed, and delivered, whether by first class mail, overnight delivery, or personal delivery, so that the Ballot is **actually received** by the Notice, Claims, and Balloting Agent no later than the Voting Deadline.

2.  *Voting Instructions*

As described above, the Debtors have retained Prime Clerk LLC to serve as the Notice, Claims, and Balloting Agent for purposes of the Plan. The Notice, Claims, and Balloting Agent is available to answer questions, provide additional copies of all materials, oversee the voting process, and process and tabulate Ballots for each Class entitled to vote to accept or reject the Plan.

<table>
<tr><td align="center"><b>BALLOTS</b></td></tr>
<tr><td>

To be counted, all Ballots must be **actually received** by the Notice, Claims, and Balloting Agent by the Voting Deadline, which is May 29, 2019 at 11:59 p.m., prevailing Eastern Time, at the following address:

RMBR Liquidation, Inc., *et al.*, Ballot Processing Center
c/o Prime Clerk LLC
830 Third Avenue, 3rd Floor
New York, NY 10022

If you have any questions on the procedure for voting on the Plan, please call the Debtors' restructuring hotline maintained by the Notice, Claims, and Balloting Agent at:
(844) 339-4117 (toll free)
(929) 333-8981 (international)

</td></tr>
</table>

More detailed instructions regarding the procedures for voting on the Plan are contained in the Ballots distributed to holders of Claims that are entitled to vote to accept or reject the Plan. All votes to accept or reject the Plan must be cast by using the appropriate Ballot. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by: (a) first class mail, in the return envelope provided with each Ballot; (b) overnight courier; or (c) hand-delivery, so that the Ballots are **actually received** by the Notice, Claims, and Balloting Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot. Any Ballot that is properly executed by the holder of a Claim entitled to vote that does not clearly indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

Each holder of a Claim entitled to vote to accept or reject the Plan may cast only one Ballot for each Claim in the Voting Class held by such holder. By signing and returning a Ballot, each holder of a Claim entitled to vote will certify to the Bankruptcy Court and the Debtors that no other Ballots with respect to such Claim have been cast or, if any other Ballots have been cast with respect to such Claim, such earlier Ballots are superseded and revoked.

All Ballots will be accompanied by postage prepaid return envelopes. It is important to follow the specific instructions provided on each Ballot, as failing to do so may result in your Ballot not being counted.

G.   **Disputed Claims Procedures**

The Disclosure Statement Order authorizes the Debtors to temporarily allow Claims against which an objection is pending as of the Voting Record Date in an amount that the Bankruptcy Court deems appropriate for purposes of permitting the holder of such Claim to vote to accept or reject the Plan. Pursuant to the Solicitation Procedures, if a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is Filed with the Court on or prior to ten (10) days before the Voting Deadline:  (i) the Debtors shall cause the applicable holder to be served with a disputed claim notice; and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined below)

occurs. The holder of a Claim in a Voting Class that is the subject of a pending objection on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection.

If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Bankruptcy Court fewer than ten days before the Voting Deadline, the applicable Claim shall be deemed temporarily allowed *for voting purposes only*, without further action by the holder of such Claim and without further order of the Bankruptcy Court, unless the Bankruptcy Court orders otherwise.

A "Resolution Event" means the occurrence of one or more of the following events no later than two business days prior to the Voting Deadline: (i) an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing; (ii) an order of the Bankruptcy Court is entered temporarily allowing such Claim *for voting purposes only* pursuant to Bankruptcy Rule 3018(a), after notice and a hearing; (iii) a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or (iv) the pending objection is voluntarily withdrawn by the objecting party. No later than one business day following the occurrence of a Resolution Event, the Debtors shall cause the Notice, Claims, and Balloting Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder.

**H.      Confirmation Hearing**

Assuming the requisite acceptances are obtained for the Plan, the Debtors intend to seek Confirmation of the Plan at the Confirmation Hearing. The Disclosure Statement Order scheduled the Confirmation Hearing to commence on [●], 2019, at [__] [ ].m., prevailing Eastern Time, before the Honorable Kevin Gross, United States Bankruptcy Judge, in Courtroom No. 6 of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment Filed with the Bankruptcy Court and served on the entities who have Filed objections to the Plan, without further notice to other parties in interest. The Bankruptcy Court, in its discretion and before the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. The Plan may be modified, if necessary, before, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

**ARTICLE IV.**

**BUSINESS DESCRIPTION**

**A.      Corporate History**

**1.      *Introduction***

RMBR Liquidation, Inc. (*f/k/a* Things Remembered, Inc.) (together with its Debtor and non-Debtor affiliates, the "Company"), was one of North America's largest specialty retailers focused on personalized, engraved, and embroidered gifts. The Company's multi-channel retail approach focused exclusively on personalized gift solutions for all gift-giving occasions, including weddings, birthdays, holidays, business events, and graduations, available online through its e-commerce website or at one of approximately 400 stores in malls throughout the United States and Canada.

(a)      ***General Background***

The Company was founded in 1966 as "Can Do" and initially operated as a small engraving and services shop. Over the course of the ensuing 50 years, the Company established a reputable brand name in the personalized gifts space as it expanded at its peak into 529 stores and 133 kiosks in the U.S. and Canada. As the Company expanded, so did its personalization capabilities. The Company initially offered limited categories of merchandise in its brick-and-mortar stores and later expanded to a broad range of personalized gifts and accessories including handbags, apparel, fashion jewelry, and homeware available both online and in stores.

###### (b) *The Company's Business Operations*

Headquartered in Highland Heights, Ohio, the Company operates approximately 400 brick-and-mortar stores across 43 states and four Canadian provinces. As of the Petition Date, the Company employed approximately 2,700 non-seasonal employees in the U.S. and Canada. The Company operates through its headquarters, satellite office in Columbus, Ohio, and fulfillment and distribution center (the "Fulfillment and Distribution Center") in North Jackson, Ohio. All merchandise flows through the Fulfillment and Distribution Center, where the Debtors utilize over 1,300 pieces of equipment to engrave, embroider, laser, foil stamp, and etch the merchandise pursuant to customer orders from both stores and online. The Company has refined the personalization process such that customers can expect to receive an engraved or embroidered product within an hour of visiting the store or 1–2 days if completing the personalization process through the Company's website.

## B. Prepetition Capital Structure

### 1. *The Debtors' Prepetition Capital Structure*

As of the Petition Date, the principal amount of the Debtors' consolidated funded debt obligations (the "Prepetition Debt Obligations") totaled approximately $143.17 million, comprised of: (a) approximately $18.27 million of obligations under the Revolving Credit Facility (as defined herein) and (b) approximately $124.92 million of obligations under the Term Loan (as defined herein).

### 2. *The Credit Agreement*

On May 24, 2012, in connection with the acquisition of Things Remembered, Inc. by certain prior equity investors, Things Remembered, Inc., as borrower, TRM Holdings Corporation, various lenders party thereto, and Barclays Bank PLC (and Cortland Capital Market Services LLC, as successor in interest to Barclays Bank PLC) as administrative agent and collateral agent entered into that certain Credit Agreement (as amended, restated, and supplemented from time to time, the "Credit Agreement"). The Credit Agreement made available to Things Remembered, Inc. a revolving credit facility and term loan facility.

On August 30, 2016, the lenders under the Credit Agreement and the prior equity investors of Things Remembered, Inc. consummated an out-of-court exchange transaction, pursuant to which the existing shares of TRM Holdco Corporation issued to such equity investors were cancelled and new shares were issued and distributed to the then-existing lenders. In connection with the transaction, parties to the Credit Agreement also amended and restated the Credit Agreement. As a result, all drawn revolving loans under the Credit Agreement were converted into term loans and the principal amount of all term loans (including the converted term loans) under the Credit Agreement were reduced to $95 million from $117 million. The existing revolving credit facility was cancelled and certain lenders provided a new $20 million revolving credit facility.

The Credit Agreement was further amended and supplemented several times thereafter, including a second amendment and restatement on January 30, 2018, pursuant to which the then-existing revolving credit facility was terminated and a new revolving credit facility was provided by certain lenders. As of the Petition Date, the revolving credit facility (the "Revolving Credit Facility") has approximately $18.72 million outstanding, with a maturity date of February 28, 2019, and the term loan (the "Term Loan") has an outstanding principal amount of approximately $124.92 million (including fees, costs, and expenses), after giving effect to the increase as a result of payment-in-kind interest ("PIK Interest") payments, with a maturity date of February 29, 2020.

### 3. *The Revolving Credit Facility*

The Revolving Credit Facility currently provides for total revolving credit commitments of $17 million. The Revolving Credit Facility provides for LIBOR loans and Base Rate loans. The LIBOR loans bear interest (per annum) at LIBOR (with a one percent floor) plus an eight percent margin, payable in cash, and 12 percent deferred interest. The Base Rate loans bear interest (per annum) at the higher of (a) the applicable prime lending rate, (b) 0.50 percent above the overnight federal funds rate, or (c) one percent above LIBOR, subject to a two percent floor) plus a seven percent margin, payable in cash, and 12 percent deferred interest. Interest payments are due the last business day of each applicable interest period with respect to LIBOR loans and quarterly

with respect to Base Rate loans, except that, in each case, deferred interest is only payable in cash on the earlier of the maturity date or the date the revolving credit commitments are terminated and paid in full.

The Revolving Credit Facility is secured by an all assets lien, including, without limitation, a lien on the Debtors' accounts (including receivables), inventory, deposit accounts, security accounts, cash, and cash equivalents, as well as on certain other property of the Debtors, including, without limitation, the Debtors' intellectual property and 65 percent and 100 percent of the equity in Things Remembered Canada, Inc. and Things Remembered, Inc., respectively.  To date approximately $11.72 million remains outstanding under the Revolving Credit Facility.

### 4. *The Term Loan*

The Term Loan currently bears interest at an annual rate equal to 12 percent, which consists of one percent of cash interest and 11 percent PIK Interest.  Both cash interest and PIK Interest are payable on the last business day of each calendar month.  Obligations under the Term Loan are secured by the same collateral as the Revolving Credit Facility; however, the Term Loan is subordinated, to the extent set forth in the Credit Agreement, to the payment in full of the obligations in respect of the Revolving Credit Facility.  As of the Petition Date, approximately $110.1 million in aggregate principal amount remained outstanding under the Term Loan Facility, and approximately $14.8 million in fees, costs, expenses, and PIK Interest accrued to balance, for a total outstanding balance of approximately $124.92 million.

### 5. *Equity*

KKR Lending Partners L.P. and Petrus Yield Opportunity Fund, L.P. hold approximately 66 percent of the common equity interests of TRM HoldCo Corp.  The remaining equity is held directly or indirectly by nine other lenders.

## ARTICLE V.

## EVENTS LEADING TO THE CHAPTER 11 CASES

### A.    Adverse Industry Trends and Operational Challenges.

A confluence of factors contributed to the Debtors' need to commence the Chapter 11 Cases.  These include macroeconomic factors—most significantly, the general shift away from brick-and-mortar stores to online channels and the accompanying departure of anchor mall tenants—which have led to a decrease in foot traffic and sales.  Microeconomic factors—including delays in the website migration, year-over-year lagging store sales, delayed procurement and non-receipt of inventory due to vendor payment issues, and a disproportionately large physical footprint—compounded the macroeconomic factors and led to both substantially reduced revenue and spending cuts across key operational areas.  Over time, these factors tightened the Debtors' liquidity and complicated their relationship with their vendors.  These factors culminated in a liquidity crisis by December 2018, when the Debtors faced dwindling cash flows, inaccessible inventory, tightening trade credit, the inability to access incremental liquidity, and winter holiday sales below historical numbers.

The Debtors, along with many other retail companies, faced a challenging commercial environment over the past several years brought on by increased online competition and the shift away from shopping at brick-and-mortar stores.  Given the Debtors' substantial brick-and-mortar presence in shopping malls, and the expenses associated therewith, the Debtors' business was heavily dependent on physical consumer traffic tied to anchor tenants, and resulting sales conversion, to meet sales and profitability targets.  The combination of the above factors, and others plaguing the retail industry as a whole, contributed to the Debtors falling short of their sale targets and depressed profitability performance.

In addition to the challenges facing brick-and-mortar retailers generally, the Debtors also suffered from operational challenges that have contributed to a steep decline in EBITDA.  First, the Company expended substantial capital in 2016 to revamp the merchandise structure and enhance the personalization experience.  These improvements temporarily drove positive comparable store sales.  But the increased demand was hampered by a decrease in foot traffic due to numerous anchor tenants terminating leases through bankruptcy or otherwise.  Second,

in November 2016, the Debtors migrated their website to respond to the transition of consumer preference from brick-and-mortar stores to online channels, but experienced technical challenges associated with the migration, which impacted sales. Third, in addition to challenges associated with the website migration, consistently declining sales squeezed liquidity and further forced cost cutting in key business areas, including with respect to marketing, inventory, store leases, and employees.

**B.    Supply Chain and Vendor Challenges.**

As the Debtors' liquidity tightened, vendors began to place pressure on the supply chain cost structure by delaying or cancelling shipments until receiving payment. Beginning in August 2018, merchandise shipments and inventory receipts began to slow due to shrinking liquidity and a lack of vendor support. Prior to the Petition Date, substantial numbers of vendors refused to ship inventory unless the Debtors paid cash on delivery, resulting in shelf-ready merchandise being stranded. Specifically, a large volume of inventory that was critical for the winter holiday season lay dormant in distribution centers and ports and was inaccessible due to a lack of liquidity necessary to satisfy vendors, which hurt the Company's performance during the all-important winter holiday season. Consequently, the Debtors were materially behind their inventory receipt plan. The lack of fresh and sufficient inventory further tightened the Debtors' liquidity, creating a negative feedback loop.

**C.    Unsustainable Store Footprint.**

Prior to the Petition Date, the Company's store footprint was unsustainable and costly. Despite closing 280 unprofitable U.S. stores from 2012–2018, the Company's sales continued to decrease each year. The Company proactively shortened lease terms at continuing stores to an average of 2.1 years and coordinated lease termination dates to coincide with the receipt of fourth quarter results. The Company's efforts to control rent costs and shift focus to profitable stores ultimately were unable to counteract the losses from industry trends and operational challenges.

Prior to the Petition Date, the Debtors conducted 37 closings of stores with January 31, 2019 lease expiration dates. The Debtors have continued closings of approximately 240 stores postpetition. In anticipation of these closings, the Debtors engaged the Consultant to begin liquidating the inventory in the closing stores and otherwise preparing the stores for turnover to the applicable landlords.

**D.    Restructuring Efforts.**

**1.    Operational Initiatives.**

In the months leading up to the Petition Date, the Debtors initiated multiple go-forward operational initiatives to salvage value. These included initiatives to increase brick-and-mortar profitability, such as store modernization through elimination of paper forms and the addition of iPads to streamline the personalization and sale process and shuttering of underperforming locations. The initiatives also included efforts to bolster the Debtors' online-direct sale business, including aggressively marketing to loyal customers in store closure areas to facilitate sale transfers to online channels and attracting new customers via an expanded partnership with Amazon and through increased service capabilities for the business-to-business customer segment.

In addition to implementing operational initiatives, the Company initiated discussions with its lenders and equity owners regarding potential restructuring alternatives to maximize stakeholder value. These restructuring alternatives included a going-concern sale, a multi-year out-of-court store closure process through ordinary course lease expirations, or an orderly chapter 11 liquidation. The Company determined to commence a prepetition marketing process to determine market interest in a going-concern sale of some or all of the Company's assets.

**2.    Retention of Advisors.**

The Debtors have worked with Kirkland & Ellis LLP, as restructuring counsel since February 2016. In January 2019, the Debtors retain Landis Rath & Cobb LLP as restructuring co-counsel. In December 2018, the Debtors hired Stifel, Nicolaus & Co., Inc. and Miller Buckfire & Co., LLC (collectively, "Stifel/Miller Buckfire"), as investment banker to initiate a comprehensive marketing process for some or all of the Debtors' assets. Berkeley Research Group, LLC ("BRG") had been assisting the Debtors with their restructuring efforts since January 2017.

### 3. Marketing Process.

In the face of a looming year-end payment under the Revolving Credit Facility and dwindling liquidity, the Debtors initiated discussions with lenders and equity owners regarding debt restructuring options to maximize stakeholder value. The Debtors, in consultation with the secured lenders, determined not to repay the Revolving Credit Facility at year-end as required by the Credit Agreement in order to increase incremental cash-on-hand and extend the timeline for exploring restructuring alternatives. The lenders forbore default remedies between year-end and the Petition Date. Ultimately, the lenders consented to the use of cash collateral, subject to the terms of the cash collateral order, creating $11 million in incremental cash-on-hand to fund the prepetition marketing process and these Chapter 11 Cases.

Recognizing the need to explore strategic alternatives, the Debtors worked with Kirkland & Ellis LLP, as restructuring counsel, and Stifel/Miller Buckfire, as investment banker, to test the market. Stifel/Miller Buckfire compiled a targeted list of strategic and financial buyers and initiated a comprehensive marketing process, and BRG compiled diligence information and responded to a high volume of diligence requests from multiple interested parties. With downward spiraling liquidity and increasing financial challenges, the Debtors concluded, in consultation with their legal and financial advisors, that pursuing a going-concern sale of the Direct Business and approximately 128 stores, coupled with a wind-down of all stores not acquired under the Stalking Horse APA, was the best option to maximize value for the Debtors' estates and creditors.

The Debtors and Stifel/Miller Buckfire engaged in an extensive marketing process to solicit bids for the Debtors' assets and for the Debtors' business as a going-concern. Leading up to the Petition Date, Stifel/Miller Buckfire contacted 28 potentially interested strategic and financial parties, including 11 financial parties and 17 strategic parties. Of these, approximately 7 parties entered into confidentiality agreements with the Debtors and received a copy of the confidential information memorandum, and thus began the diligence process.

By early January 2019, the marketing process yielded two written proposals to acquire the Debtors' Direct Business but no physical store locations. The Debtors and their advisors negotiated with both parties regarding material transaction terms, including purchase price, escrow payments for certain prepetition operational expenses, and chapter 11 timing milestones. These negotiations progressed toward definitive asset purchase documentation; however, just days before the Petition Date, these parties and the Debtors were unable to reach agreements sufficient to establish either party as a stalking horse bidder. Ultimately, the Debtors countered with necessary adjustments, but neither party accepted those adjustments going into these Chapter 11 Cases.

In the week preceding the Petition Date, Enesco submitted a written proposal seeking to acquire a broader asset base than the other proposals—the Direct Business and approximately 128 stores. The Debtors quickly moved to negotiate with Enesco in anticipation of obtaining a higher purchase price and preserving thousands of jobs. After vigorous negotiations, the Debtors and Enesco reached an agreement on material terms and moved toward definitive documentation.

The Debtors determined that Enesco's proposed $17.5 million purchase price for the Direct Business and Acquired Stores, subject to a right to add or remove stores with a 50 store minimum, was superior to the other potential stalking horse bids. Enesco's proposal provided multiple benefits over the other written proposals, including, among other benefits, Enesco's familiarity with the gifting sector, the broader acquired-asset base, and greater prospective employment levels.

## ARTICLE VI.

## EVENTS OF THE CHAPTER 11 CASES

**A.    First Day Pleadings and Other Case Matters**

### 1. First Day Relief

On the Petition Date, along with their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petitions"), the Debtors filed several motions (the "First Day Motions") designed to facilitate the

administration of the Chapter 11 Cases and minimize disruption to the Debtors' operations, by, among other things, easing the strain on the Debtors' relationships with employees, vendors, and customers following the commencement of the Chapter 11 Cases. A brief description of each of the First Day Motions and the evidence in support thereof is set forth in the *Declaration of Robert J. Duffy, Chief Restructuring Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions*, filed on the Petition Date. Significantly, pursuant to the First Day Motions, the Debtors sought the authority to pay the Claims of a number of their vendors in full, in the regular course of business.

The First Day Motions, and all proposed orders for relief in the Chapter 11 Cases, can be viewed free of charge at https://cases.primeclerk.com/ThingsRemembered.

### 2.    Approval of Use of Cash Collateral

Based on the Debtors' need for immediate liquidity to administer the Chapter 11 Cases, on the Petition Date, the Debtors filed a motion seeking authorization to use cash collateral on an interim and final basis. On March 29, 2019, the Court entered the *Final Order (A) Authorizing Postpetition Use Of Cash Collateral, (B) Granting Adequate Protection To The Prepetition Secured Lenders, (C) Modifying The Automatic Stay And (D) Granting Related Relief* [Docket No. 353].

### B.    Bid Procedures and Sale Motion

On the Petition Date, the Debtors filed the *Motion for Entry of Orders (I) Appointing a Consumer Privacy Ombudsman, (II)(A) Approving Bidding Procedures, (B) Approving Bid Protections, (C) Scheduling an Auction and Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Establishing Procedures for the Assumption and Assignment of Contracts and Leases, (III)(A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, and (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (IV) Granting Related Relief* [Docket No. 23] (the "Bid Procedures and Sale Motion"). By Order dated January 21, 2019, the Court approved the Debtors' Bid Procedures Motion [Docket No. 150].

On March 6, 2019, the Court entered the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, and (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. 292] (the "Sale Order") approving the sale of substantially all of the Debtors' assets to Enesco. In addition to the purchase price of $17.5 million (subject to post-closing adjustments), the Debtors assumed and assigned 178 leases of non-residential real property to Enesco. The sale to Enesco closed on March 8, 2019.

### C.    Executory Contracts and Unexpired Leases

### 1.    Assumption and Rejection of Executory Contracts and Unexpired Leases

The Debtors are party to a substantial number of executory contracts. The Debtors are conducting a comprehensive analysis of their executory contracts and have, and intend to continue to, engage in extensive discussions with contract and lease counterparties regarding the contributions such parties are making to the restructuring process.

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and

rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order.  Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law or as otherwise agreed by the Debtors and the applicable counterparty to the Executory Contract or Unexpired Lease.

## 2.   Cure of Default for Assumed Executory Contracts and Unexpired Leases

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed or assumed and assigned, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree.  In the event of a dispute regarding:  (1) the amount of any Cure Claim; (2) the ability of the Debtors, Post-Effective Date Debtors, or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least seven (7) days before the Voting Deadline, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Claim must be Filed by the Cure/Assumption Objection Deadline.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim.  To the extent that the Debtors seek to assume and assign an Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

In the event of an unresolved dispute regarding (1) the amount of any Cure Claim, (2) the ability of the Debtors, Post-Effective Date Debtors, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, or (3) any other matter pertaining to assumption, assignment, or payments of any Cure Claims required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order(s) of the Bankruptcy Court.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

**3.    Adequate Assurance of Future Performance under Assumed Executory Contracts and Unexpired Leases**

The Debtors are prepared to demonstrate the feasibility of the Plan at the Confirmation Hearing in satisfaction of any obligation to provide adequate assurance of future performance under Executory Contracts and Unexpired Leases that are assumed under the Plan.

**D.    Store Closing Process**

On February 7, 2019, the Court entered the *Interim Order (I) Authorizing the Debtors to Assume the Consultant Agreement, (II) Approving Procedures for Store Closing Sales, (III) Approving the Implementation of Customary Store Bonus Program and Payments to Non-Insiders Thereunder, and (IV) Granting Related Relief* [Docket No. 64] (the "Interim Store Closing Order").  On February 28, 2019, the Court entered the *Final Order (I) Authorizing the Debtors to Assume the Consultant Agreement, (II) Approving Procedures for Store Closing Sales, (III) Approving the Implementation of Customary Store Bonus Program and Payments to Non-Insiders Thereunder, and (IV) Granting Related Relief* [Docket No. 217] (the "Final Store Closing Order" and together with the Interim Store Closing Order, the "Store Closing Orders").  Pursuant to the Store Closing Orders, the JV Agent led store liquidation sales at 228 locations that were not assumed and assigned to Enesco.

**E.    Schedules and Statements**

On March 2, 2019, the Debtors filed their *Schedules of Assets and Liabilities and Statements of Financial Affairs* [Docket Nos. 242-247] (the "Schedules and Statements").  On March 5, 2019, the Office of the United States Trustee conducted and closed the meeting of creditors convened pursuant to section 341 of the Bankruptcy Code.

**F.    Litigation Matters**

In the ordinary course of business, the Debtors are parties to certain lawsuits, legal proceedings, collection proceedings, and claims arising out of their business operations.  The Debtors cannot predict with certainty the outcome of these lawsuits, legal proceedings, and claims.

With certain exceptions, the filing of the Chapter 11 Cases operates as a stay with respect to the commencement or continuation of litigation against the Debtors that was or could have been commenced before the commencement of the Chapter 11 Cases.  In addition, the Debtors' liability with respect to litigation stayed by the commencement of the Chapter 11 Cases generally is subject to discharge, settlement, and release upon confirmation of a plan under chapter 11, with certain exceptions.  Therefore, certain litigation Claims against the Debtors may be subject to discharge in connection with the Chapter 11 Cases.

**G.    Claims Bar Date**

The Bankruptcy Court has established [__], 2019, at 4:00 p.m., prevailing Eastern Time, as the Claims bar date (the "Admin/Priority Bar Date") in the Chapter 11 Cases.  The following entities holding Claims against the Debtors that arose (or that are deemed to have arisen) prior to the Petition Date, must file proofs of claim on or before the Bar Date: (i) any right to payment arising (or deemed to arise) before the Petition Date that is secured by property of the Debtors' estates, (ii) any right to payment constituting a priority claim under Bankruptcy Code section 507(a) against the Debtors arising (or deemed to arise) before the Petition Date, (iii) any right to payment constituting a cost or expense of administration of the Debtors' chapter 11 cases arising under Bankruptcy Code sections 503(b) and 507(a)(2) against the Debtors that may have arisen, accrued or otherwise become due and payable at any time on and subsequent to the Petition Date through April 30, 2019, and (iv) any right to payment under Bankruptcy Code section 503(b)(9).  The Court has established August 5, 2019 at 4:00 p.m., prevailing Eastern Time, as the governmental entity bar date (the "Governmental Bar Date").

In accordance with Bankruptcy Rule 3003(c)(2), if any person or entity that is required, but fails, to file a proof of claim on or before the Bar Date: (1) such person or entity will be forever barred, estopped, and enjoined from asserting such Claim against the Debtors (or filing a proof of claim with respect thereto); (2) the Debtors and their property may be forever discharged from any and all indebtedness or liability with respect to or arising from

such Claim; (3) such person or entity will not receive any distribution in the Chapter 11 Cases on account of that Claim; and (4) such person or entity will not be permitted to vote on any plan or plans of reorganization for the Debtors on account of these barred Claims or receive further notices regarding such Claim.

As described in this Disclosure Statement, the distribution you receive on account of your Claim (if any) may depend, in part, on the amount of Claims for which proofs of claim are filed on or before the Bar Date.

## ARTICLE VII.

## SUMMARY OF THE PLAN

This section provides a summary of the structure and means for implementation of the Plan and the classification and treatment of Claims and Interests under the Plan, and is qualified in its entirety by reference to the Plan (as well as any exhibits thereto and definitions therein).

The statements contained in this Disclosure Statement include summaries of the provisions contained in the Plan and in the documents referred to therein. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions of the Plan or documents referred to therein.

The Plan controls the actual treatment of Claims against, and Interests in, the Debtors under the Plan, and will, upon the occurrence of the Effective Date, be binding upon all holders of Claims against and Interests in the Debtors and the Debtors' Estates, all parties receiving property under the Plan, and other parties in interest. In the event of any conflict between this Disclosure Statement and the Plan or any other operative document, the terms of the Plan and/or such other operative document shall control.

### A.       Means for Implementation of the Plan

#### 1.   *Plan Administrator*

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Post-Effective Date Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole director and the sole officer of the Post-Effective Date Debtors and shall succeed to the powers of the Post-Effective Date Debtors' directors and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors. For the avoidance of doubt, the foregoing shall not limit the authority of the Post-Effective Date Debtors or the Plan Administrator, as applicable, to continue the employment any former director or officer.

#### (a)       *Powers of the Plan Administrator*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the businesses and affairs of the Debtors and the Post-Effective Date Debtors, as applicable, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the remaining assets of the Post-Effective Date Debtors; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (3) making distributions as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors; (7) administering and paying taxes of the Post-Effective Date Debtors, including filing tax returns; (8) representing the interests of the Post-Effective Date Debtors before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (9) exercising such other powers as may be vested in it pursuant to an order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Post-Effective Date Debtors and the Prepetition Agent; provided that such resignation shall only become effective upon the

appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtors shall be terminated.

### (b)    *Appointment of the Plan Administrator*

The Plan Administrator shall be jointly appointed by the Debtors and the Prepetition Agent. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

### (c)    *Retention of Professionals*

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Post-Effective Date Debtors from the Wind Down Amount, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

### (d)    *Compensation of the Plan Administrator*

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and shall be jointly determined by the Debtors and Prepetition Agent.

### (e)    *Wind Down Amount*

Notwithstanding anything to the contrary contained in the Plan, all fees, expenses, disbursements and other costs of the Plan Administrator and the Post-Effective Date Debtors, including, without limitation, fees and expenses of any attorneys, accountants, and other professionals engaged by the Plan Administrator and/or the Post-Effective Date Debtors, if any, shall be funded from the Wind Down Amount. Any amounts remaining in the Wind Down Amount after entry of a final decree closing the last of the Chapter 11 Cases shall be paid *first,* to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full and, *second,* to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

### (f)    *Priority Claims Reserve*

On the Effective Date, the Plan Administrator shall establish the Priority Claims Reserve by depositing Cash in the amount of the Priority Claims Reserve Amount into the Priority Claims Reserve.

The Priority Claims Reserve shall be maintained in trust solely for holders of Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims) and for no other Entities until all Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims) have been paid in full. Funds held in the Priority Claims Reserve shall not be considered property of the Estates of the Debtors or the Post-Effective Date Debtors. The Priority Claims Reserve Amount shall be used to pay holders of all Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims), to the extent that such Priority Claims and Administrative Claims have not been paid in full on or before the Effective Date. If all or any portion of a Priority Claim or Administrative Claim (other than a Professional Fee Claim) shall become a disallowed Claim, then the amount on deposit in the Priority Claims Reserve attributable to such surplus or such disallowed Claim, including the interest that has accrued on said amount while on deposit in the Priority Claims Reserve, shall remain in the Priority Claims Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Priority Claims Reserve is sufficient to ensure that all Allowed Priority Claims and Allowed Administrative Claims (other than Professional Fee Claims) will be paid in accordance with the Plan. Any amounts remaining in the Priority Claims Reserve after all Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims) are paid in full, shall be paid *first,* to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full and,

*second*, to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

**2. Wind Down**

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall take any and all actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

**3. Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation**

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtors. The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

**4. Tax Returns**

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**5. Dissolution of the Post-Effective Date Debtor**

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtors shall be deemed to be dissolved without any further action by the Post-Effective Date Debtors, including the filing of any documents with the secretary of state for the state in which the Post-Effective Date Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtors in and withdraw the Post-Effective Date Debtors from applicable states.

**6. Disbursing Agent**

Distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtors and paid from the Wind Down Amount.

(a)    *Powers of the Disbursing Agent*

The Disbursing Agent shall be empowered to:  (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 7.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash from the Wind Down Amount.

### 8.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

(a)    *Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

(b)    *Delivery of Distributions*

Except as otherwise provided in the Plan, the Post-Effective Date Debtors shall make distributions to holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided that* the manner of such distributions shall be determined at the discretion of the Post-Effective Date Debtors; *provided, further*, that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder.

(c)    *Minimum Distributions*

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII.A of the Plan and its holder is forever barred pursuant to Article VIII.F of the Plan from asserting that Claim against the Debtors or their property.

(d)    *Undeliverable Distributions and Unclaimed Property*

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Post-Effective Date Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

## B.    Settlement, Release, Injunction, and Related Provisions

### 1.    General Settlement of Claims and Interests

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the

provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

2. **Terms of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

3. **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Post-Effective Date Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

4. **Releases by the Debtors**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Credit Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan], the filing of the**

Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article VIII.C of the Plan by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article VIII.C of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

5.    Releases by Holders of Claims and Interests

As of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Credit Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in Article VIII.D of the Plan, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article VIII.D of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties or the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

The Debtors believe the third-party release is entirely consensual under the established case law in the United States Bankruptcy Court for the District of Delaware. *See Indianapolis Downs, LLC*, 486 B.R. 286, 304–06 (Bankr. D. Del. 2013). The Debtors will be prepared to meet their burden to establish the basis for the releases, exculpations, and injunctions provided by the Plan as part of Confirmation of the Plan.

As more fully explained above and in the Plan, the effect of this consensual third party release will be a full and final release of any and all causes of action and all other claims against certain parties as of the Effective Date of the Plan, to the extent such causes of action or claims relate, generally, to the subject matter of the holders' Claim or the prior or existing business or operations of the Debtors. Such consensual release will include both known and unknown causes of action and claims. As described more fully in the Plan, the parties receiving releases include (a) the Debtors; (b) the Post-Effective Date Debtors; (c) each Prepetition Secured Lender; (d) the Administrative Agent; (e) the Purchaser; (f) all Holders of Claims; (h) all Holders of Interests; (i) each current and former Affiliate of each Entity in clause (a) through (h); and (j) each Related Party of each Entity in clause (a) through (i).

Notwithstanding the foregoing, an Entity shall be neither a Releasing Party nor a Released Party if it: (x) does not vote to, and is not deemed to, accept the Plan; and (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII.D of the Plan that is not resolved before Confirmation; provided, however, that any such Entity shall be identified by name as a non-Releasing Party and non-Released Party in the Confirmation Order.

6. Exculpation

**Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any holder of a Cause of Action, Claim, or Interest for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction(s), the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties, the Prepetition Agent and Prepetition Lenders have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

7. Injunction

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion**

requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article VIII.E of the Plan.

8.    Setoffs and Recoupment

Except as expressly provided in the Plan, each Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Retained Causes of Action that such Post-Effective Date Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Post-Effective Date Debtor(s) and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided that* neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any and all claims, rights, and Retained Causes of Action that such Post-Effective Date Debtor or its successor may possess against the applicable holder. In no event shall any holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article VI of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

9.    Substantive Consolidation

a.    The Plan serves as a motion by the Debtors seeking entry of an order substantively consolidating all of the Estates of all of the Debtors into a single consolidated estate for all purposes associated with confirmation and consummation of the Plan. Intercompany Claims and Intercompany Interests are deemed to be satisfied and resolved by the substantive consolidation provided for in the Plan.

b.    Sections 105(a) and 1123(a)(5) of the Bankruptcy Code empower a bankruptcy court to authorize substantive consolidation pursuant to a chapter 11 plan over the objections of creditors. *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005). The Third Circuit in *Owens Corning* discussed at length substantive consolidation in bankruptcy proceedings, as well as its genesis and the impact it has on debtors' creditors and their rights and recoveries. The Court provided following the baseline standards for approval of non-consensual substantive consolidation, while leaving the trial court with discretion to assess what facts are necessary to meet these standards:

(i)    prepetition [the debtors] disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.

Id. at 211. Following *Owens Corning*, Courts in this District have clarified that substantive consolidation is also appropriate where the parties consent to it. *See Schroeder v. New Century Liquidating Trust (In re New Century TRS Holdings, Inc.)*, 407 B.R. 576, 591 (D. Del. 2009).

The Debtors believe that substantive consolidation is warranted because the Prepetition Agent, on behalf of holders of Class 4 Revolver Claims (the only impaired class entitled to distributions under the Plan) has consented to substantive consolidation. Further, the Debtors historically operated on a consolidated basis as is demonstrated by, among other things, the following: (i) substantially all of the Debtors' employees were employed

and paid by RMBR Liquidation, Inc., (ii) the Debtors operated a consolidated cash management system, with almost all of the Debtors' disbursements being made from RMBR Liquidation, Inc.'s operating accounts, (iii) almost all of the Debtors' outward facing activities were conducted by RMBR Liquidation, Inc., including that substantially all outside vendors issued invoices to RMBR Liquidation, Inc., and (iv) the Debtors' clients, vendors and industry participants identified the Debtors as "Things Remembered" as opposed to their separate corporate identities.

The Debtors further submit that creditors will not be harmed by substantive consolidation. Given the nominal amount of assets held by certain of the Debtors, and the expense of generating separate chapter 11 plans for each of the Debtors, the Debtors believe that the overall effect of substantive consolidation will be more beneficial than harmful to creditors and will allow for greater efficiencies and simplification in administering the Plan. Accordingly, the Debtors believe that substantive consolidation of the Debtors' Estates under the terms of the Plan will not adversely impact the treatment of the Debtors' creditors, but rather will reduce expenses by decreasing the administrative difficulties and costs related to the administration of the Debtors' Estates separately.

c.    The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, confirmation, and Distributions. If this substantive consolidation is approved, then for all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor, to the extent such exist, shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Moreover, (a) no Distribution shall be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein; (b) all guaranties of any one of the Debtors of the obligations of any of the other Debtors, to the extent such exist, shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the consolidated Debtors' Estates; and (c) every Claim that is timely Filed or to be Filed in the Chapter 11 Cases of any of the Debtors shall be deemed Filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

d.    In addition, notwithstanding any provision of the Plan to the contrary, any holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation (if such exists), or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims. Claims against more than one of the Debtors arising from the same injury, damage, cause of action, or common facts shall be Allowed only once as if such Claim were against a single Debtor.

e.    Any alleged defaults under any applicable agreement, including executory contracts and unexpired leases, with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

f.    As soon as practicable after the Effective Date, the Plan Administrator is authorized to and shall submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes each of the Chapter 11 Cases except RMBR Liquidation, Inc.'s Chapter 11 Case. The Debtors' consolidated estate shall be administered through RMBR Liquidation, Inc.'s Chapter 11 Case. Once the Plan has been fully administered, the Plan Administrator shall file a final report and a motion seeking a final decree in accordance with Local Rule 3022-1.

## ARTICLE VIII.

### STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

The following is a brief summary of the confirmation process.  Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and to consult their own advisors with respect to the summary provided in this Disclosure Statement.

A.    **Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires a bankruptcy court, after notice, to conduct a hearing to consider confirmation of a chapter 11 plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. **The Bankruptcy Court has scheduled the Confirmation Hearing for [____], at [___], prevailing Eastern Time.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or the Filing of a notice of such adjournment served in accordance with the order approving this Disclosure Statement and Solicitation Procedures. Any objection to the Plan must: (1) be in writing; (2) conform to the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the District of Delaware; (3) state the name, address, phone number, and email address of the objecting party and the amount and nature of the Claim or Interest of such entity, if any; (4) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (5) be Filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** by the following notice parties set forth below no later than the Plan Objection Deadline. **Unless an objection to the Plan is timely served and Filed, it may not be considered by the Bankruptcy Court.**

| Co-Counsel to the Debtors | |
|---|---|
| **KIRKLAND & ELLIS LLP**<br>Christopher T. Greco, P.C. (admitted pro hac vice)<br>Derek I. Hunter (admitted pro hac vice)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>-and-<br><br>**KIRKLAND & ELLIS LLP**<br>Spencer A. Winters (admitted pro hac vice)<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile:  (312) 862-2200 | Adam G. Landis<br>Matthew B. McGuire<br>Kimberly A. Brown<br>**LANDIS RATH & COBB LLP**<br>919 Market Street<br>Suite 1800<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4400<br>Facsimile: (302) 467-4450 |
| *Counsel to the Prepetition Secured Lenders* | *Counsel to Committee* |
| **Weil Gotshal & Manges LLP**<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn: David Griffiths | **Kelly Drye & Warren LLP**<br>101 Park Avenue<br>New York, New York 10178<br>Attn: Jason Adams |
| U.S. Trustee | |
| Office of the United States Trustee<br>The District of Delaware<br>844 King Street, Suite 2207<br>Wilmington, Delaware 19801<br>Attn:  Timothy Fox | |

B.    **Confirmation Standards**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors believe that the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code and that they have complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code. Specifically, the Debtors believe that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code, including those set forth below.

1. *Feasibility*

The Bankruptcy Code requires that to confirm a chapter 11 plan, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor(s) unless contemplated by the plan.

The Plan provides for the liquidation and distribution of the Debtors' assets. Accordingly, the Debtors believe that all Plan obligations will be satisfied without the need for further reorganization of the Debtors.

2. *Best Interests of Creditors*

Notwithstanding acceptance of the Plan by a voting Impaired Class, to confirm the Plan, the Bankruptcy Court must still independently determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class that has not voted to accept the Plan, meaning that the Plan provides each such holder with a recovery that has a value at least equal to the value of the recovery that each such holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. Accordingly, if an Impaired Class does not unanimously vote to accept the Plan, the best interests test requires the Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the recovery that each such Class member would receive if the Debtors were liquidated under chapter 7.

The Debtors believe that the Plan satisfies the best interests test because, among other things, the recoveries expected to be available to holders of Allowed Claims under the Plan will be greater than the recoveries expected to be available in a chapter 7 liquidation, as discussed more fully below.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets and to make distributions to creditors in accordance with the priorities established in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of their collateral. If any assets remain in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to be paid. Unsecured creditors are paid from any remaining sale proceeds, according to their respective priorities. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, interest holders receive the balance that remains, if any, after all creditors are paid.

Substantially all of the assets of the Debtors' business were liquidated through the Sale Transaction. Although the Plan effects a liquidation of the Debtors' remaining assets and a chapter 7 liquidation would achieve the same goal, the Debtors believe that the Plan provides a greater recovery to holders of Allowed General Unsecured Claims than would a chapter 7 liquidation. Liquidating the Debtors' Estates under the Plan likely provides holders of Allowed Revolver Claims with a larger, more timely recovery in part because of the expenses that would be incurred in a chapter 7 liquidation, including the potential added time (thereby reducing the present value of any recovery for holders) and expense incurred by the chapter 7 trustee and any retained professionals in familiarizing themselves with the Chapter 11 Cases. *See, e.g.*, 11 U.S.C. § 326(a) (providing for compensation of a chapter 7 trustee); 11 U.S.C. 503(b)(2) (providing administrative expense status for compensation and expenses of a chapter 7 trustee and such trustee's professionals). The conversion to chapter 7 would also require entry of a new bar date. *See* Fed. R. Bankr. P. 1019(2); 3002(c). Thus, the amount of Claims ultimately filed and Allowed against the Debtors could materially increase, thereby further reducing creditor recoveries versus those available under the Plan.

Accordingly, the Debtors believe that the Plan is in the best interests of creditors.

C.    **Alternative Plans**

The Debtors do not believe that there are any alternative plans for the reorganization or liquidation of the Debtors' Estates. The Debtors believe that the Plan, as described herein, enables holders of Claims and Interests to realize the greatest possible value under the circumstances and that, compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

D.    **Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to Confirmation that, except as described in the following section, each class of claims or equity interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is presumed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. Pursuant to section 1124 of the Bankruptcy Code, a class is "impaired" unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (2) cures any default, reinstates the original terms of such obligation, and compensates the applicable party in question; or (3) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled to any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired creditors as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject a plan. Votes that have been "designated" under section 1126(e) of the Bankruptcy Code are not included in the calculation of acceptance by a class of claims. Thus, a Class of creditor Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually voting cast their Ballots in favor of acceptance, subject to Article III of the Plan. Only holders of Claims in the Voting Classes will be entitled to vote on the Plan.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in dollar amount of those interests who actually vote to accept or reject a plan. Votes that have been "designated" under section 1126(e) of the Bankruptcy Code are not included in the calculation of acceptance by a class of interests. Thus, a Class of Interests will have voted to accept the Plan only if two-thirds in amount actually voting cast their Ballots in favor of acceptance, not counting designated votes, subject to Article III of the Plan. No Class including holders of Interests is entitled to vote on the Plan.

Article III.F of the Plan provides in full: "If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan." Such "deemed acceptance" by an impaired class in which no class members submit ballots satisfies section 1129(a)(10) of the Bankruptcy Code. *See In re Tribune Co.*, 464 B.R. 126, 183 (Bankr. D. Del. 2011) ("Would 'deemed acceptance' by a non-voting impaired class, in the absence of objection, constitute the necessary 'consent' to a proposed 'per plan' scheme? I conclude that it may." (footnote omitted)); *see In re Adelphia Commc'ns Corp.*, 368 B.R. 14, 259–63 (Bankr. S.D.N.Y. 2007).

E.    **Confirmation Without Acceptance by All Impaired Classes**

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if Impaired Classes entitled to vote on the plan have not accepted it or if an Impaired Class is deemed to reject the Plan; *provided* that the plan is accepted by at least one Impaired Class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

1.    **No Unfair Discrimination**

This test applies to Classes of Claims or Interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of Classes of Claims of equal rank (*e.g.*, classes of the same legal character). The Debtors do not believe the Plan discriminates unfairly against any Impaired Class of Claims or Interests. The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests satisfy the foregoing requirements for nonconsensual Confirmation.

### 2.    Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100 percent of the amount of the allowed claims in such class.  As to the non-accepting class, the test sets different standards depending on the type of claims or interests in such class.  As set forth below, the Debtors believe that the Plan satisfies the "fair and equitable" requirement because, for each applicable Class, there is no Class of equal priority receiving more favorable treatment and no Class that is junior to such dissenting Class that will receive or retain any property on account of the Claims or Interests in such Class.

#### (a)    *Secured Claims*

The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that:  (i) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (ii) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a present value, as of the effective date of the plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

#### (b)    *Unsecured Claims*

The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims requires that either:  (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or any equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior equity interest any property.

#### (c)    *Equity Interests*

The condition that a plan be "fair and equitable" to a non-accepting class of equity interests includes the requirements that either:  (i) the plan provides that each holder of an equity interest in that class receives or retains under the plan on account of that equity interest property of a value, as of the effective date of the plan, equal to the greater of:  (A) the allowed amount of any fixed liquidation preference to which such holder is entitled; (B) any fixed redemption price to which such holder is entitled; or (C) the value of such interest; or (ii) if the class does not receive the amount as required under (i) hereof, no class of equity interests junior to the non-accepting class may receive a distribution under the plan.

## ARTICLE IX.

## CERTAIN RISK FACTORS TO BE CONSIDERED BEFORE VOTING

Holders of Claims should read and carefully consider the risk factors set forth below, as well as the other information set forth in this Disclosure Statement and the documents delivered together with this Disclosure Statement, referred to or incorporated by reference in this Disclosure Statement, before voting to accept or reject the Plan.  These factors should not be regarded as constituting the only risks present in connection with the Debtors' businesses or the Plan and its implementation.

**A.    Risk Factors that May Affect Recoveries Available to holders of Allowed Claims Under the Plan**

### 1.    *Actual Amounts of Allowed Claims May Differ from Estimated Amounts of Allowed Claims, Thereby Adversely Affecting the Recoveries of Some holders of Allowed Claims*

The estimates of Allowed Claims and recoveries for holders of Allowed Claims set forth in this Disclosure Statement are based on various assumptions.  Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may significantly vary from the estimated Claims contained in this Disclosure Statement.  Moreover, the Debtors cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed.  Such differences may materially and

adversely affect, among other things, the recoveries to holders of Allowed Claims and Allowed Interests under the Plan. Some holders are not entitled to any recovery pursuant to the terms of the Plan, and, depending on the accuracy of the Debtors' various assumptions, even those holders entitled to a recovery under the terms of the Plan may ultimately receive no recovery.

### 2.  *The Debtors Cannot State with Certainty What Recovery Will Be Available to holders of Allowed Claims in the Voting Classes*

The Debtors cannot know with certainty, at this time, the number or amount of Claims in the Voting Classes that will ultimately be Allowed and how the amount of Allowed Claims will compare to the estimates provided herein. For example, a number of Proofs of Claim allege Claims in an unliquidated amount that will require future resolution, making the amount of any Allowed Claim based on such Proof of Claim entirely speculative as of the date of this Disclosure Statement. In addition, the Debtors are continuing to review the Proofs of Claim filed in their Chapter 11 Cases. As such, the estimated amount of Claims may materially change due to the Debtors' ongoing review. Accordingly, because certain Claims under the Plan will be paid on a Pro Rata basis, the Debtors cannot state with certainty what recoveries will be available to holders of Allowed Claims in the Voting Classes.

### 3.  *Any Valuation of Any Assets to be Distributed under the Plan Is Speculative and Could Potentially Be Zero*

Any valuation of any of the assets to be distributed under the Plan is necessarily speculative, and the value of such assets could potentially be zero. Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Debtors' creditors, including holders of Claims in the Voting Classes.

### 4.  *The Debtors Cannot Guaranty Recoveries or the Timing of Such Recoveries*

Although the Debtors have made commercially reasonable efforts to estimate Allowed Claims, including Administrative Claims, Priority Tax Claims, and Other Priority Claims, it is possible that the actual amount of such Allowed Claims is materially higher than the Debtors' estimates. Creditor recoveries could be materially reduced or eliminated in this instance. In addition, the timing of actual distributions to holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, the Debtors cannot guaranty the timing of any recovery on an Allowed Claim.

### 5.  *Certain Tax Implications of the Debtors' Bankruptcy*

Holders of Allowed Claims should carefully review Article X of this Disclosure Statement, "Certain United States Federal Income Tax Consequences," for a description of certain tax implications of the Plan and the Chapter 11 Cases.

## B.    Certain Bankruptcy Law Considerations

The occurrence or nonoccurrence of any or all of the following contingencies, and any others, may affect distributions available to holders of Allowed Claims and Allowed Interests under the Plan but will not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Plan or necessarily require a re-solicitation of the votes of holders of Claims in such Impaired Classes.

### 1.  *Parties in Interest May Object to the Plan's Classification of Claims and Interests or the Amount of Such Claims or Interests*

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

Furthermore, certain parties in interest, including the Debtors, reserve the right, under the Plan, to object to the amount or classification of any Claim. The estimates set forth in this Disclosure Statement cannot be relied upon by any holder of a Claim when such Claim is or may be subject to an objection or is not yet Allowed. Any holder of a Claim that is or may be subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

### 2. *Failure to Satisfy Vote Requirements*

In the event that votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Plan. In the event that sufficient votes are not received, the Debtors may seek to pursue another strategy to wind down the Estates, such as an alternative chapter 11 plan, a dismissal of the Chapter 11 Cases and an out-of-court dissolution, an assignment for the benefit of creditors, a conversion to a chapter 7 case, or other strategies. There can be no assurance that the terms of any such alternative strategies would be similar or as favorable to the holders of Allowed Claims and Allowed Interests as those proposed in the Plan.

### 3. *The Debtors May Not Be Able to Secure Confirmation of the Plan*

The Debtors will need to satisfy section 1129 of the Bankruptcy Code, which sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, a finding by a bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims and interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim or an Allowed Interest might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that this Disclosure Statement, the Solicitation Procedures, and the voting results are appropriate, the Bankruptcy Court can still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation have not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes. If the Plan is not confirmed, it is unclear what distributions, if any, holders of Allowed Claims and Allowed Interests will receive with respect to their Allowed Claims and Allowed Interests. The Bankruptcy Court, as a court of equity, may exercise substantial discretion.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for Confirmation. Any such modifications may result in a less favorable treatment of any Class than the treatment currently provided in the Plan. Such a less favorable treatment may include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

### 4. *Nonconsensual Confirmation*

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting classes. The Debtors believe that the Plan satisfies these requirements and the Debtors may request such nonconsensual Confirmation in accordance with section 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual Confirmation of the Plan may result in, among other things, increased expenses and the expiration of any commitment to provide support for the Plan, financially or otherwise.

### 5.    *Risk of Nonoccurrence of the Effective Date*

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether such an Effective Date will, in fact, occur.

### 6.    *Contingencies May Affect Votes of Impaired Classes to Accept or Reject the Plan*

The distributions available to holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Claims to be Allowed. The occurrence of any and all such contingencies, which may affect distributions available to holders of Allowed Claims and Allowed Interests under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

### 7.    *Risk Affecting Potential Recoveries of holders of Claims in the Voting Classes*

The Debtors cannot state with any degree of certainty what recovery will be available to holders of Allowed Claims in the Voting Classes. In particular, the Debtors cannot know, at this time, the number or size of Claims in the Voting Classes which will ultimately be Allowed or how many assets will remain after paying all Allowed Claims which are senior to the Claims of holders in the Voting Classes. The ultimate amount of Allowed Claims in the Voting Classes could materially reduce the recovery available to holders of Allowed Claims in the Voting Classes.

### C.    Disclosure Statement Disclaimer

### 1.    *The Financial Information Contained in this Disclosure Statement Has Not Been Audited*

In preparing this Disclosure Statement, the Debtors and their advisors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information, and any conclusions or estimates drawn from such financial information, provided in this Disclosure Statement, and while the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant that the financial information contained herein, or any such conclusions or estimates drawn therefrom, is without inaccuracies.

### 2.    *Information Contained in this Disclosure Statement Is for Soliciting Votes*

The information contained in this Disclosure Statement is for the purposes of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

### 3.    *This Disclosure Statement Was Not Reviewed or Approved by the United States Securities and Exchange Commission*

This Disclosure Statement was not filed with the United States Securities and Exchange Commission under the Securities Act or applicable state securities laws. Neither the United States Securities and Exchange Commission nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibit or the statements contained in this Disclosure Statement.

### 4.    *This Disclosure Statement May Contain Forward Looking Statements*

This Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "will," "might," "expect," "believe," "anticipate," "could," "would," "estimate," "continue," "pursue," or the negative thereof or comparable terminology. All forward looking statements are necessarily speculative, and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements. The information contained herein is an estimate only, based upon information currently available to the Debtors.

5. *No Legal or Tax Advice Is Provided to You by this Disclosure Statement*

**This Disclosure Statement is not legal advice to you.**  The contents of this Disclosure Statement should not be construed as legal, business, or tax advice.  Each holder of a Claim or an Interest should consult his or her own legal counsel, accountant, or other applicable advisor with regard to any legal, tax, and other matters concerning his or her Claim or Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

6. *No Admissions Made*

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, holders of Allowed Claims or Allowed Interests, or any other parties in interest.

7. *Failure to Identify Litigation Claims or Projected Objections*

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement.  The Debtors or the Plan Administrator may seek to investigate, File, and prosecute Claims and Interests and may object to Claims or Interests after the Confirmation or Effective Date of the Plan irrespective of whether this Disclosure Statement identifies such Claims or Interests or objections to such Claims or Interests.

8. *No Waiver of Right to Object to Claim or Interest*

The vote by a holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action, or rights of the Debtors (or any entity, as the case may be) to object to that holder's Claim or Interest, regardless of whether any claims or causes of action of the Debtors or their respective Estates are specifically or generally identified in this Disclosure Statement.

9. *Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors*

The Debtors' advisors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement.  Although the Debtors' advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

10. *Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update*

The statements contained in this Disclosure Statement are made by the Debtors as of the date of this Disclosure Statement, unless otherwise specified in this Disclosure Statement, and the delivery of this Disclosure Statement after the date of this Disclosure Statement does not imply that there has not been a change in the information set forth in this Disclosure Statement since that date.  While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement.  Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

11. *No Representations Outside this Disclosure Statement Are Authorized*

No representations concerning or relating to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision.  You should promptly report unauthorized representations or inducements to the counsel to the Debtors and the U.S. Trustee.

D.      **Liquidation under Chapter 7**

If no plan can be confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. As discussed above, conversion to chapter 7 would require the Debtors to incur expenses related to the chapter 7 trustee and additional retained professionals, and such expenses may decrease recoveries for holders of Allowed Claims in the Voting Classes. *See, e.g.,* 11 U.S.C. §§ 326(a), 503(b)(2). The conversion to chapter 7 would require entry of a new bar date, which may increase the amount of Allowed Claims and thereby reduce Pro Rata recoveries. *See* Fed. R. Bankr. P. 1019(2), 3002(c). The Debtors' liquidation analysis is attached hereto as **Exhibit C**.

## ARTICLE X.

## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES

The following is a summary of certain United States ("U.S.") federal income tax consequences of the Plan to the Debtors and certain holders of Allowed Claims. It does not address the U.S. federal income tax consequences to Holders of Claims or Interests not entitled to vote on the Plan. This summary is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), Treasury Regulations thereunder ("Treasury Regulations"), and administrative and judicial interpretations, all as in effect on the date hereof (collectively, "Applicable U.S. Tax Law"). Changes in the rules or new interpretations of the rules may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below. Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below. No opinion of counsel has been obtained and the Debtors do not intend to seek a ruling from the Internal Revenue Service (the "IRS") as to any of the tax consequences of the Plan discussed below. The discussion below is not binding upon the IRS or the courts. There can be no assurance that the IRS will not challenge one or more of the U.S. federal income tax consequences of the Plan described below.[3]

This summary does not address non-U.S., state, local or non-income tax consequences of the Plan (including such consequences with respect to the Debtors). This summary does not apply to holders of a Claim or Interest that are not United States persons, as such term is defined in the Internal Revenue Code ("Non-U.S. Holders"), nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to a Holder in light of its individual circumstances or to a Holder that may be subject to special tax rules (such as persons who are related to the Debtors within the meaning of the Tax Code, persons liable for alternative minimum tax, U.S. Holders whose functional currency is not the U.S. dollar, U.S. expatriates, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax exempt organizations, controlled foreign corporations, passive foreign investment companies, partnerships (or other entities treated as partnerships or other pass-through entities), beneficial owners of partnerships (or other entities treated as partnerships or other pass-through entities), subchapter S corporations, persons who hold Claims or who will hold any consideration received pursuant to the Plan as part of a straddle, hedge, conversion transaction, or other integrated investment, persons using a mark-to-market method of accounting, and Holders of Claims who are themselves in bankruptcy). Furthermore, this summary assumes that a Holder of a Claim or Interest holds only Claims or Interests in a single Class and holds a Claim or Interest only as a "capital asset" (within the meaning of section 1221 of the Tax Code). This summary also assumes that Claims will be treated in accordance with their form for U.S. federal income tax purposes. The U.S. federal income tax consequences of the implementation of the Plan to the Debtors and Holders of Claims or Interests described below also may vary depending on the nature of any Restructuring Transactions that the Debtors engaged in.

For purposes of this discussion, a "U.S. Holder" is a Holder of a Claim or Interest that is: (1) an individual citizen or resident of the United States for U.S. federal income tax purposes; (2) a corporation (or other entity treated

---

[3]     To the extent that any recovery is received by the Term Loan on account of its deficiency claim, such recovery will be treated as recovery on account of the underlying claim for U.S. federal income tax purposes. The deficiency claims for the Term Loan are treated as Term Loan Secured Claims under the Plan. The tax consequences of any recovery received by the Term Loan will be determined based on whether such recovery is on account of a holder's membership in the General Unsecured Claims class and constitutes the recovery that the holder received on the underlying Term Loan.

as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons (within the meaning of section 7701(a)(30) of the Tax Code) have authority to control all substantial decisions of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person. For purposes of this discussion, a "Non-U.S. Holder" is any Holder of a Claim that is neither a U.S. Holder nor a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder of a Claim or Interest, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner and the entity. Partners (or other beneficial owners) of partnerships (or other entities treated as partnerships or other pass-through entities) that are Holders of Claims or Interests should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF ALLOWED CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

**A.    Certain U.S. Federal Income Tax Consequences to the Debtors**

**1.    Taxable Transaction**

The Debtors generally anticipate that the disposition of their assets will be taxable from a U.S. tax perspective. Whether such disposition will gives rise to any tax liability will depend upon, among other things, the proceeds received for such assets, any liabilities assumed in connection with the disposition of such assets, the Debtors' tax basis in their assets, and the Debtors' available tax attributes. The Debtors cannot currently estimate whether they will incur any tax liability in connection with the disposition of their assets.

**2.    Survival of Tax Attributes**

Because the Debtors expect to dispose of all of their assets in a taxable disposition and dissolve, none of the Debtors' existing tax attributes will survive, even if such attributes are not eliminated as a result of the implementation of the Plan.

**B.    Certain U.S. Federal Income Tax Consequences to holders of General Unsecured Claims**

Because Holders of General Unsecured Claims are expected to receive nothing but Cash in satisfaction of their Claims, such Holders will be treated as receiving their distribution under the Plan in taxable exchange under Section 1001 of the Tax Code. Accordingly, other than with respect to any amounts received that are attributable to accrued but untaxed interest (or OID), a U.S. Holder of such a claim would recognize gain or loss equal to the difference between (a) the sum of the cash and the fair market value (or issue price, in the case of debt instruments) of the consideration received and (b) such U.S. Holder's adjusted basis in such Claim.

See discussion below regarding the extent to which any consideration should be treated as attributable to accrued interest (or OID).

1.    Disputed Ownership Fund Treatment

Certain proceeds from the disposition of the Debtors' assets may be deposited into an account pending the resolution of disputed claims. The Debtors intend that such assets will be subject to disputed ownership fund treatment under Section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto

shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). To the extent property is not distributed to U.S. Holders of applicable Claims or Interests on the Effective Date but, instead, is transferred to any such account, although not free from doubt, U.S. Holders should not recognize any gain or loss on the date that the property is so transferred. Instead, gain or loss should be recognized when and to the extent property is actually distributed to such U.S. Holders.

To the extent that a U.S. Holder receives distributions with respect to a Claim or Interest subsequent to the Effective Date, such U.S. Holder may recognize additional gain (if such U.S. Holder is in a gain position), and a portion of such distribution may be treated as imputed interest income. In addition, it is possible that the recognition of any loss realized by a U.S. Holder may be deferred until all payments have been made out of any such account. U.S. Holders are urged to consult their tax advisors regarding the possible application (and the ability to elect out) of the "installment method" of reporting any gain that may be recognized by such U.S. Holders in respect of their Claims or Interests due to the receipt of property in a taxable year subsequent to the taxable year in which the Effective Date occurs. The discussion herein assumes that the installment method does not apply.

2.    Accrued Interest and OID

A portion of the consideration received by Holders of Allowed Claims may be attributable to accrued interest or OID on such Claims. Such amounts should be taxable to that U.S. Holder as interest income if such accrued interest or OID has not been previously included in the Holder's gross income for U.S. federal income tax purposes. Conversely, U.S. Holders of Claims may be able to recognize a deductible loss to the extent any accrued interest or OID on the Claims was previously included in the U.S. Holder's gross income but was not paid in full by the Debtors.

If the fair value of the consideration is not sufficient to fully satisfy all principal and interest or OID on Allowed Claims, the extent to which such consideration will be attributable to accrued interest or OID is unclear. Under the Plan, the aggregate consideration to be distributed to Holders of Allowed Claims in each Class will be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest or OID that accrued on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan is binding for U.S. federal income tax purposes, while certain Treasury Regulations generally treat payments as allocated first to any accrued but unpaid interest or OID and then as a payment of principal. The IRS could take the position that the consideration received by the U.S. Holder should be allocated in some way other than as provided in the Plan.

3.    Market Discount

Under the "market discount" provisions of sections 1276 through 1278 of the Tax Code, some or all of any gain realized by a U.S. Holder of a Claim who exchanges the Claim for an amount may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Claim. In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if its U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a *de minimis* amount (equal to 0.25 percent of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

Any gain recognized by a U.S. Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

4. Medicare Tax on Net Investment Income

Certain U.S. Holders that are individuals, estates, or trusts are required to pay an additional 3.8% tax on, among other things, interest, dividends and gains from the sale or other disposition of capital assets. U.S. Holders that are individuals, estates, or trusts should consult their tax advisors regarding the effect, if any, of this tax provision on their ownership and disposition of consideration received pursuant to the Plan.

**C.    Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of General Unsecured Claims**

The following discussion includes only certain U.S. federal income tax consequences of the implementation of the Plan to Non-U.S. Holders. The discussion does not include any non-U.S. tax considerations. The rules governing the U.S. federal income tax consequences to Non-U.S. Holders are complex. Each Non-U.S. Holder should consult its own tax advisor regarding the U.S. federal, state, and local and the foreign tax consequences of the Plan to such Non-U.S. Holder and the ownership and disposition of non-Cash consideration.

Whether a Non-U.S. Holder realizes gain or loss on the exchange and the amount of such gain or loss is determined in the same manner as set forth above in connection with U.S. Holders.

1. Gain Recognition

Any gain realized by a Non-U.S. Holder on the exchange of its Claim generally will not be subject to U.S. federal income taxation unless (a) the Non-U.S. Holder is an individual who was present in the United States for 183 days or more during the taxable year in which the restructuring transactions occur and certain other conditions are met or (b) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the United States (and if an income tax treaty applies, such gain is attributable to a permanent establishment maintained by such Non-U.S. Holder in the United States).

If the first exception applies, to the extent that any gain is taxable, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such Non-U.S. Holder's capital gains allocable to U.S. sources exceed capital losses allocable to U.S. sources during the taxable year of the exchange. If the second exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax with respect to any gain realized on the exchange if such gain is effectively connected with the Non-U.S. Holder's conduct of a trade or business in the United States in the same manner as a U.S. Holder. In order to claim an exemption from withholding tax, such Non-U.S. Holder will be required to provide properly executed original copies of IRS Form W-8ECI (or such successor form as the IRS designates). In addition, if such a Non-U.S. Holder is a corporation, it may be subject to a branch profits tax equal to 30 percent (or such lower rate provided by an applicable treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

2. Interest Payments; Accrued but Untaxed Interest

Payments to a Non-U.S. Holder that are attributable to accrued but untaxed interest (or OID) on their Allowed Claim generally will not be subject to U.S. federal income or withholding tax, provided that the withholding agent has received or receives, prior to payment, appropriate documentation (generally, IRS Form W-8BEN or W-8BEN-E) establishing that the Non-U.S. Holder is not a U.S. person, unless:

1. the Non-U.S. Holder actually or constructively owns 10 percent or more of the total combined voting power of the Debtors;

2. the Non-U.S. Holder is a "controlled foreign corporation" that is a "related person" with respect to the Debtors (each, within the meaning of the Tax Code);

3. the Non-U.S. Holder is a bank receiving interest described in section 881(c)(3)(A) of the Tax Code; or

4. such interest (or OID) is effectively connected with the conduct by the Non-U.S. Holder of a trade or business within the United States (in which case, provided the Non-U.S. Holder provides a properly executed IRS Form W-8ECI (or successor form) to the withholding agent, the Non-U.S. Holder (i) generally will not be subject to withholding tax, but (ii) will be subject to U.S. federal income tax in the same manner as a U.S. Holder (unless an applicable income tax treaty provides otherwise), and a Non-U.S. Holder that is a corporation for U.S. federal income tax purposes may also be subject to a branch profits tax with respect to such Non-U.S. Holder's effectively connected earnings and profits that are attributable to the accrued but untaxed interest (or OID) at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty)).

A Non-U.S. Holder that does not qualify for exemption from withholding tax with respect to interest that is not effectively connected income generally will be subject to withholding of U.S. federal income tax at a 30 percent rate (or at a reduced rate or exemption from tax under an applicable income tax treaty) on (a) interest on debt received under the Plan and (b) payments that are attributable to accrued but untaxed interest (or OID) on such Non-U.S. Holder's Allowed Claim. For purposes of providing a properly executed IRS Form W-8BEN or W-8BEN-E, special procedures are provided under applicable Treasury Regulations for payments through qualified foreign intermediaries or certain financial institutions that hold customers' securities in the ordinary course of their trade or business.

**D.    Information Reporting and Backup Withholding**

The Debtors will withhold all amounts required by law to be withheld from payments of interest and dividends. The Debtors will also comply with all applicable reporting requirements of the Tax Code. In general, information reporting requirements may apply to distributions or payments made to a Holder of a Claim under the Plan, as well as future payments made with respect to consideration received under the Plan. The Debtors do not expect distributions or payments to Holders of Claims under the Plan to be subject to material withholding under the Tax Code.

Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules may be credited against a holder's U.S. federal income tax liability, and a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS (generally, a U.S. federal income tax return).

In addition, from an information reporting perspective, the Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns.

**E.    FATCA**

Under legislation commonly referred to as the Foreign Account Tax Compliance Act ("FATCA"), foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account Holders and investors or be subject to withholding at a rate of 30 percent on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S. source payments of fixed or determinable, annual or periodical income (including dividends, if any, on equity received pursuant to the Plan). FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax. Additionally, although FATCA withholding may also apply to gross proceeds of a disposition of stock, recently proposed regulations suspend withholding on such gross proceeds payments indefinitely.

Each non-U.S. Holder should consult its own tax advisor regarding the possible impact of these rules on such non-U.S. Holder.

THE UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTION CONTEMPLATED BY THE RESTRUCTURING, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR NON-U.S. TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

*[Remainder of Page Intentionally Left Blank]*

## ARTICLE XI.

### RECOMMENDATION OF THE DEBTORS

The Debtors believe that the Plan is in the best interests of all holders of Claims against and Interests in the Debtors, and urge all holders of Claims against and Interests in the Debtors entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be received by the Notice, Claims, and Balloting Agent by the Voting Deadline.

Dated: April 24, 2019                      RMBR Liquidation, Inc. and its Debtor affiliates


                                           By:      */s/ Brett Witherell*
                                           Name:    Brett Witherell
                                           Title:   Chief Financial Officer

## EXHIBIT A

**Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RMBR LIQUIDATION, INC., et al.,[1] | ) Case No. 19-10234 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## JOINT CHAPTER 11 PLAN OF
## RMBR LIQUIDATION, INC. AND ITS DEBTOR AFFILIATES

---

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

**YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

---

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
919 Market Street
Suite 1800
Wilmington, Delaware 19801
Telephone:     (302) 467-4410
Facsimile:     (302) 467-4450
Email:     landis@lrclaw.com
         mcguire@lrclaw.com
         brown@lrclaw.com

*Co-Counsel to the Debtors*

Dated:  April 24, 2019

**KIRKLAND & ELLIS LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:     christopher.greco@kirkland.com
         derek.hunter@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
Spencer A. Winters (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:     spencer.winters@kirkland.com

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

{1229.002-W0055580.}

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND
GOVERNING LAW ...............................................................................................................................1

    A.    Defined Terms........................................................................................................1
    B.    Rules of Interpretation..........................................................................................9
    C.    Computation of Time ..........................................................................................10
    D.    Governing Law....................................................................................................10
    E.    Reference to Monetary Figures ...........................................................................10
    F.    Reference to the Debtors or the Post-Effective Date Debtors .............................10

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ...................................11

    A.    Administrative Claims .........................................................................................11
    B.    Professional Fee Claims ......................................................................................11
    C.    Priority Tax Claims .............................................................................................12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................12

    A.    Classification of Claims and Interests .................................................................12
    B.    Treatment of Claims and Interests.......................................................................13
    C.    Special Provision Governing Unimpaired Claims ...............................................16
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code...................16
    E.    Subordinated Claims ...........................................................................................16
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ...........................16
    G.    Controversy Concerning Impairment...................................................................16

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................................16

    A.    General Settlement of Claims and Interests .........................................................16
    B.    Restructuring Transactions ..................................................................................17
    C.    Sources of Consideration for Plan Distributions and Priority Waterfall ...............17
    D.    Post-Effective Date Debtors ................................................................................17
    E.    Plan Administrator ..............................................................................................18
    F.    Wind Down .........................................................................................................19
    G.    Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation .................20
    H.    Tax Returns .........................................................................................................20
    I.    Dissolution of the Post-Effective Date Debtors ..................................................20
    J.    Cancellation of Securities and Agreements..........................................................20
    K.    Corporate Action.................................................................................................20
    L.    Effectuating Documents; Further Transactions....................................................21
    M.    Section 1146 Exemption .....................................................................................21
    N.    Preservation of Causes of Action ........................................................................21

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............22

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ..........22
    B.    Directors and Officers Insurance Policies ...........................................................23
    C.    Indemnification Obligations.................................................................................23
    D.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ........23
    E.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases...........24
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.........................24
    G.    Reservation of Rights ..........................................................................................24
    H.    Nonoccurrence of Effective Date ........................................................................24

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ........................................................24

    A.    Timing and Calculation of Amounts to Be Distributed........................................24
    B.    Disbursing Agent .................................................................................................25

C.  Rights and Powers of Disbursing Agent .................................................................25
D.  Delivery of Distributions and Undeliverable or Unclaimed Distributions ...............25
E.  Compliance with Tax Requirements ........................................................................26
F.  Allocations ...............................................................................................................26
G.  No Postpetition Interest on Claims ..........................................................................26
H.  Foreign Currency Exchange Rate .............................................................................26
I.  Setoffs and Recoupment ..........................................................................................26
J.  Claims Paid or Payable by Third Parties ..................................................................27

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ...............................................................................................................27
A.  Allowance of Claims ................................................................................................27
B.  Claims Administration Responsibilities ...................................................................27
C.  Estimation of Claims ...............................................................................................28
D.  Adjustment to Claims Without Objection .................................................................28
E.  Time to File Objections to Claims ...........................................................................28
F.  Disallowance of Claims ...........................................................................................28
G.  Amendments to Claims ............................................................................................28
H.  No Distributions Pending Allowance .......................................................................29
I.  Distributions After Allowance ..................................................................................29

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ...............29
A.  Discharge of Claims and Termination of Interests ...................................................29
**B.  Release of Liens** ...................................................................................................29
**C.  Releases by the Debtors** ......................................................................................30
**D.  Releases by Holders of Claims and Interests** .....................................................30
**E.  Exculpation** .........................................................................................................31
**F.  Injunction** ............................................................................................................31
G.  Substantive Consolidation .......................................................................................32
H.  Protections Against Discriminatory Treatment ........................................................33
I.  Document Retention .................................................................................................33
J.  Reimbursement or Contribution ...............................................................................33
K.  Term of Injunctions or Stays ....................................................................................33

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ......................33
A.  Conditions Precedent to the Effective Date ..............................................................33
B.  Waiver of Conditions ...............................................................................................34
C.  Effect of Failure of Conditions ................................................................................34

ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ....................35
A.  Modification and Amendments .................................................................................35
B.  Effect of Confirmation on Modifications .................................................................35
C.  Revocation or Withdrawal of Plan ...........................................................................35

ARTICLE XI. RETENTION OF JURISDICTION .......................................................................35

ARTICLE XII. MISCELLANEOUS PROVISIONS ......................................................................37
A.  Immediate Binding Effect ........................................................................................37
B.  Additional Documents ..............................................................................................37
C.  Payment of Statutory Fees .......................................................................................37
D.  Reservation of Rights ...............................................................................................37
E.  Successors and Assigns ............................................................................................38
F.  Notices .....................................................................................................................38
G.  Entire Agreement .....................................................................................................39

H.  Exhibits ........................................................................................................................... 39
I.  Non-Severability of Plan Provisions ........................................................................... 39
J.  Votes Solicited in Good Faith ..................................................................................... 39
K.  Closing of Chapter 11 Cases ....................................................................................... 39
L.  Conflicts ...................................................................................................................... 39

**INTRODUCTION**

RMBR Liquidation, Inc. and its debtor affiliates, as debtors and debtors in possession, in the above-captioned Chapter 11 Cases propose this joint chapter 11 plan. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, and assets, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAW**

*A.     Defined Terms*

Capitalized terms used in this Plan have the meanings ascribed to them below.

1.   "*Administrative Agent*" means Cortland Capital Market Services LLC, in its capacity as administrative agent and collateral agent under the Credit Agreement, together with its successors and assigns in such capacities.

2.   "*Administrative Claim*" means a Claim against a Debtor for the costs and expenses of administration of the Chapter 11 Cases arising on or prior to the Effective Date pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; and (b) Professional Fee Claims.

3.   "*Administrative Claim Bar Date*" means either (a) [_____], 2019 at 4:00 p.m. (E.T) for all Administrative Claims (excluding Professional Fee Claims) arising, accruing or otherwise due and payable any time during the period from the Petition Date through and including April 30, 2019, or (b) twenty-one (21) days from service of the notice of Effective Date for all Administrative Claims (excluding Professional Fee Claims) arising, accruing or otherwise due and payable any time during the period from May 1, 2019 through the Effective Date.

4.   "*Administrative Claim Objection Bar Date*" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the later of (1) 60 days after the Effective Date and (2) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

5.   "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.   "*Allowed*" means with respect to any Claim against or Interest in a Debtor, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim or a request for payment of an Administrative Claim, as applicable, that is Filed on or before the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim or request for payment of an Administrative Claim is not required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been allowed by a Final Order. Except as otherwise specified in the Plan, any Final Order, or as otherwise agreed by the Debtors or the Plan Administrator, as

the case may be, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims (as determined by Final Order of the Bankruptcy Court), the amount of an Allowed Claim shall not include interest or fees on such Claim accruing from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed and no Final Order entered allowing such Claim, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Post-Effective Date Debtor, as applicable. For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date or Administrative Claim Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

7. "*Agency Agreement*" means that certain Agency Agreement, dated as of January 22, 2019, by and among Things Remembered, Inc., Things Remembered Canada, Inc. and the JV Agent.

8. "*Asset Purchase Agreement*" means the Asset Purchase Agreement entered into by and between Things Remembered, Inc. and Enesco Properties, LLC.

9. "*Available Cash*" means, collectively, all Cash on hand held by the Debtors and Post-Effective Date Debtors on and after the Effective Date, including the net proceeds from any Sale Transaction and resolution of any Causes of Action.

10. "*Avoidance Actions*" means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

11. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

12. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of (i) the withdrawal of reference under section 157 of the Judicial Code or (ii) the entry of an order or judgment for which it is determined the United States Bankruptcy Court for the District of Delaware does not have constitutional authority to enter such order or judgment and the parties to such dispute do not consent to entry of such order or judgment by the United States Bankruptcy Court for the District of Delaware, the United States District Court for the District of Delaware.

13. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

14. "*Bar Date*" means, collectively, the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed pursuant to the Bar Date Order or this Plan.

15. "*Bar Date Order*" means the *Order Granting Motion of the Debtors for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Secured Claims, Priority Claims, Administrative Claims, and Governmental Claims; (B) Approving the Form, Manner and Notice Thereof; and (C) Granting Related Relief* [Docket No. [●]].

16. *"**Business Day**"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

17. *"**Cash**"* means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

18. *"**Cash Collateral Order**"* means the *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* entered by the Court on March 29, 2019 [Docket No. 353].

19. *"**Causes of Action**"* means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action.

20. *"**Chapter 11 Cases**"* means (a) when used with reference to a particular Debtor, the case pending for that Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

21. *"**Claim**"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

22. *"**Claims Bar Date**"* means the date or dates to be established by the Bankruptcy Court by which Proofs of Claim must be Filed.

23. *"**Claims Register**"* means the official register of Claims maintained by the Notice, Claims, and Balloting Agent.

24. *"**Class**"* means a class of Claims against or Interests in the Debtors as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

25. *"**Confirmation**"* means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

26. *"**Confirmation Date**"* means the date on which Confirmation occurs.

27. *"**Confirmation Hearing**"* means the hearing before the Bankruptcy Court pursuant to sections 1128 of the Bankruptcy Code at which the Debtors will seek Confirmation of the Plan.

28. *"**Confirmation Order**"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

29. *"**Consummation**"* means the occurrence of the Effective Date.

30. *"**Credit Agreement**"* means that certain Amended and Restated Credit Agreement dated as of August 30, 2016, as amended by that certain Third Amendment and Seventh Waiver dated as of January 30, 2018 by and

among Things Remembered, Inc., as borrower, the guarantors party thereto, the lenders party thereto and the Administrative Agent.

31. "*Credit Agreement Documents*" means the Credit Agreement and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, and other security agreements.

32. "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

33. "*Creditors' Committee Professionals Fee Reserve*" means $800,000 *minus* any amount paid to Creditors' Committee Professionals as of the Effective Date.

34. "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

35. "*Debtors*" means, collectively: (a) RMBR Liquidation, Inc. (*f/k/a* Things Remembered, Inc.); (b) RMBR Liquidation Holdco Corp. (*f/k/a* TRM Holdco Corp.); and (c) RMBR Liquidation Holdings Corporation (*f/k/a* TRM Holdings Corporation).

36. "*Debtors' Owned Real Property*" means (i) the property located at 5500 Avion Park Drive, Highland Heights, Ohio 44143; and (ii) an approximately 70.9 acre vacant industrial landsite located at S. Bailey Road, Jackson Township, Mahoning County, OH 44451.

37. "*Debtors' Owned Real Property Sale*" means any sale of the Debtors' Owned Property pursuant to section 363 of the Bankruptcy Code, which sale may occur on or after the Effective Date.

38. "*Debtors' Professionals Fee Reserve*" means all Allowed Professional Fee Claims of Professionals employed by the Debtors, not to exceed: (i) unpaid fees and expenses incurred from the Petition Date through March 8, 2019; plus (ii) $1,750,000.

39. "*Disbursing Agent*" means the Debtors and/or the Plan Administrator (as applicable), or the Entity or Entities selected by the Debtors or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

40. "*Disclosure Statement*" means the Disclosure Statement to the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and its Debtor Affiliates, dated as of April 24, 2019, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

41. "*Disputed*" means, with respect to any Claim or Interest or any portion thereof, (a) that is not Allowed; and (b) that is not disallowed under the Plan, the Bankruptcy Code or a Final Order.

42. "*Distribution Record Date*" means the record date for purposes of determining which holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the first day of the Confirmation Hearing, or such other date as is designated in a Final Order of the Bankruptcy Court.

43. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) all conditions to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors, with the consent of the Prepetition Agent (which such consent shall not be unreasonably withheld), declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

44.  "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

45.  "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

46.  "*Exculpated Party*" means collectively, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Post-Effective Date Debtors; (c) each current and former Affiliate of each Entity in clauses (a) through (c); (d) each Related Party of each Entity in clauses (a) through (c); and (e) the members of the Creditors' Committee (including any member who resigned therefrom) solely in their capacities as such.

47.  "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

48.  "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

49.  "*File*" or "*Filed*" means file or filed in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee, or, with respect to the filing of a Proof of Claim (including for any Administrative Claim) or Proof of Interest the Notice, Claims, and Balloting Agent.

50.  "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided that* the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order shall not cause such order to not be a Final Order.

51.  "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

52.  "*General Unsecured Claim*" means any Claim against a Debtor that is not Secured and is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c)  a Priority Tax Claim, (d) a Secured Tax Claim, (e) an Other Secured Claim, an (f) Other Priority Claim, (g) a Revolver Claim, or (h) a Term Loan Claim.  For the avoidance of doubt, General Unsecured Claims include any claim arising from the rejection of an Unexpired Lease or Executory Contract.

53.  "*Holdco*" means RMBR Liquidation Holdco Corp.

54.  "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

55.  "*Intercompany Interest*" means, other than an Interest in Holdco, an Interest in one Debtor held by another Debtor or an Affiliate of a Debtor.

56.  "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and

whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

57. "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 271], entered by the Bankruptcy Court on March 5, 2019, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

58. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

59. "*JV Agent*" means the joint venture consisting of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC.

60. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

61. "*Notice, Claims, and Balloting Agent*" means Prime Clerk LLC, in its capacity as the notice, claims, and balloting agent in the Chapter 11 Cases for the Debtors and any successors appointed by an order of the Bankruptcy Court.

62. "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

63. "*Other Secured Claim*" means any Secured Claim that is not a Secured Tax Claim, a Revolver Claim or a Term Loan Claim.

64. "*Person*" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

65. "*Petition Date*" means February 6, 2019, the date on which each of the Debtors commenced the Chapter 11 Cases.

66. "*Plan*" means this *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and its Debtor Affiliates*, as may be altered, amended, modified, or supplemented from time to time in accordance with Article X hereof, including the Plan Supplement (as amended, supplemented, or otherwise modified from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

67. "*Plan Administrator*" means the Person or Entity, or any successor thereto, jointly designated by the Debtors and Prepetition Agent, who will be disclosed at or prior to the Confirmation Hearing, to have all powers and authorities set forth in Article IV.E of this Plan.

68. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors, and which shall be acceptable to the Prepetition Agent in its reasonable discretion, no later than seven days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) Schedule of Retained Causes of Action; (c) the identity and terms of compensation of the Plan Administrator; and (d) any other necessary documentation related to the Restructuring Transactions.

69. "*Post-Effective Date Debtors*" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

70. "*Prepetition Secured Lenders*" means the banks, financial institutions, and other lenders party to the Credit Agreement from time to time.

71. "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

72. "*Priority Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Priority Claims Reserve Amount.

73. "*Priority Claims Reserve Amount*" means $500,000, which amount shall be funded by the Debtors and used by the Plan Administrator as the sole source for payment of Allowed Priority Claims and Allowed Administrative Claims payable pursuant to Article II.A and Article III.B, respectively, to the extent that such Priority Claims and Administrative Claims have not been paid in full on or before the Effective Date; provided, however, that for the avoidance of doubt, such Allowed Administrative Claims payable pursuant to Article II.A do not include Professional Fee Claims, which shall be paid according to Article II.B, to the extent such Professional Fee Claims have not already been paid during the Chapter 11 Cases. The Priority Claims Reserve Amount shall be determined by the Debtors and the Prepetition Agent.

74. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

75. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

76. "*Professional*" means an Entity retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

77. "*Professional Fee Bar Date*" means thirty (30) days after the Effective Date.

78. "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

79. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date such that the aggregate amount of Cash in the Professional Fee Escrow Account on the Effective Date equals the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be the sole source of payment of Allowed Professional Fee Claims.

80. "*Professional Fee Escrow Amount*" means (i) the total amount of the Debtors' Professionals Fee Reserve and the Committee Professionals Fee Reserve. The Professional Fee Escrow Amount shall be determined by the Debtors and the Prepetition Agent.

81. "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

82. "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtor in the Chapter 11 Cases.

83. "*Purchaser*" means Enesco Properties, LLC, together with its respective successors and permitted assigns.

84. "*Revolver Claim*" means a Claim arising under, derived from, secured by, or based on the Credit Agreement solely with respect to Revolving Obligations (as defined in the Credit Agreement). Pursuant to the Cash Collateral Order, all Revolver Claims are Allowed Claims and are Allowed in an amount of not less than

$18,723,738.81.

85. *"Reinstate," "Reinstated,"* or *"Reinstatement"* means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

86. *"Related Party"* means, each of, and in each case in its capacity as such, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

87. *"Released Party"* means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Post-Effective Date Debtors; (c) each Prepetition Secured Lender; (d) the Administrative Agent; (e) the Purchaser; (f) each holder of an Interest in Holdco; (g) each current and former Affiliate of each Entity in clause (a) through (f); and (g) each Related Party of each Entity in clause (a) through (h).

88. *"Releasing Party"* means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Post-Effective Date Debtors; (c) each Prepetition Secured Lender; (d) the Administrative Agent; (e) the Purchaser; (f) all Holders of Claims; (g) all Holders of Interests; (h) each current and former Affiliate of each Entity in clause (a) through (h); and (i) each Related Party of each Entity in clause (a) through (i). Notwithstanding the foregoing, an Entity shall be neither a Releasing Party nor a Released Party if it: (x) does not vote to, and is not deemed to, accept the Plan; and (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article VIII.D of the Plan that is not resolved before Confirmation; *provided, however,* that any such Entity shall be identified by name as a non-Releasing Party and non-Released Party in the Confirmation Order.

89. *"Reserve Residuals"* means (i) any amounts remaining in the Professional Fee Escrow Account after payment in full of all Allowed Professional Fee Claims, (ii) any amounts remaining in the Priority Claims Reserve after payment in full of all Allowed Priority Claims and Allowed Administrative Claims (other than Professional Fee Claims) and/or (iii) any amounts remaining in the Wind Down Amount after entry of a final decree closing the last of the Chapter 11 Cases.

90. *"Restructuring Transactions"* means the transactions described in Article IV.B of the Plan.

91. *"Retained Causes of Action"* means Causes of Action that are not waived, relinquished, exculpated, released, compromised, or settled pursuant to this Plan or a Bankruptcy Court order or not purchased by or transferred or conveyed to the Purchaser pursuant to the Asset Purchase Agreement. Without limiting the generality of the foregoing, the following are not Retained Causes of Action: (a) Causes of Action that are Acquired Assets under, and as defined in, the Asset Purchase Agreement and (b) Causes of Action (including Avoidance Actions) against current or former suppliers to or customers of the Debtors, their non-Debtor Affiliates, or the Purchaser.

92. *"Sale Order"* means the order of the Bankruptcy Court approving the Asset Purchase Agreement.

93. *"Sale Transaction"* or *"Sale Transactions"* means those certain transactions between the Debtors and the Purchaser as set forth in the Asset Purchase Agreement, liquidation sales in accordance with the Store Closing Order, the Debtors' Owned Real Property Sale and any other sale transaction.

94. *"Schedule of Assumed Executory Contracts and Unexpired Leases"* means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors with the consent of the Prepetition Agent, which such consent shall not be unreasonably withheld.

95. "*Schedule of Retained Causes of Action*" means the schedule of certain Retained Causes of Action, as the same may be amended, modified, or supplemented from time to time by the Debtors with the consent of the Prepetition Agent, which such consent shall not be unreasonably withheld.

96. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified, or supplemented from time to time.

97. "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

98. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

99. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

100."*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

101. "*Store Closing Order*" means the *Interim Order (I) Authorizing the Debtors to Assume the Agency Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 64] and the *Final Order (I) Authorizing the Debtors to Assume the Agency Agreement, (II) Approving Procedures for Store Closing Sales, and (III) Granting Related Relief* [Docket No. 217].

102."*Term Loan Claim*" means a Claim arising under, derived from, secured by, or based on the Credit Agreement solely with respect to Term Obligations (as defined in the Credit Agreement).  Pursuant to the Cash Collateral Order, all Term Loan Claims are Allowed Claims and are Allowed in an amount of not less than $124,921,105.40.

103."*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

104."*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

105. "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

106."*Voting Deadline*" means 4:00 p.m. (prevailing Eastern Time) on [May ___], 2019.

107. "*Wind Down Amount*" means Cash in the aggregate amount of $2,500,000.

B.      Rules of Interpretation

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated,

supplemented, or otherwise modified; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Post-Effective Date Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (16) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided that* corporate or limited liability company governance matters relating to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formulation of the applicable Debtor or the Post-Effective Date Debtors, as applicable.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Reference to the Debtors or the Post-Effective Date Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors, as applicable, to the extent the context requires.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

*A.      Administrative Claims*

Except with respect to Administrative Claims that are Professional Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment from the Priority Claims Reserve.

Except for Professional Fee Claims, and unless previously Filed pursuant to the Bar Date Order, requests for payment of Administrative Claims, including Administrative Claims arising under section 503(b)(9) of the Bankruptcy Code, must be Filed and served on the Post-Effective Date Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Post-Effective Date Debtors and the requesting party by the Administrative Claim Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Bar Date or the Administrative Claim Bar Date, as applicable, shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Priority Claims Reserve, the Debtors or their property and the Post-Effective Date Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Post-Effective Date Debtors or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim that is Allowed by Final Order.

*B.      Professional Fee Claims*

1.      Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed by the Professional Fee Bar Date, unless no final request for payment of such Professional Fee Claims is required pursuant to an order of the Bankruptcy Court. Holders of Professional Fee Claims that are required to File a final request for payment of such Professional Fee Claims that do not File such a request by the Professional Fee Bar Date shall be forever barred, estopped, and enjoined from asserting such Professional Fee Claims against the Professional Fee Escrow Account and the Debtors or their property and the Post-Effective Date Debtors or their property, and such Professional Fee Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Post-Effective Date Debtors or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Post-Effective Date Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash from the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.  Professional Fee Escrow Account

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish (if not previously established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or of the Post-Effective Date Debtors.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Post-Effective Date Debtors from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court. When all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid *first*, to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full and, *second*, to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

3.  Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors and the Prepetition Agent no later than five Business Days before the anticipated Effective Date; *provided that* such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors and the Prepetition Agent may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors and the Prepetition Agent to determine the amount to be funded to the Professional Fee Escrow Account.

4.  Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Post-Effective Date Debtors and Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of an Allowed Priority Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment from the Priority Claims Reserve.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the

Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as set forth below. The Plan shall apply as a substantively consolidated Plan for all of the Debtors. All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Revolver Claims | Impaired | Entitled to Vote |
| 5 | Term Loan Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests in Holdco | Impaired | Not Entitled to Vote (Deemed to Reject) |

*B.        Treatment of Claims and Interests*

Subject to Article VI hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

   1.    Class 1 - Secured Tax Claims

      (a)    *Classification:* Class 1 consists of all Secured Tax Claims.

      (b)    *Treatment:* Each holder of an Allowed Secured Tax Claim shall receive, at the option of the Plan Administrator:

            (i)     payment in full in Cash of such holder's Allowed Secured Tax Claim; or

            (ii)    equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

    (c)    *Voting:*  Class 1 is Unimpaired under the Plan.  Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

2. Class 2 - Other Secured Claims

    (a)    *Classification:*  Class 2 consists of all Other Secured Claims.

    (b)    *Treatment:*  Each holder of an Allowed Other Secured Claim shall receive, at the option of the Plan Administrator:

        (i)    payment in full in Cash of such holder's Allowed Other Secured Claim;

        (ii)    the collateral securing such holder's Allowed Other Secured Claim;

        (iii)    Reinstatement of such holder's Allowed Other Secured Claim; or

        (iv)    such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired.

    (c)    *Voting:*  Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

3. Class 3 - Other Priority Claims

    (a)    *Classification*:  Class 3 consists of all Other Priority Claims.

    (b)    *Treatment*:  Each holder of an Allowed Other Priority Claim shall receive payment in full in Cash of such holder's Allowed Other Priority Claim from the Priority Claims Reserve or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

    (c)    *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

4. Class 4 - Revolver Claims

    (a)    *Classification*:  Class 4 consists of the Revolver Claims.

    (b)    *Treatment*:  In full and final satisfaction of all Revolver Claims, the following shall be paid to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full: (i) any Available Cash after the funding of the Priority Claims Reserve, the Professional Fee Escrow Account and the Wind Down Amount and the reserve or payment in full of all Allowed Secured Tax Claims and All Other Secured Claims, and (ii) any Reserve Residuals.

    (c)    *Voting:*  Class 4 is Impaired under the Plan.  Holders of Revolver Claims are entitled to vote to accept or reject the Plan.

5.   Class 5 - Term Loan Claims

   (a)   *Classification*: Class 5 consists of the Term Loan Claims.

   (b)   *Treatment*:  Holders of Term Loan Claims will not receive or retain any property or interest in property on account of such Term Loan Claims; provided, however, that in the event that all Revolver Claims have been paid in full, any Available Cash and any Reserve Residuals shall be paid to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

   (c)   *Voting:*  Class 5 is Impaired by the Plan, and each holder of a Term Loan Claim is conclusively deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g). Therefore, such holders are not entitled to vote to accept or reject the Plan.

6.   Class 6 - General Unsecured Claims

   (a)   *Classification*: Class 6 consists of the General Unsecured Claims.

   (b)   *Treatment:*  Holders of General Unsecured Claims will receive no distribution from the Debtors or their Estates under the Plan.

   (c)   *Voting:*  Class 6 is Impaired by the Plan, and each holder of a Class 6 General Unsecured Claim is conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).  Therefore, such holders are not entitled to vote to accept or reject the Plan.

7.   Class 7 - Intercompany Interests

   (a)   *Classification:*  Class 7 consists of all Intercompany Interests.

   (b)   *Treatment*:  Intercompany Interests shall be discharged, canceled, released and  extinguished as of the Effective Date and holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

   (c)   *Voting*:  Class 7 is Impaired under the Plan.  Holders of Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such holders are not entitled to vote to accept or reject the Plan.

8.   Class 8 - Interests in Holdco

   (a)   *Classification:*  Class 8 consists of all Interests in Holdco.

   (b)   *Treatment:*  Interests in Holdco will be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Interests in Holdco will not receive any distribution on account of such Interests in Holdco, provided, however, that, as of the Effective Date, the Plan Administrator shall be deemed to own one share of stock in Holdco, provided, further, that the Plan Administrator shall not be entitled to receive any distribution on account of such retained Interest.

   (c)   *Voting:*  Class 8 is Impaired under the Plan.  Holders of Interests in Holdco are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors, with the consent of the Prepetition Agent (which such consent shall not be unreasonably withheld), reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Post-Effective Date Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

G.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV.
MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and

controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions*

On the Effective Date, to the extent not inconsistent with the Sales Transactions, the applicable Debtors or Post-Effective Date Debtors shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of the Sale Transactions, the issuance of all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions. The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

C.    *Sources of Consideration for Plan Distributions and Priority Waterfall*

Distributions under the Plan will be funded by Available Cash. After the funding from Available Cash of the Priority Claims Reserve, the Professional Fee Escrow Account and the Wind Down Amount and the reserve or payment in full of all Allowed Secured Tax Claims and Other Secured Claims, all remaining Available Cash shall be paid *first, to* the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full and, *second*, to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

In addition, all Residual Reserves shall be paid *first,* to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full and, *second*, to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

After all senior claims are paid in full, any remaining Available Cash and Residual Reserves shall be allocated on a Pro Rata basis to holders of General Unsecured Claims.

D.    *Post-Effective Date Debtors*

The Debtors shall continue in existence after the Effective Date as the Post-Effective Date Debtors solely for the purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Post-Effective Date Debtors, if any, (2) resolving any Disputed Claims, (3) paying Allowed Claims, (4) enforcing and prosecuting claims, interests, rights, and privileges under any Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (5) filing appropriate tax returns, and (6) administering the Plan in an efficacious manner. The Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative

proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Effective Date, any Estate non-Cash assets shall vest in the Post-Effective Date Debtors for the purpose of liquidating the Estates and Consummating the Plan. Such assets shall be held free and clear of all Liens, Claims, and Interests of holders of Claims and Interests, except as otherwise provided in the Plan. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Post-Effective Date Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

E.    *Plan Administrator*

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Post-Effective Date Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole director and the sole officer of the Post-Effective Date Debtors and shall succeed to the powers of the Post-Effective Date Debtors' directors and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors. For the avoidance of doubt, the foregoing shall not limit the authority of the Post-Effective Date Debtors or the Plan Administrator, as applicable, to continue the employment any former director or officer.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the businesses and affairs of the Debtors and the Post-Effective Date Debtors, as applicable, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the remaining assets of the Post-Effective Date Debtors; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (3) making distributions as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors; (7) administering and paying taxes of the Post-Effective Date Debtors, including filing tax returns; (8) representing the interests of the Post-Effective Date Debtors before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (9) exercising such other powers as may be vested in it pursuant to an order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Post-Effective Date Debtors and the Prepetition Agent; *provided that* such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Post-Effective Date Debtors shall be terminated.

1.    Appointment of the Plan Administrator

The Plan Administrator shall be jointly appointed by the Debtors and the Prepetition Agent. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

2.    Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Post-Effective Date Debtors from the Wind Down Amount, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

3.    Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and shall be jointly determined by the Debtors and Prepetition Agent.

4.    Wind Down Amount

Notwithstanding anything to the contrary herein, all fees, expenses, disbursements and other costs of the Plan Administrator and the Post-Effective Date Debtors, including, without limitation, fees and expenses of any attorneys, accountants, and other professionals engaged by the Plan Administrator and/or the Post-Effective Date Debtors, if any, shall be funded from the Wind Down Amount. Any amounts remaining in the Wind Down Amount after entry of a final decree closing the last of the Chapter 11 Cases shall be paid *first,* to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full and, *second*, to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

5.    Priority Claims Reserve

On the Effective Date, the Plan Administrator shall establish the Priority Claims Reserve by depositing Cash in the amount of the Priority Claims Reserve Amount into the Priority Claims Reserve.

The Priority Claims Reserve shall be maintained in trust solely for holders of Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims) and for no other Entities until all Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims) have been paid in full. Funds held in the Priority Claims Reserve shall not be considered property of the Estates of the Debtors or the Post-Effective Date Debtors. The Priority Claims Reserve Amount shall be used to pay holders of all Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims), to the extent that such Priority Claims and Administrative Claims have not been paid in full on or before the Effective Date. If all or any portion of a Priority Claim or Administrative Claim (other than a Professional Fee Claim) shall become a disallowed Claim, then the amount on deposit in the Priority Claims Reserve attributable to such surplus or such disallowed Claim, including the interest that has accrued on said amount while on deposit in the Priority Claims Reserve, shall remain in the Priority Claims Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Priority Claims Reserve is sufficient to ensure that all Allowed Priority Claims and Allowed Administrative Claims (other than Professional Fee Claims) will be paid in accordance with the Plan. Any amounts remaining in the Priority Claims Reserve after all Allowed Priority Claims and Allowed Administrative Claims (other than Allowed Professional Fee Claims) are paid in full, shall be paid *first,* to the Prepetition Agent to be applied toward the Revolver Claims until the Revolver Claims are paid in full and, *second*, to the Prepetition Agent to be applied toward the Term Loan Claims until the Term Loan Claims are paid in full.

F.    *Wind Down*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall take any and all actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date the Debtors (1) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have cancelled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

G.    *Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtors. The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

H.    *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

I.    *Dissolution of the Post-Effective Date Debtors*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtors shall be deemed to be dissolved without any further action by the Post-Effective Date Debtors, including the filing of any documents with the secretary of state for the state in which the Post-Effective Date Debtors are formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtors in and withdraw the Post-Effective Date Debtors from applicable states.

J.    *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Credit Agreement Documents, and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors, and the Post-Effective Date Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

K.    *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (1) implementation of the Restructuring Transactions; (2) consummation of the Sale Transaction under the Asset Purchase Agreement; and (3) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Post-Effective Date Debtors, and any corporate action

required by the Debtors or the Post-Effective Date Debtors in connection with the Plan or corporate structure of the Debtors or Post-Effective Date Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors. The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under non-bankruptcy law.

L.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Transactions in the name of and on behalf of the Post-Effective Date Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.      *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Post-Effective Date Debtors; (2) the Restructuring Transactions; (3) any Sale Transaction(s); (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

N.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Post-Effective Date Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Post-Effective Date Debtors' rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

The Post-Effective Date Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Post-Effective Date Debtors, as applicable, will not pursue any and all available Retained Causes of Action against it. The Debtors or the Post-Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity, except as**

**otherwise expressly provided in the Plan, including Article VIII of the Plan.** The Post-Effective Date Debtors expressly reserve all Retained Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Post-Effective Date Debtors reserve and shall retain such Retained Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that a Debtor may hold against any Entity shall vest in the Post-Effective Date Debtors. The applicable Post-Effective Date Debtors, through the Plan Administrator, shall retain and may exclusively enforce any and all such Retained Causes of Action. The Post-Effective Date Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, and subject to Article VIII hereof, (a) neither the Debtors nor the Purchaser shall retain any rights to pursue Avoidance Actions not purchased by or transferred or conveyed to the Purchaser pursuant to the Asset Purchase Agreement and such rights shall remain exclusively with the Post-Effective Date Debtors, as controlled and managed by the Plan Administrator; and (b) the Post-Effective Date Debtors have not retained and, accordingly, shall not prosecute any Causes of Action (including Avoidance Actions) against current or former suppliers to or customers of the Debtors, their non-Debtor Affiliates, or the Purchaser.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.      Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) is the subject of a motion to assume such Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (3) is a contract, release, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is the Asset Purchase Agreement; (6) is the Agency Agreement, or (7) is an Assigned Contract pursuant to and as defined in the Asset Purchase Agreement.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Bankruptcy Order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases assumed or rejected pursuant to the Plan; *provided, however,* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign to Purchaser the Assigned Contracts (as defined in the Asset Purchase Agreement) or any other terms of the Sale Order relating thereto. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Post-Effective Date Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors, the Post-Effective Date Debtors, and the Plan Administrator, as applicable, reserve the right, with the consent of the Prepetition Agent (which such consent shall not be unreasonably withheld), to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases identified in this Article V of the Plan and in the Plan Supplement in a manner consistent with the Asset Purchase Agreement (i) to add or remove any Executory Contract or Unexpired Lease to the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Effective Date, and (ii) to remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time through and including 45 days after the Effective Date. The Debtors or the Post-Effective Date Debtors, as applicable, shall provide notice of any amendments to the

Schedule of Assumed Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby.

B.    *Directors and Officers Insurance Policies*

Any directors and officers insurance policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtors effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies.

C.    *Indemnification Obligations*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtors which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; *provided that*, notwithstanding anything herein to the contrary, the Post-Effective Date Debtors' obligation to fund such indemnification obligations shall be limited to the extent of coverage available under any insurance policy assumed by the Debtors and assigned to the Post-Effective Date Debtors, including any directors and officers insurance policies.

D.    *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan (it being understood that the assumption and assignment of the Assigned Contracts (as defined in the Asset Purchase Agreement) shall be authorized and governed by the Sale Order, and, in the event of any inconsistency between this Plan and Sale Order concerning the assumption and assignment of the Assigned Contracts (as defined in the Asset Purchase Agreement), the terms of the Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Post-Effective Date Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  At least ten days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least three days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

*E.*      *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Post-Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

*F.*      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

*G.*      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contract and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Post-Effective Date Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

*H.*      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### ARTICLE VI.
### PROVISIONS GOVERNING DISTRIBUTIONS

*A.*      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise

provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtors.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash from the Wind Down Amount.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions

Except as otherwise provided herein, the Post-Effective Date Debtors shall make distributions to holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided that* the manner of such distributions shall be determined at the discretion of the Post-Effective Date Debtors; *provided, further, that* the address for each holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that holder.

3.    Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its holder is forever barred pursuant to Article VIII from asserting that Claim against the Debtors or their property.

4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at

which time such distribution shall be made to such holder without interest; *provided that* such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Post-Effective Date Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

E.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Post-Effective Date Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and Post-Effective Date Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

F.    *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in a Final Order, the Plan or the Confirmation Order, or required by applicable law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

H.    *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal*, National Edition, on the Effective Date.

I.    *Setoffs and Recoupment*

Except as expressly provided in this Plan, each Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Retained Causes of Action that such Post-Effective Date Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Post-Effective Date Debtor(s) and holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided that* neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any and all claims, rights, and Retained Causes of Action that such Post-Effective Date Debtor or its successor may possess against the applicable holder. In no event shall any holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F of the Plan on or

before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

J.      *Claims Paid or Payable by Third Parties*

    1.    Claims Paid by Third Parties

    The Debtors or the Post-Effective Date Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Post-Effective Date Debtor. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Post-Effective Date Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Debtor or Post-Effective Date Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Debtor or Post-Effective Date Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

    2.    Claims Payable by Third Parties

    No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

    3.    Applicability of Insurance Policies

    Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

A.      *Allowance of Claims*

    After the Effective Date, the Post-Effective Date Debtors or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.

B.      *Claims Administration Responsibilities*

    Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Post-Effective Date Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.    *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Post-Effective Date Debtors without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtors or the Post-Effective Date Debtors, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims.

F.    *Disallowance of Claims*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Post-Effective Date Debtors. All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

G.    *Amendments to Claims*

On or after the applicable bar date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Post-Effective Date Debtors. Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII.B, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

**B.      *Release of Liens***

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Post-Effective Date Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal,**

state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

C.      *Releases by the Debtors*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Credit Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan], the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided that* any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.C is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

D.      *Releases by Holders of Claims and Interests*

As of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any

security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Credit Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.D, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.D is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties or the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

## E.    Exculpation

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any holder of a Cause of Action, Claim, or Interest for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction(s), the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties, the Prepetition Agent and Prepetition Lenders have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## F.    Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means

any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.E of the Plan.

G.    *Substantive Consolidation*

1.    The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating all of the Estates of all of the Debtors into a single consolidated estate for all purposes associated with confirmation and consummation of the Plan.

2.    The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, confirmation and distributions. If this substantive consolidation is approved, then for all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor, to the extent such exist, shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Moreover, (a) no distribution shall be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein, (b) all guaranties of any one of the Debtors of the obligations of any of the other Debtors, to the extent such exist, shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the consolidated Debtors' Estates, and (c) every Claim that is timely Filed or to be Filed in the Chapter 11 Cases of any of the Debtors shall be deemed Filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

3.    Notwithstanding any provision of the Plan to the contrary, any holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims. Claims against more than one of the Debtors arising from the same injury, damage, cause of action or common facts shall be Allowed only once as if such Claim were against a single Debtor.

4.    Any alleged defaults under any applicable agreement, including executory contracts and unexpired leases, with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

5.    As soon as practicable after the Effective Date, the Plan Administrator is authorized to and shall submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes each of the Chapter 11 Cases except RMBR Liquidation, Inc.'s Chapter 11 Case. The Debtors' consolidated estate shall be administered through RMBR Liquidation, Inc.'s Chapter 11 Case. Once the

Plan has been fully administered, the Plan Administrator shall file a final report and a motion seeking a final decree in accordance with Local Rule 3022-1.

H.      *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Effective Date Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Post-Effective Date Debtors, or another Entity with whom the Post-Effective Date Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Document Retention*

On and after the Effective Date, the Post-Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtors.

J.      *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

K.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      The Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) in form and substance acceptable to the Debtors and the Prepetition Agent, and shall;

(a)      authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)     authorize the Debtors, as applicable or necessary, to: (i) implement the Restructuring Transactions; (ii) implement the Sale Transactions; (iii) make all distributions and issuances as required under the Plan; and (iv) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

(d)     authorize the implementation of the Plan in accordance with its terms; and

(e)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

2.   the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.   the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

4.   the Priority Claims Reserve shall have been established and funded with the Priority Claims Reserve Amount;

5.   the unpaid fees and expenses incurred by the Prepetition Agent, including the unpaid fees and expenses incurred by the professionals retained by the Prepetition Agent, shall be paid;

6.   the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors and the Prepetition Agent; and

7.   the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors and the Prepetition Agent.

B.     *Waiver of Conditions*

The conditions to Consummation set forth in this Article IX may be waived by the Debtors with the consent of the Prepetition Agent (which such consent shall not be unreasonably withheld) without further notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

C.     *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity in any respect. Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction under the Asset Purchase Agreement or the revocation of the Debtors' authority under the Sale Order to consummate such Sale Transaction.

## ARTICLE X.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

*A.*      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Prepetition Agent (which such consent shall not be unreasonably withheld), reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.*      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*C.*      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such Debtor, any holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any holder of a Claim or Interest, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or

Unexpired Lease that is assumed (or assumed and assigned); (c) the Post-Effective Date Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

    4.    ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

    5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

    6.    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

    7.    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

    8.    enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including any sale of Debtors' Owned Real Property, to the extent the Plan Administrator asks the Bankruptcy Court to approve such sale pursuant to section 363 of the Bankruptcy Code;

    9.    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

    10.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

    11.    resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

    12.    resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

    13.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

    14.    determine any other matters that may arise in connection with or that relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

    15.    enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

    16.    adjudicate any and all disputes arising from or relating to distributions under the Plan;

    17.    consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

    18.    determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, including but not limited to transactions under the Asset Purchase Agreement and Agency Agreement, whether they occur before, on or after the Effective Date;

21. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

23. enforce all orders previously entered by the Bankruptcy Court; and

24. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Post-Effective Date Debtors, as applicable, and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees*

All fees and applicable interest payable pursuant to section 1930(a) of the Judicial Code and 31 U.S.C. § 3717, as applicable, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Post-Effective Date Debtors (or the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be

deemed to be an admission or waiver of any rights of any Debtor with respect to the holders unless and until the Effective Date has occurred.

E.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      Notices

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (which may be by E-mail), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by E-mail, when received and telephonically confirmed, addressed to the following:

> RMBR Liquidation, Inc.
> 5500 Avion Park Dr.
> Highland Heights, OH 44143
> Attention:  Robert J Duffy
> E-mail address:  bduffy@thinkbrg.com
>
> with copies (which shall not constitute notice) to:
>
> Landis Rath & Cobb LLP
> 919 Market Street
> Suite 1800
> Wilmington, Delaware 19801
> Attention:  Adam G. Landis
>             Matthew B. McGuire
> Email address:  landis@lrclaw.com
>                 mcguire@lrclaw.com
>
> - and -
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention:  Christopher T. Greco
> E-mail addresses:   christopher.greco@kirkland.com
>
> - and -
>
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois 60654
> Attention:  Spencer Winters
> E-mail addresses:  spencer.winters@kirkland.com

After the Effective Date, the Post-Effective Date Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.    *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Notice, Claims, and Balloting Agent at https://cases.primeclerk.com/ThingsRemembered; or the Bankruptcy Court's website at http://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.    *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors consistent with the terms set forth herein; and (3) non-severable and mutually dependent; *provided, however,* that, notwithstanding the inclusion of the Asset Purchase Agreement or any documents ancillary thereto in the Plan Supplement, the Sale Transaction contemplated in the Asset Purchase Agreement is severable from the Plan and the Confirmation Order, and the non-Confirmation or non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction contemplated in the Asset Purchase Agreement or the revocation of the Debtors' authority under the Sale Order to consummate such Sale Transaction.

J.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors, the Prepetition Agent and the Prepetition Secured Lenders will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Prepetition Agent, the Prepetition Secured Lenders and each of their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

K.    *Closing of Chapter 11 Cases*

The Post-Effective Date Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

L.    *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of an inconsistency

between the Confirmation Order and the Plan, the Confirmation Order shall control.  Notwithstanding the foregoing, to the extent any provision of this Plan or the Confirmation Order is inconsistent with the Sale Order concerning any matter relating to the relevant Sale Transaction, the Sale Order shall govern and control.

*[Remainder of Page Intentionally Left Blank]*

RMBR Liquidation, Inc. and its Debtor Affiliates


By:      */s/ Brett Witherell*
Name:    Brett Witherell
Title:   Chief Financial Officer


Dated:  April 24, 2019

## EXHIBIT B

**Disclosure Statement Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RMBR LIQUIDATION, INC., *et al.*,[1] | ) Case No. 19-10234 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. No. ___** |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT ON AN INTERIM BASIS; (II) SCHEDULING A COMBINED HEARING ON FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND PLAN CONFIRMATION AND DEADLINES RELATED THERETO; (III) APPROVING THE SOLICITATION, NOTICE AND TABULATION PROCEDURES AND THE FORMS RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Upon the *Motion of the Debtors for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* (the "Motion");[2] and based on the record in these chapter 11 cases; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that sufficient notice of the Motion has been given; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court on this Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND THAT:

A.    The Debtors have all necessary authority to propose and prosecute the Plan and the Disclosure Statement.

B.    The Debtors have provided adequate notice of the Motion, and the time fixed for filing objections thereto, and no other or further notice need be provided with respect to the Motion.

C.    The period, set forth below, during which the Debtors may solicit the Plan is a reasonable and adequate period of time under the circumstances for creditors entitled to vote to make an informed decision to accept or reject the Plan, including to make an informed decision to object to the Plan.

D.    The notices substantially in the forms attached hereto as **Exhibit 2** (the "Confirmation Hearing Notice") and **Exhibit 3** (the "Non-Voting Status - Deemed to Reject Notice" and together with the Confirmation Hearing Notice, the "Notices"), and the procedures set forth below for providing such notices to creditors of the time, date and place of the hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the

"Confirmation Hearing"), and the contents of the Notices comply with Bankruptcy Rules 2002, 3017 and Local Rule 3017-2 and constitute sufficient notice to all interested parties.

       E.      The procedures for solicitation and tabulation of votes to accept or reject the Plan (as more fully set out in the Motion and in this Order below) provide for a fair and equitable process, and are consistent with the Bankruptcy Code section 1126. The form of the Ballot attached hereto as **Exhibit 4** is sufficiently consistent with Official Form No. 314, adequately addresses the particular needs of these chapter 11 cases, and is appropriate for the Voting Class to vote to accept or reject the Plan.

NOW THEREFOR, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

       1.      The Motion is GRANTED as set forth herein.

       2.      The Disclosure Statement is approved on an interim basis under Bankruptcy Code section 1125, Bankruptcy Rule 3017 and Local Rule 3017-2. Any objections to the adequacy of the information contained in the Disclosure Statement are expressly reserved for consideration at the Confirmation Hearing.

       3.      The Confirmation Schedule is approved in its entirety unless otherwise modified herein.

       4.      The combined hearing on final approval of the adequacy of the Disclosure Statement and confirmation of the Plan is scheduled for **June 5, 2019 at ____:___ a.m. (prevailing Eastern Time)** (the "Confirmation Hearing"). The deadline to file objections to the adequacy of the Disclosure Statement and confirmation of the Plan is **May 29, 2017 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"). The Confirmation Hearing may be continued from time to time by the Court or the Debtors, after consultation with counsel to the

Creditors' Committee and the Prepetition Agent, without further notice other than adjournments

announced in open court.

     5.     Objections to the adequacy of the Disclosure Statement and confirmation of the

Plan, if any, must:

     a.  be in writing;

     b.  conform to the Bankruptcy Rules and Local Rules;

     c.  state the name and address of the objecting party and the amount and nature of the Claim or Interest of such entity;

     d.  state with particularity the basis and nature of any objection to the Disclosure Statement, the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and

     e.  be filed, together with a proof of service, with the Court and served so that they are **actually received** by the following parties **on or prior to the Objection Deadline**: (i) co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco and Derek I. Hunter, and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Spencer A. Winters and Scott J. Vail; (iii) co-counsel to the Debtors, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis and Matthew B. McGuire; (iv) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy J. Fox; (v) proposed co-counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"), (a) Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams and Lauren S. Schlussel, and (b) Connolly Gallagher LLP, 267 East Main Street, Newark, Delaware 19711, Attn: N. Christopher Griffiths; (vi) the agent under the Debtors' prepetition asset-based facility and prepetition term loan facility, Cortland Capital Market Services LLC (the "Prepetition Agent"), 225 W. Washington St., 9th Floor, Chicago, Illinois 60606, Attn: Maggie Welch and Legal Department; (vii) counsel to the Prepetition Agent, (a) Weil Gotshal & Manges LLP, 767

Fifth Avenue, New York, New York 10153, Attn: David N. Griffiths and Clifford Sonkin, and (b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington Delaware 19801, Attn: Zachary I. Shapiro.

6.      The Confirmation Hearing Notice, in substantially the form attached hereto as **Exhibit 2**, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d) and 3017(d) and Local Rule 3017-2 and is approved in all respects.  The Confirmation Hearing Notice shall be served within three (3) days of the entry of this Order upon (i) all holders of Claims and Interests in Classes 1, 2 and 3, (ii) all other creditors of the Debtors and (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002.

7.      The Non-Voting Status - Deemed to Reject Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved in all respects.  The Non-Voting Status - Deemed to Reject Notice shall be served upon all holders of Claims and Interests in Classes 5, 6, 7, 8, and 9 within three (3) days of the entry of this Order.

8.      The Debtors shall transmit a package (the "Solicitation Package") containing, (a) a cover letter describing the contents of the Solicitation Package, (b) the Disclosure Statement, the Plan and all exhibits thereto (in hardcopy or on a flash drive in PDF format), (c) this Order (in hardcopy or on a flash drive in PDF format), (d) the Confirmation Hearing Notice, (e) the Ballot, including voting instructions, and (f) a pre-addressed stamped return envelope to holders of Claims in the Voting Class within three (3) days following entry of this Order.

9.      As part of the Solicitation Package, the Debtors shall distribute to creditors entitled to vote on the Plan the ballot based on Official Form No. 314, modified to address the particular circumstances of these Chapter 11 Cases and to include certain additional information that the Debtors believe to be relevant and appropriate for the Voting Class to vote to accept or reject the Plan.  The form of Ballot attached hereto as **Exhibit 4** is hereby approved.

10.    The deadline to submit Ballots to accept or reject the Plan shall be **May 29, 2019 at 11:59 p.m. (prevailing Eastern Time)** (the "Voting Deadline").

11.    Ballots shall be transmitted by mail, as part of the Solicitation Package, to the record holders of claims in the Voting Class. All other holders of Claims and Interests will not be provided with a Ballot because such holders are either unimpaired and presumed to accept the Plan under Bankruptcy Code section 1126(f) or impaired and deemed to reject the Plan under Bankruptcy Code section 1126(g). Such non-voting holders will receive a copy of the Confirmation Hearing Notice and holders of Claims and Interests in Classes 5, 6, 7, 8, and 9 also will receive the Non-Voting Status - Deemed to Reject Notice.

12.    The procedures set forth in the Motion for effectively casting a Ballot are hereby approved in their entirety. In order to cast a Ballot, parties must (i) fully complete and execute the Ballot and return it by first class mail, over-night courier or hand-delivery to Prime Clerk at the address set forth in the Ballot or (ii) submit it via electronic online transmission through a customized online balloting portal on the Debtors' case website, https://cases.primeclerk.com/ThingsRemembered,[3] on or before the date that is seven (7) days prior to the Confirmation Hearing.

13.    Ballots otherwise sent by facsimile, telecopy, or electronic submissions other than as set forth in the Ballot will **not** be accepted. Only properly completed, executed and timely submitted Ballots will be accepted by the Debtors.

14.    The following Ballots shall not be counted in tabulating votes cast to accept or reject the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim or Interest; (b) any Ballot submitted by a party that does

---

[3] The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the Creditor's electronic signature will be deemed to be an original signature immediately legally valid and effective.

not hold a Claim or Interest in a Class that is entitled to vote; (c) any unsigned Ballot; and (d) any Ballot not marked to either accept or reject the Plan, as applicable.

15.    The record date for determining which holders of Claims and Interests are to be served with the Solicitation Package and the Notices shall be the date on which this Order is entered (the "Record Date").

16.    Unless otherwise set forth herein, the Debtors shall mail only the Confirmation Hearing Notice to parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors also will mail, or cause to be mailed, the Confirmation Hearing Notice and the applicable Non-Voting Status Notice to all known holders of Claims and Interests in Classes that are not entitled to vote on the Plan. The Debtors are authorized to provide in the Confirmation Hearing Notice directions for such parties to obtain (i) electronic copies of the Plan Documents via download from the website maintained by Prime Clerk and (ii) a print copy of the Plan Documents free of charge to the requesting party (but only to the extent so requested of Prime Clerk by telephone, letter or email) to be delivered by Prime Clerk to the requesting party by first class mail.

17.    The Solicitation Procedures attached hereto as **Exhibit 1** are hereby approved in their entirety, provided that the Debtors reserve the right, after consultation with the Prepetition Agent and the Creditors' Committee, to amend or supplement the Solicitation Procedures and related documents to better facilitate the confirmation process.

18.    The Solicitation Procedures for service of the Solicitation Package and the Notices set forth in the Motion satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

19.    The Debtors are authorized, after consultation with the Prepetition Agent and the Creditors' Committee, to make changes to the Disclosure Statement, Plan, Solicitation

Procedures, Notices, Ballot and related pleadings without further order of the Court, including without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the foregoing documents before their distribution.

20.    The Debtors and Prime Clerk are hereby authorized to take any action necessary or appropriate to implement the terms of, and the relief granted in, this Order without seeking further order of the Court.

21.    The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this order.

22.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order.

Date: _____, 2019
      Wilmington, Delaware

 

                                              _____
                                              THE HONORABLE KEVIN GROSS
                                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RMBR LIQUIDATION, INC., *et al.*,[1] | ) | Case No. 19-10234 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## SOLICITATION PROCEDURES

On April 24, 2019, the above-captioned debtors and debtors in possession (the "Debtors") filed: (a) the *Disclosure Statement for the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 [D.I. __] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Disclosure Statement"); (b) the *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 [D.I. __] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "Plan"); and (c) the *Motion of the Debtors for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* (the "Motion").[2]

### Definitions

a. **"Ballot"** means the ballot accompanying the Disclosure Statement upon which certain holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

b. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the chapter 11 cases.

c. **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion, the Plan or the Disclosure Statement, as applicable.

the Plan, as such hearing may be adjourned or continued from time to time and which currently is scheduled for June 5, 2019 at __:__ _.m. (prevailing Eastern Time).

d.  **"Confirmation Hearing Notice"** means that certain notice of the hearing on final approval of the Disclosure Statement and confirmation of the Plan approved by the Bankruptcy Court in the Interim Approval and Procedures Order.

e.  **"Disclosure Statement"** means the Disclosure Statement filed on April 24, 2019 and approved on an interim basis by the Bankruptcy Court in the Interim Approval and Procedures Order.

f.  **"E-Ballot"** means a ballot that may be obtained electronically through a customized section on the Debtors' case website http://cases.primeclerk.com/ThingsRemembered in which certain holders of Impaired Claims and Interests entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

g.  **"Interim Approval and Procedures Order"** means the *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. __].

h.  **"General Tabulation Procedures"** means the Procedures set forth herein for the purposes of tabulating votes to accept or reject the Plan.

i.  **"Non-Voting Status Notice-Deemed to Reject"** means the notice the holders of Claims and Interests in Classes 5, 6, 7, 8, and 9 who are deemed to reject the Plan will receive in lieu of a Ballot.

j.  **"Plan"** means the *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* [D.I. __], as may be amended or modified from time to time, filed on April 24, 2019.

k.  **"Objection Deadline"** means **May 29, 2019, at 4:00 p.m. (prevailing Eastern Time)**, the date set by the Bankruptcy Court as the deadline to file and serve objections to the Plan.

l.  **"Resolution Event"** has the meaning set forth in section D.4. of the Solicitation Procedures.

m.  **"Solicitation Package"** consists of the documents set forth in section C.1. of the Solicitation Procedures.

n.      **"Solicitation Procedures"** means the procedures set forth herein.

o.      **"Prime Clerk"** means Prime Clerk LLC the noticing, claims and administrative agent retained by the Debtors in these Chapter 11 Cases.

p.      **"Voting Deadline"** means **May 29, 2019 at 11:59 p.m. (prevailing Eastern Time)**, the date set by the Bankruptcy Court as the deadline for receipt of Ballots by Prime Clerk.

q.      **"Record Date"** has the meaning set forth in section A of the Solicitation Procedures.

## Solicitation Procedures

### A.      The Record Date

The Bankruptcy Court has approved May 7, 2019, at 4:00 p.m. prevailing Eastern Time, as the record date (the "Record Date") for purposes of determining, among other things, which holders of Claims are entitled to vote on the Plan.

### B.      The Voting Deadline

The Bankruptcy Court has approved **May 29, 2019, at 11:59 p.m.** (prevailing Eastern Time) as the deadline for the delivery of Ballots voting to accept or reject the Plan (the "Voting Deadline"). To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered by (i) using the return envelope provided or by delivery by: (a) first class mail, (b) overnight courier or (c) personal delivery or (ii) submitting it via electronic online transmission through a customized online balloting portal on the Debtors' case website http://cases.primeclerk.com/ThingsRemembered, so that the Ballot is actually received no later than the Voting Deadline by Prime Clerk. The Ballot will clearly indicate the appropriate return address and directions for electronic submission. Ballots returnable to Prime Clerk should be sent to: RMBR Liquidation, Inc. Ballot Processing c/o Prime Clerk, LLC 830 3rd Avenue, 3rd Floor, New York, NY 10022.

### C.      Solicitation Procedures

1. **The Solicitation Package**: The Solicitation Package shall contain copies of the following:

(a) a cover letter describing the contents of the Solicitation Package;

(b) the Disclosure Statement, the Plan and all exhibits thereto (in hardcopy or on a flash drive in PDF format);

(c) the Interim Approval and Procedures Order (in hardcopy or on a flash drive in PDF format);

(d) the Confirmation Hearing Notice;

(e) the Ballot, including voting instructions;

(f) a pre-addressed stamped return envelope; and

(g) such other materials as the Court may direct or authorize.

2. **Distribution of the Solicitation Package**:  The Solicitation Package shall be served on all known holders of Claims classified as Class 4 Revolver Claims under the Plan.

The Debtors shall make every reasonable effort to ensure that holders of more than one Claim in the Voting Class receive no more than one Solicitation Package on account of such Claims.

3. **Distribution of Materials**:  In addition, the Office of the United States Trustee and counsel to the Official Committee of Unsecured Creditors shall be served the Solicitation Package. The Debtors will mail, or cause to be mailed, a copy of the Confirmation Hearing Notice to all parties on the 2002 List.  The Debtors also will mail, or cause to be mailed, to all holders of Claims and Interests not entitled to vote on the Plan the Confirmation Hearing Notice and holders of Claims and Interests in Classes 5, 6, 7, 8, and 9 also will receive the Non-Voting Status - Deemed to Reject Notice.

## D.    Voting and General Tabulation Procedures

1. **Who May Vote**:  Only the following holders of Claims in the Voting Class are entitled to vote:

    a.  Holders of Claims for which Proofs of Claim have been timely-filed, as reflected on the claims register as of the Record Date; provided, however, that certain holders of Claims subject to a pending objection shall not be entitled to vote unless they become eligible to vote through a Resolution Event, as set forth in more detail in section D.4. herein;

    b.  Holders of Claims that are listed in the Debtors' Schedules and Statements, with the exception of those Claims that are scheduled as contingent, unliquidated or disputed (excluding such scheduled Claims that have been superseded by a timely-filed Proof of Claim);

    c.  Holders whose Claims arise pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Bankruptcy Court, in an order of the Bankruptcy Court, or in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been filed; and

    d.  The assignee of any transferred or assigned Claim, only if: (i) transfer or assignment has been fully effectuated pursuant to the procedures dictated by Bankruptcy Rule 3001(e) and (ii) such transfer is reflected on the Claims Register on or before the Record Date.

2.     **Establishing Claim Amounts**:  In tabulating votes, the following hierarchy will be used to determine the amount of the Claim associated with each vote:

    a.  the amount of the Claim settled and/or agreed upon by the Debtors, as reflected in a Bankruptcy Court pleading, stipulation, agreement, or other document filed with the Bankruptcy Court, in an order of the Bankruptcy Court or in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court;

    b.  the amount of the Claim Allowed (temporarily or otherwise) pursuant to a Resolution Event in accordance with the Solicitation Procedures;

    c.  the amount of the Claim contained in a Proof of Claim that has been timely filed by the applicable claims bar date (or deemed timely filed by the Bankruptcy Court under applicable law); provided that Ballots cast by holders whose Claims are not listed in the Schedules, but that timely file a Proof of Claim in an unliquidated or unknown amount that are not the subject of an objection, will count for satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as Ballots for Claims in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code; provided, further, that to the extent the amount of the Claim contained in the Proof of Claim is different from the amount of the Claim set forth in a document filed with the Bankruptcy Court as referenced in the Solicitation Procedures, the amount of the Claim in the document filed with the Bankruptcy Court will supersede the amount of the Claim set forth on the respective Proof of Claim;

    d.  the amount of the Claim listed in the Schedules; provided, that such Claim is not listed in the Schedules as contingent, unliquidated or disputed, or any combination thereof, and has not been paid; and

    e.  in the absence of any of the foregoing, zero.

The amount of the Claim established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through Prime Clerk are not binding for any purpose, including for purposes of voting and distribution.

3.     **General Ballot Tabulation**:   The following voting procedures and standard assumptions will be used in tabulating Ballots:

    a.  except as otherwise provided herein or unless waived by the Debtors, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline, the Debtors shall reject such Ballot as invalid and, therefore, decline to count it in connection with Confirmation;

    b.  Prime Clerk will date and time-stamp all Ballots when received.  Prime Clerk shall retain all original Ballots and an electronic copy of the same for a period

of three (3) years after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court;

c.  an original executed Ballot is required to be submitted by the entity submitting any written Ballot.  Delivery of a Ballot to Prime Clerk by facsimile, email or any other electronic means (with the exception of properly submitted E-Ballots) shall not be valid;

d.  the Debtors shall file the Voting Report at least one (1) business day prior to the Confirmation Hearing.  The Voting Report shall, among other things, delineate every irregular Ballot including, without limitation, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or necessary information, received via facsimile or electronic mail, or damaged.  The Voting Report shall indicate the Debtors' intentions with regard to such irregular Ballots;

e.  the method of delivery of Ballots to Prime Clerk is at the election and risk of each holder of a Claim.  Except as otherwise provided herein, such delivery will be deemed made only when Prime Clerk actually receives the originally executed Ballot or in the case of an E-Ballot, when submitted;

f.  no Ballot should be sent to any of the Debtors, the Debtors' agents (other than Prime Clerk), or the Debtors' financial or legal advisors and if so sent will not be counted;

g.  if multiple Ballots are received from the same holder of a Claim with respect to the same Claim prior to the Voting Deadline, the latest-dated valid Ballot received prior to the Voting Deadline will supersede and revoke any prior dated Ballot;

h.  holders must vote all of their Claims within the Voting Class either to accept or reject the Plan and may not split any such votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, if a holder has multiple Claims within the Voting Class, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes;

i.  a person signing or electronically submitting a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity must indicate such capacity when signing or electronically submitting and, if required or requested, submit proper evidence to the requesting party of the authority to so act on behalf of the subject holder;

j.  the Debtors, subject to contrary order of the Bankruptcy Court, may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report;

k.  neither the Debtors, nor any other entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

l.  unless waived by the Debtors, subject to contrary order of the Bankruptcy Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

m.  in the event a designation for lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected by such Claim;

n.  subject to any contrary order of the Bankruptcy Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided, however, that any such rejections shall be documented in the Voting Report;

o.  if a Claim has been estimated or otherwise Allowed for voting purposes by an order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a), such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Bankruptcy Court for voting purposes only and not for purposes of allowance or distribution;

p.  if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein; and

q.  the following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim; (b) any Ballot cast by an entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unexecuted Ballot; (d) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan; or (e) any Ballot submitted by any entity not entitled to vote pursuant to the Solicitation Procedures.

4.  **Temporary Allowance of Claims for Voting Purposes**:  If a holder of a Claim is subject to a pending objection as of the Record Date, the holder of such Claim cannot vote unless one or more of the following events have taken place at least five (5) business days before the Voting Deadline (each, a "Resolution Event"):

a.  an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b.  an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

c.  a stipulation or other agreement is executed between the holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount;

d.  a stipulation or other agreement is executed between the holder of such Claim and the Debtors temporarily allowing the holder of such Claim to vote its Claim in an agreed upon amount; or

e.  the pending objection to such Claim is voluntarily withdrawn by the Debtors.

No later than two (2) business days after a Resolution Event, Prime Clerk shall distribute a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant holder of such temporarily allowed Claim that has been allowed for voting purposes only (or for other purposes as set forth in an applicable order of the Bankruptcy Court) by such Resolution Event, which must be returned according to the instructions on the Ballot by no later than the Voting Deadline.

If the holder of a Claim receives a Solicitation Package and the Debtors object to such Claim after the Record Date, but at least fifteen (15) days prior to the Confirmation Hearing, the Debtors' notice of objection will inform such holder of the rules applicable to Claims subject to a pending objection and the procedures for temporary allowance for voting purposes. Furthermore, if the holder of a Claim receives a Solicitation Package and the Debtors object to such Claim less than fifteen (15) days prior to the Confirmation Hearing, the holder's Claim shall be deemed temporarily allowed for voting purposes only without further action by the holder of such Claim and without further order of the Bankruptcy Court.

5.  **Forms of Notices to Unimpaired Classes**: Certain holders of Claims that are not entitled to vote because they are unimpaired are otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and will receive the Confirmation Hearing Notice, substantially in the form attached to the Interim Approval and Procedures Order as **Exhibit 2**. Such notice will instruct the holders how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

6.  **Forms of Notices to Impaired Classes**: Certain holders of Interests that are not entitled to vote because they are Impaired, or are otherwise deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the Confirmation Hearing Notice, substantially in the form attached to the Interim Approval and Procedures Order as **Exhibit 2**, and the Notice of Non-Voting Status – Deemed to Reject, substantially in the form attached to the Interim Approval and Procedures Order as **Exhibit 3**. Such notice will instruct the holders how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

**E.      Release, Exculpation and Injunction Language in the Plan**

THE RELEASE, EXCULPATION AND INJUNCTION LANGUAGE IN ARTICLE VIII OF THE PLAN WILL BE INCLUDED IN THE DISCLOSURE STATEMENT AND FURTHER NOTICE IS PROVIDED WITH RESPECT TO SUCH PROVISIONS IN THE CONFIRMATION HEARING NOTICE.

**F.      Amendments to the Plan and the Solicitation Procedures**

THE DEBTORS EXPRESSLY RESERVE THE RIGHT TO AMEND FROM TIME TO TIME THE TERMS OF THE PLAN IN ACCORDANCE WITH THE TERMS THEREOF (SUBJECT TO COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1127 OF THE BANKRUPTCY CODE AND THE TERMS OF THE PLAN REGARDING MODIFICATION).

THE DEBTORS EXPRESSLY RESERVE THE RIGHT TO AMEND OR SUPPLEMENT THE SOLICITATION PROCEDURES TO BETTER FACILITATE THE SOLICITATION PROCESS.

***

# EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RMBR LIQUIDATION, INC., *et al.*,[1] | ) Case No. 19-10234 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. No. ___** |

### NOTICE OF (A) INTERIM APPROVAL OF THE DISCLOSURE STATEMENT AND (B) COMBINED HEARING TO CONSIDER FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN AND THE OBJECTION DEADLINE RELATED THERETO

**TO ALL PARTIES IN INTEREST, PLEASE TAKE NOTICE THAT:**

1.    **Filing of the Disclosure Statement and Plan.**  On April 24, 2019, the above-captioned debtors and debtors-in-possession (collective, the "Debtors") filed the *Disclosure Statement for the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") and the *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 (as may be amended, supplemented or modified, including all exhibits thereto, the "Plan").[2]

2.    **Interim Bankruptcy Court Approval of the Disclosure Statement and the Notice Procedures.**  On May [ ], 2019, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. __] (the "Interim Approval and Procedures Order") approving, among other things, the Disclosure Statement on an interim basis, as required under Local Rule 3017-2 and authorizing the Debtors to provide notice of their intent to seek confirmation of the Plan pursuant to certain procedures set forth therein.

3.    **Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan.**  The Bankruptcy Court has established **May 29, 2019 at 4:00 p.m. (prevailing**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the Disclosure Statement, as applicable.

**Eastern Time)**, as the last date and time for filing and serving objections to the adequacy of the information in the Disclosure Statement and to confirmation of the Plan (the "Objection Deadline"). Any objection to the final approval of the Disclosure Statement and confirmation of the Plan must (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such Entity, (d) state with particularity the basis and nature of any objection to the Disclosure Statement, the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed, together with a proof of service, with the Bankruptcy Court and served so that it is **actually received no later than the Objection Deadline**, by: (i) co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco and Derek I. Hunter, and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Spencer A. Winters and Scott J. Vail; (iii) co-counsel to the Debtors, Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis and Matthew B. McGuire; (iv) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy J. Fox; (v) proposed co-counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"), (a) Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams and Lauren S. Schlussel, and (b) Connolly Gallagher LLP, 267 East Main Street, Newark, Delaware 19711, Attn: N. Christopher Griffiths; (vi) the agent under the Debtors' prepetition asset-based facility and prepetition term loan facility, Cortland Capital Market Services LLC (the "Prepetition Agent"), 225 W. Washington St., 9th Floor, Chicago, Illinois 60606, Attn: Maggie Welch and Legal Department; (vii) counsel to the Prepetition Agent, (a) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: David N. Griffiths and Clifford Sonkin, and (b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington Delaware 19801, Attn: Zachary I. Shapiro.

4.    **Voting Procedures**. Holders of Class 4 - Revolver Claims as of May 7, 2019 (the "Record Date") are entitled to vote to accept or reject the Plan. If you hold such a Claim, you will receive a solicitation package which shall include, among other things, a copy of (i) this Notice, (ii) the Plan (in hardcopy or on a flash drive in PDF format), (iii) the Disclosure Statement (in hardcopy or on a flash drive in PDF format), and (iv) a ballot. Please review the ballot and the instructions included therewith for how to vote on the Plan. Failure to follow the voting instructions may disqualify your vote.

5.    **Voting Deadline**. The deadline to vote on the Plan is May 29, 2019 at 11:59 pm (prevailing Eastern Time) (the "Voting Deadline"). The Debtors' noticing, claims and administrative agent, Prime Clerk, LLC ("Prime Clerk"), must receive your ballot with an original signature by the Voting Deadline, otherwise your vote will not be counted. In order for your Ballot to count, you must (i) fully complete and execute the ballot and return it by first class mail, over-night courier or hand-delivery to Prime Clerk at the address set forth in the ballot or (ii) submit it via electronic online transmission through a customized    online    balloting    portal    on    the    Debtors'    case    website,

https://cases.primeclerk.com/ThingsRemembered,[3] so that such ballot is actually received by Prime Clerk on or before the Voting Deadline.

6.      **The Confirmation Hearing.**  A combined hearing to consider final approval of the Disclosure Statement and confirmation the Plan (the "<u>Confirmation Hearing</u>") will commence on June 5, 2019 at __:__ (prevailing Eastern Time) before the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Wilmington, DE 19801. Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the Local Rules or otherwise.  In accordance with the Plan, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing by further action of the Debtors and without further notice to or action, order, or approval of the Bankruptcy Court or any other entity.

7.      **Directions to Obtain the Plan Documents and Make Inquiries.**  With authority of the Bankruptcy Court, copies of the Plan, the Disclosure Statement, the Interim Approval and Procedures Order (the "<u>Plan Documents</u>") are not included with this service.  If you should have any questions or if you would like to obtain any of the Plan Documents, please feel free to contact Prime Clerk by: (a) calling Prime Clerk at 844-339-4117 (toll free); (b) visiting the Debtors' case website at: http://cases.primeclerk.com/ThingsRemembered and/or (c) writing to RMBR Liquidation, Inc. Ballot Processing c/o Prime Clerk, LLC 830 3rd Avenue, 3rd Floor, New York, NY 10022.  You may also obtain copies of any pleadings for a fee via PACER at: http://www.deb.uscourts.gov.  Please be advised that Prime Clerk is authorized to answer questions about, and provide additional copies of, the Plan Documents, but may **not** advise you as to whether you should vote to accept or reject the Plan.

8.      **Release, Exculpation, and Injunction Language in the Plan.** Please be advised that Article VIII of the Plan contains the exculpation, releases and injunction provisions set forth below.  **<u>YOU ARE ADVISED TO REVIEW AND CONSIDER THESE PROVISIONS CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED. YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU FILE AN OBJECTION TO THE THIRD PARTY RELEASES WITH THE COURT.  IF YOU FAIL TO FILE AN OBJECTION TO THE THIRD PARTY RELEASES BEFORE THE OBJECTION DEADLINE SET FORTH ABOVE, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN.</u>**

---

[3] The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the Creditor's electronic signature will be deemed to be an original signature immediately legally valid and effective.

## Article VIII.B.  Release of Liens

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any holder of such Secured Claim (and the applicable agents for such holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Post-Effective Date Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## Article VIII.C. Releases by the Debtors

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and

restructuring efforts, intercompany transactions, the Credit Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement  or the Plan], the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided that* any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in 0 by the Debtors, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in 0 is:   (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable,  and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

### Article VIII.D. Releases by Holders of Claims and Interests

As of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or

relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Credit Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in 0, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in 0 is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties or the Debtors or Post-Effective Date Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

## Article VIII.E. Exculpation

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any holder of a Cause of Action, Claim, or Interest for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction(s), the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document

created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties, the Prepetition Agent and Prepetition Lenders have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

### Article VIII.F. Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;  (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on

**account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in 0 of the Plan.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASES, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: May ___, 2019       **LANDIS RATH & COBB LLP**
Wilmington, Delaware

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:     (302) 467-4400
Facsimile:      (302) 467-4450
Email:          landis@lrclaw.com
                mcguire@lrclaw.com
                brown@lrclaw.com
                pierce@lrclaw.com
-and-

**KIRKLAND & ELLIS LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          christopher.greco@kirkland.com
                derek.hunter@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
Spencer A. Winters (admitted *pro hac vice*)
Catherine Jun
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        spencer.winters@kirkland.com
              catherine.jun@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

# **EXHIBIT 3**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RMBR LIQUIDATION, INC., *et al.*,[1] | ) Case No. 19-10234 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. No. ___** |
| | ) |

## NON-VOTING STATUS NOTICE WITH RESPECT TO IMPAIRED CLASSES DEEMED TO REJECT THE JOINT CHAPTER 11 PLAN OF RMBR LIQUIDATION, INC. AND ITS DEBTOR AFFILIATES

**PLEASE TAKE NOTICE THAT** on May_____, 2019, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. __] (the "Interim Approval and Procedures Order") approving, among other things, the *Disclosure Statement for the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 [D.I. __] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "Disclosure Statement"), on an interim basis and authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes with regard to the acceptance or rejection of the *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 [D.I. __] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, the Interim Approval and Procedures Order, Plan and other documents and materials included in the Solicitation Package may be obtained by contacting Prime Clerk LLC ("Prime Clerk"), the claims and administrative agent retained by the Debtors in these chapter 11 cases, by: (a) calling Prime Clerk at 844-339-4117 (toll free); (b) visiting the Debtors' case website at: http://cases.primeclerk.com/ThingsRemembered; and/or (c) writing to RMBR Liquidation, Inc. Ballot Processing c/o Prime Clerk, LLC 830 3rd Avenue, 3rd Floor, New York, NY 10022. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because, under the terms of the Plan your Claim(s) against and/or Interest(s) in the Debtors are Impaired and, pursuant to section 1126(g) of the Bankruptcy Code, you are conclusively presumed to have rejected the Plan and are, therefore, not entitled to vote on the Plan. Accordingly, this notice and the *Notice of (A) the Solicitation and Voting Procedures and (B) the Objection Deadline and Confirmation Hearing with Respect to the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* (the "Confirmation Hearing Notice") are being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT AS SET FORTH IN THE CONFIRMATION HEARING NOTICE ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. PURSUANT TO THE PLAN YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII AND DESCRIBED IN THE CONFIRMATION HEARING NOTICE IF YOU FAIL TO OBJECT TO THE THIRD PARTY RELEASE PRIOR TO THE OBJECTION DEADLINE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE INFORMATION CONTAINED IN THE CONFIRMATION HEARING NOTICE CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED UNDER THE PLAN.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claim(s) or Interest(s), you should contact Prime Clerk in accordance with the instructions provided above.

Dated: May \_\_\_, 2019        **LANDIS RATH & COBB LLP**
Wilmington, Delaware

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Facsimile:    (302) 467-4450
Email:        landis@lrclaw.com
              mcguire@lrclaw.com
              brown@lrclaw.com
              pierce@lrclaw.com

-and-

**KIRKLAND & ELLIS LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        christopher.greco@kirkland.com
              derek.hunter@kirkland.com

-and-

**KIRKLAND & ELLIS LLP**
Spencer A. Winters (admitted *pro hac vice*)
Catherine Jun
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        spencer.winters@kirkland.com
              catherine.jun@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

# EXHIBIT 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RMBR LIQUIDATION, INC., *et al.*,[1] | ) Case No. 19-10234 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Ref. No.** ___ |
| | ) |

## BALLOT FOR ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN OF RMBR LIQUIDATION, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

### CLASS 4 — REVOLVER CLAIMS

### PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT

### THIS BALLOT MUST BE ACTUALLY RECEIVED BY PRIME CLERK LLC BY <u>MAY 29, 2019 AT 11:59 P.M.</u> PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>")

The Debtors have sent this Ballot to you because its records indicate that you are a holder of a Class 4 Revolver Claim, and accordingly, you have a right to vote to accept or reject the *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 [D.I. __] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"). Your rights are described in the *Disclosure Statement for the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* dated April 24, 2019 [D.I. __] (including all exhibits thereto and as amended, supplemented or otherwise modified from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court entered an order [D.I. __] (the "<u>Interim Approval and Procedures Order</u>")[2] approving, among other things, the Disclosure Statement on an interim basis and establishing procedures for the solicitation of the Plan.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354). The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, the Disclosure Statement or the Interim Approval and Procedures Order, as applicable.

The Disclosure Statement, the Interim Approval and Procedures Order, the Plan, and certain other materials contained in the Solicitation Package are included in the packet you are receiving with this Ballot. Additionally, the Solicitation Package can be obtained by contacting Prime Clerk LLC ("Prime Clerk"), the claims and administrative agent retained by the Debtors in these Chapter 11 Cases, by: (a) calling Prime Clerk at 844-339-4117 (toll free); (b) visiting the Debtors' case website at: http://cases.primeclerk.com/ThingsRemembered; and/or (c) writing to RMBR Liquidation, Inc. Ballot Processing c/o Prime Clerk, LLC 830 3rd Avenue, 3rd Floor, New York, NY 10022. You may also obtain copies of any pleadings filed in this Chapter 11 Case for a fee via PACER at: http://www.deb.uscourts.gov. The Bankruptcy Court's interim approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. This Ballot may not be used for any purpose other than to vote to accept or reject the Plan. If you believe you have received this Ballot in error, please contact Prime Clerk at the address or telephone number set forth above.

*You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 4 – Revolver Claims under the Plan.*

**If Prime Clerk does not receive your Ballot on or before the Voting Deadline, May 29, 2019 at 11:59 p.m. prevailing Eastern Time and if the Voting Deadline is not extended, your vote as either an acceptance or rejection of the Plan will not count. If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you vote.**

**Item 1. Principal Amount of Class 4 Revolver Claims.**

The undersigned hereby certifies that as of the Record Date, May 7, 2019 prevailing Eastern Time, the undersigned was the holder of Class 4 Revolver Claims against the Debtors in the following amount (insert amount in box below):

$ _____

**Item 2. Class 4 Revolver Claims Vote on the Plan.**

The holder of the Class 4 Revolver Claims set forth in Item 1 votes to (please check one):

☐ ACCEPT THE PLAN                    ☐ REJECT THE PLAN

**ANY BALLOT THAT IS EXECUTED BY THE HOLDER OF A CLAIM OR INTEREST BUT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN OR DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

**Item 3.  Certifications**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Debtors:

      a.    that either: (i) the undersigned is the holder of the Class 4 Revolver Claims being voted; or (ii) the undersigned is an authorized signatory for an entity that is a holder of the Class 4 Revolver Claims being voted;

      a.    that the holder of the Claims has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

      b.    that the holder of the Claims has cast the same vote with respect to all Class 4 Revolver Claims; and

      c.    that no other Ballots with respect to the amount of the Class 4 Revolver Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such Ballots dated earlier are hereby revoked.

Name of holder: _____

        (Print or Type)

Social Security or Federal Tax Identification Number:_____

Signature: _____

Name of Signatory: _____

        (If other than holder)

Title: _____

Address:_____

Date Completed: _____

**THE BALLOT MUST BE COMPLETED AND SUBMITTED, ON OR BEFORE THE VOTING DEADLINE, BY <u>ONLY ONE</u> OF THE FOLLOWING APPROVED SUBMISSION METHODS:**

| First Class Mail, Overnight Courier or Hand-Delivery To: | Electronic, online submission at: |
|---|---|
| RMBR Liquidation, Inc. Ballot Processing c/o Prime Clerk, LLC<br>830 3rd Avenue, 3rd Floor,<br>New York, NY 10022 | To submit your Ballot via Prime Clerk's online portal, please visit: *https://cases.primeclerk.com/ThingsRemembered*, click on "Submit E-Ballot" and follow the instructions to submit your Ballot.<br><br>IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:<br><br>Unique E-Ballot ID#:<br><br>_____ |
|  | Prime Clerk's online portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will **not** be counted.<br><br>Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.<br><br>Creditors who cast a Ballot using Prime Clerk's online portal should **NOT** also submit a paper Ballot.<br><br>If you have any questions, please contact Prime Clerk at: Telephone: (844) 339-4117; or, from outside the U.S. or Canada: (929) 333-8981, or via Email: thingsrememberedballots@PrimeClerk.com |

**EXCEPT AS EXPRESSLY PERMITTED ABOVE WITH RESPECT TO E-BALLOTS, BALLOTS OTHERWISE SUBMITTED BY FACSIMILE, TELECOPY, ELECTRONIC MAIL, OR OTHER FORM OF ELECTRONIC SUBMISSION WILL <u>NOT</u> BE ACCEPTED.**

**YOUR BALLOT MUST BE RECEIVED BY THE VOTING DEADLINE, WHICH IS <u>May 29, 2019 AT 11:59 P.M.</u> PREVAILING EASTERN TIME.**

## INSTRUCTIONS FOR COMPLETING BALLOTS

1.  The Debtors are soliciting the votes of holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined in the Ballot or these instructions shall have the meanings set forth in the Plan or the Disclosure Statement, copies of which also accompany the Ballot.

2.  The Bankruptcy Court may confirm the Plan and thereby bind you by the terms of the Plan if, among other things, the Plan is confirmed.  Please review the Disclosure Statement for more information.

3.  To ensure that your vote is counted, you must:  (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot and (c) submit the Ballot (i) to the address set forth on the enclosed pre-addressed envelope or (ii) electronically at the Debtors' case website, http://cases.primeclerk.com/ThingsRemembered.  The Voting Deadline for the receipt of Ballots by Prime Clerk is May 29, 2019 at 11:59 p.m. prevailing Eastern Time.  Your completed Ballot must be received by Prime Clerk on or before the Voting Deadline.

4.  You must vote all of your Claims within a particular Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, if a holder has multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

5.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise.  The method of delivery of Ballots to Prime Clerk is at the election and risk of each holder of a Claim.  Except as otherwise provided herein, such delivery will be deemed made only when Prime Clerk **actually receives** the originally executed Ballot.  If a holder of a Claim chooses effecting delivery by mail, it is recommended, though not required, that holders use an overnight or hand delivery service to assure timely delivery.  No Ballot should be sent to the Debtors, the Debtors' agents (other than Prime Clerk), or the Debtors' financial or legal advisors and if so sent will not be counted.

6.  Except as expressly permitted in the context of electronic submissions of Ballots at the Debtors' case website, http://cases.primeclerk.com/ThingsRemembered, delivery of a Ballot to Prime Clerk by facsimile, telecopy, e-mail or other form of electronic submissions will **not** be accepted.

7.  If multiple Ballots are received from the same holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last dated valid Ballot timely received will supersede and revoke any earlier dated Ballots.

8.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor Prime Clerk will accept delivery of any such certificates or instruments surrendered together with a Ballot.

9.    This Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission of a Claim.

10.   Please be sure to executed and date your Ballot. If you are executing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when executing and, if requested by Prime Clerk, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

11.   The following Ballots shall **not** be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim; (b) any Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unexecuted Ballot; (d) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan; and (e) any Ballot submitted by any entity not entitled to vote pursuant to the Solicitation Procedures.

12.   If you believe you have wrongly received a Ballot, you should contact Prime Clerk immediately at 844-339-4117 (toll free).

### PLEASE SUBMIT YOUR BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT PRIME CLERK AT 844-339-4117 (TOLL FREE).**

**EXHIBIT C**

**Liquidation Analysis**

RMBR Liquidation
Plan vs Chapter 7 Liquidation Analysis
April 24, 2019

| | ($ in 000s) Notes: | Proposed Plan of Liquidation | | | Chapter 7 Liquidation | | |
|---|---|---|---|---|---|---|---|
| | | Asset/Claim | Recovery % | Recovery $ | Asset/Claim | Recovery % | Recovery $ |
| *I. Assets* | | | | | | | |
| Unrestricted Cash as of April 20, 2019 | A | 9,870 | 100% | 9,870 | 9,870 | 100% | 9,870 |
| Sale Holdback | B | 706 | 100% | 706 | 706 | 100% | 706 |
| Lease of Home Office Building | C | 40 | 100% | 40 | 40 | 100% | 40 |
| Sale of Home Office Building | D | 2,790 | 100% | 2,790 | 2,790 | 100% | 2,790 |
| Sale of Fulfillment Center Land | D | 200 | 100% | 200 | 200 | 100% | 200 |
| Utility Deposit Return | | 142 | 100% | 142 | 142 | 100% | 142 |
| Vantiv Credit Card Return | | 300 | 100% | 300 | 300 | 100% | 300 |
| Return of Malfitano Retainer | | 35 | 100% | 35 | 35 | 100% | 35 |
| Proceeds from Insurance Refund | | 1,051 | 100% | 1,051 | 1,051 | 100% | 1,051 |
| Return of Collateral from Surety Bond | | 300 | 100% | 300 | 300 | 100% | 300 |
| Return of Funds from Canada | | 877 | 100% | 877 | 877 | 100% | 877 |
| **Projected Cash After Monetization of Assets** | | | | **16,310** | | | **16,310** |
| *II. Administrative Fees* | | | | | | | |
| Chapter 7 Professional | E | - | 0% | - | (993) | 100% | (993) |
| Chapter 7 Trustee Commissions | F | - | 0% | - | (750) | 100% | (750) |
| Chapter 11 Professionals | G | (3,855) | 100% | (3,855) | (2,862) | 100% | (2,862) |
| Windown Costs | H | (1,004) | 100% | (1,004) | (1,004) | 100% | (1,004) |
| Interest Expense | | (384) | 100% | (384) | (384) | 100% | (384) |
| Estimated Other Liabilites | | (620) | 100% | (620) | (620) | 100% | (620) |
| Estimated Operating Liabilities | | (1,238) | 100% | (1,238) | (1,238) | 100% | (1,238) |
| Estimated UST Fees | I | (511) | 100% | (511) | (511) | 100% | (511) |
| Investment Banker Success Fee | J | (900) | 100% | (900) | (900) | 100% | (900) |
| **Net Estimated Proceeds Available after Distribution** | | | | **7,798** | | | **7,048** |
| *III. Administrative Claims* | | | | | | | |
| Administrative Claims | | (500) | 100% | (500) | (500) | 100% | (500) |
| **Net Estimated Proceeds Available after Distribution** | | | | **7,298** | | | **6,548** |
| *IV. Priority & Secured Claims* | | | | | | | |
| Priority Tax Claims | | - | - | - | | | - |
| ABL Paydown Made on 4/1 | K | (7,000) | 100.0% | (7,000) | (7,000) | 100.0% | (7,000) |
| Remaining ABL Paydown | | (11,724) | 62.3% | (7,298) | (11,724) | 55.9% | (6,548) |
| Total ABL Claims | | (18,724) | 76.4% | (14,298) | (18,724) | 72.4% | (13,548) |
| Term Debt | | (124,921) | 0% | - | (124,921) | 0% | - |
| **Net Estimated Proceeds Available after Distribution** | | | | **-** | | | **-** |
| *V. Unsecured Claims & Equity Interest* | | | | | | | |
| General Unsecured Claims | | - | 0% | - | - | 0% | - |
| **Net Estimated Proceeds Available after Distribution** | | | | **-** | | | **-** |

Notes:
A) Unrestricted cash includes company's ending cash balance as of 4/20
B) Sale holdback is payment received by Enesco after inventory count was completed
C) Enesco to pay for home office lease until building is sold
D) Estimated sale price for home office building and sale of land behind fulfillment center
E) Assumed post confirmation professional fees for US Trustee
F) Estimated trustee commissions in event of Chapter 7 based on remaining assets to monetize
G) Professional fees through end of case including incurred but not yet paid fees
H) Primarily employee health insurance claims (IBNR) related expenses to be paid by estate
I) Trustee quarterly fees to be paid out through end of case
J) Investment banker success fee to be paid out to Miller Buckfire due to successful asset sale
K) ABL claim includes $7M paydown on 4/1