**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |
|---|---|
| In re: | Chapter 11 |
| RMBR LIQUIDATION, INC., *et al.*,[1] | Case No. 19-10234 (KG) |
| Debtors. | (Jointly Administered) |
|   | **Hearing Date: May 16, 2019 at 3:00 p.m. (ET)**<br>**Objection Deadline: May 9, 2019 at 4:00 p.m. (ET)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) APPROVING THE
AUCTION AGREEMENT WITH RESPECT TO THE SALE OF CERTAIN OF THE
DEBTORS' REAL PROPERTY; (B) AUTHORIZING THE SALE OF SUCH REAL
PROPERTY THROUGH PUBLIC AUCTION; AND (C) WAIVING ONE OR MORE OF
THE INFORMATION REQUIREMENTS OF LOCAL RULE 2016-2**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state as follows in support of this motion:[2]

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference* from the United States District Court for the District of Delaware,
dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR
Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park
Drive, Highland Heights, Ohio 44143.

[2]    A detailed description of the Debtors and their business, and the facts and circumstances supporting the
Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Robert J. Duffy, Chief
Restructuring Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the
"First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under
chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on February 6, 2019 (the "Petition
Date").  Capitalized terms used but not otherwise defined in this motion (the "Motion") shall have the meanings
ascribed to them in the First Day Declaration or the Auction Agreement (defined below) as applicable.

§ 157(b)(2).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105, 327, 328, 330, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 2014, 6004, and 6005, and rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

4.      Prior to selling substantially all of their assets as discussed below, the Debtors, along with their non-Debtor Canadian affiliate, were the leading retailer of personalized gifts and merchandise in North America.  Their retail approach focused on customized gifts for milestone occasions such as weddings, birthdays, holidays, and graduations.  As a multi-channel retailer, the Debtors offered their merchandise through their catalog, their e-commerce website and approximately 400 stores in shopping malls throughout the United States and Canada.

5.      As of the Petition Date, each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

6.      On February 15, 2019, the office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").

**The Sale**

7.      On the Petition Date, the Debtors filed a motion [D.I. 23] (the "Bid Procedures Motion") seeking approval of, among other things, (i) bid procedures (the "Bid Procedures") in connection with the sale of substantially all of the Debtors' assets (the "Sale"), (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors (the "Contract Procedures"), (iii) the date, time and place for a sale hearing (the "Sale Hearing") and for objections to the sale, and (iv) related relief.

8.      On February 21, 2019, the Court entered an order approving the Bid Procedures Motion [Docket No. 150] scheduling the Sale Hearing for March 6, 2019 and establishing, among other things, the Bid Procedures and the Contract Procedures.

9.      On March 6, 2019, the Court entered the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [D.I. 292] (the "Sale Order") approving, among other things, the Sale between the Debtors and Enesco Properties, LLC (the "Purchaser") pursuant to an asset purchase agreement (the "APA"). The Sale closed on March 8, 2019 (the "Closing Date") and in accordance with the Sale Order, the Debtors filed the *Notice of Filing Final Asset Purchase Agreement* [D.I. 307] on March 11, 2019.

**The Store Closings**

10.     On the Petition Date, the Debtors also filed the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consultant Agreement, (II)*

*Approving Procedures for Store Closing Sales, (III) Approving the Implementation of Customary Store Bonus Program and Payments to Non-Insiders Thereunder, and (III) Granting Related Relief* [D.I. 15] (the "Store Closing Motion"), seeking authority to, among other things, liquidate the inventory contained in and wind down the Debtors' retail stores for those locations not sold pursuant to the Sale.

11.     On February 7, 2019 and February 28, 2019, the Court entered orders approving the Store Closing Motion on an interim [D.I. 64] and final [D.I. 217] basis respectively. As of the date hereof, the Debtors have completed their liquidation efforts under the Store Closing Motion for all of the locations that were not acquired under the APA (the "Store Closures").

***Remaining Real Estate Assets***

12.     Following the Sale and the Store Closures, the Debtors continue to own two (2) real estate assets comprised of (i) the property located at the Debtors' former corporate headquarters (the "Corporate Headquarters") and (ii) an approximately 70.9 acre vacant industrial landsite located at S. Bailey Road, Jackson Township, Mahoning County, OH 44451 (also known as PP# 50-005-0-001.01-0) (the "Vacant Property"). The Debtors are in the process of marketing the Corporate Headquarters and intend to file a motion for approval to sell such real estate in the near term. With respect to the Vacant Property, the Debtors entered into that certain *Exclusive Real Estate Auction & Listing Agreement* (the "Auction Agreement") with Chartwell Real Estate Auctions, Hanna Commercial, LLC and auctioneer Michael Berland (collectively, the "Auctioneers") with respect to the sale of the Vacant Property by public auction (the "Auction"), subject to approval of this Motion by the Court.

## THE AUCTION AGREEMENT

13.    To market the Vacant Property most effectively and, thereby, to liquidate the real estate asset for the highest and best price, the Debtors request authority to employ the Auctioneers as their sales agent pursuant to the terms and conditions of the Auction Agreement. After considering a number of alternatives, the Debtors chose to engage the Auctioneers because of their expertise and experience in liquidating similar assets and the beneficial terms proposed for this engagement. The Debtors and the Auctioneers engaged in lengthy discussions and negotiated the terms of the Auction Agreement, a copy of which is attached as **Exhibit 1** to the Proposed Order. The Debtors believe that the sale of the Vacant Property through the Auction in accordance with the terms of the Auction Agreement is in the best interests of the Debtors and their estates.

14.    As part of its duties as the Debtors' agent, the Auctioneers shall among other things, (i) compile information in regard to the Vacant Property, (ii) make an earnest and continued effort to affect a sale of the Vacant Property and (iii) to show the Vacant Property to prospective purchasers.

15.    The pertinent terms of the Auction Agreement are as follows:

a.    Purpose of the Auction Agreement. The Debtors have agreed to retain the Auctioneers to act as their exclusive agent to sell the Vacant Property through a publicly-marketed sale and Auction during the Term, as set forth below.

b.    Sale Term. The Term shall begin on the date the Bankruptcy Court enters an order approving the sale of the Vacant Property by the Auctioneers pursuant to the terms of the Auction Agreement or such other date mutually agreed upon by the Parties (the "Commencement Date") and ending 120 days after the Date of the Auction, but not later than September 5, 2019 or such later date agreed upon by the Debtors and the Auctioneers.

c.    Buyer's Premium. The Auctioneers shall charge a ten percent (10%) buyer's premium that will be added to the auction high bid price or offer price (the "Buyer's Premium").

      d.     Commission.   Except with respect to the Buyer's Premium, the Auctioneers shall not be entitled to any other commission or fee on the sale of the Vacant Property.

      e.     Sale Expenses.  The Debtors shall pay the Auctioneers for their Marketing Expenses, not to exceed $9,200, for advertising, graphic design, publicity, personnel, public relations, license(s), subscriptions, secretarial, signage, promotional printing, mailing, reproduction, travel, transportation, mileage (at current IRS rates), auction day staff, telephone, photographs and other like marketing and promotional expenses incurred in connection with the Auction of the Vacant Property.

16.    Given the nature of the services to be performed by the Auctioneers and the manner of compensation of such services, the Debtors respectfully request that they be permitted to pay the Auctioneers, through the payment of the Buyer's Premium and Marketing Expenses, in accordance with the Auction Agreement at the time such amounts become payable under the Auction Agreement without the need for the Auctioneers to file fee applications for compensation and without further order of the Court.

17.    As set forth in this Motion and the Auction Agreement, the Auctioneers have been engaged to provide limited services to the Debtors for a limited period of time.  In exchange for their services, the Auctioneers will receive the compensation set forth in the Auction Agreement, which consists of the payment of the Buyer's Premium and reimbursement of the Marketing Expenses not to exceed $9,200.  The detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-2 would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications.  Section 105 of the Bankruptcy Code allows this Court to issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).  In addition, section 328 of the Bankruptcy Code allows this Court to approve the employment of professionals retained pursuant to section 327 of the Bankruptcy Code on any reasonable terms and conditions.

*See* 11 U.S.C. § 328(a). Given the limited scope and duration of the Auctioneers' employment and the nature of the Auction Agreement's compensation structure, the Debtors believe that a waiver of the detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-2 is warranted and appropriate.

18.    Finally, the Debtors request that the Auctioneers be relieved of the requirements of any order entered by this Court approving interim compensation procedures for retained professionals. In light of the Auctioneers' payment structure, the procedures detailed in any such order will burden – without providing any benefit to – the Debtors' estates. If the Debtors and the Auctioneers are required to prepare, file and serve monthly, quarterly and final fee statements, substantial administrative costs and professional time may be incurred, without any benefit provided to the estates. Therefore, the Debtors request that the Auctioneers be relieved of the requirement to file monthly, quarterly and final fee applications.    Instead, the Debtors propose that the Auctioneers be required to file a final report with the Court that identifies only the details of the sale of the Vacant Property pursuant to the Auction Agreement including the name of the buyer, the price paid for the Vacant Property and the Buyer's Premium earned by the Auctioneers with respect to such sale. The Auctioneers shall not be required to keep time records of hours spent performing their services.

19.    The Debtors require an experienced and efficient liquidator and auctioneer to render essential professional services described herein in order to liquidate the Vacant Property in an efficient and value-maximizing manner.

**RELIEF REQUESTED**

20.    Through this Motion, the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (A) approving the Auction

Agreement; (B) authorizing the sale and liquidation of the Vacant Property free and clear of all liens, claims and encumbrances through the Auction and (C) waiving certain of the requirements of Local Rule 2016-2.   In support of the relief requested herein, the Debtors submit the declaration of Michael E. Berland on behalf of the Auctioneers (the "Berland Declaration"), a copy of which is attached hereto as **Exhibit B**.

### THE COURT SHOULD AUTHORIZE THE DEBTORS' ENTRY INTO THE AUCTION AGREEMENT AND THE AUCTIONEERS' RETENTION

21.    The Auctioneers have substantial experience in liquidating real property both in and out of bankruptcy, and have conducted numerous court supervised liquidation processes including in chapter 11 bankruptcy proceedings. *See In re Schwab Industries, Inc., et al.*, Case No. 10-60702 (Bankr. N.D. Ohio 2010); *see In re Coronet Foods, Inc., et al.*, Case No. 05-00151 (Bankr. N.D.W. Va. 2004).  Accordingly, the Auctioneers are particularly well qualified to serve as the Debtors' agent for the sale of the Vacant Property.

22.    The Debtors seek authority to employ and retain the Auctioneers as their agent under section 327 of the Bankruptcy Code, which provides that a trustee (or debtor or debtor-in-possession, by virtue of sections 1101(1) and 1107(a)), subject to court approval—

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

23.    The Debtors seek approval of the terms of the Auction Agreement, including the proposed compensation to be paid to the Auctioneers, pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides that a debtor, subject to court approval—

may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a).

24.     Section 328(a), together with section 330, establishes a "two-tiered system for judicial review and approval of the terms of the professional's retention." *In re Smart World Technologies, LLC*, 552 F.3d 228, 232 (2d Cir. 2009).   Whereas section 330 authorizes a bankruptcy court to award reasonable compensation "based on an after-the-fact consideration," section 328(a) "permits a bankruptcy court to forego a full post-hoc reasonableness inquiry" if it pre-approves the terms of employment.   *Id.*   "These two inquiries are mutually exclusive, as '[t]here is no question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328.'"   *Id.* at 233 (quoting *In re B.U.M. Intl., Inc.*, 229 F.3d 824, 829 (9th Cir. 2000)).

25.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 specifically amended section 328(a) to extend its reach to include approval of compensation "on a fixed or percentage fee basis."   This change makes clear that a debtor may seek to retain a professional on a fixed or percentage fee basis, such as is proposed herein, with bankruptcy court approval.

26.     Finally, Bankruptcy Rule 6005 expressly requires that "[t]he order of the court approving the employment of an appraiser or auctioneer shall fix the amount or rate of compensation." Fed. R. Bankr. P. 6005.

27.    The Auction Agreement appropriately reflects (i) the nature and scope of services to be provided by the Auctioneers and (ii) the proposed terms and conditions of the Auctioneers' employment, including the proposed payment structure.

28.    Pursuant to Bankruptcy Rule 6005, no employee of the Auctioneers that will be assisting the Debtors in the sale of the Vacant Property is an officer or employee of the Judicial Branch of the United States or the United States Department of Justice.

29.    To the best of the Debtors' knowledge and except as disclosed in the Berland Declaration, the Auctioneers have not been engaged by, and do not have any connection with the Debtors, their creditors, insiders, shareholders, attorneys or accountants, or any other parties-in-interest in any matters relating to the Vacant Property.

30.    To the best of the Debtors' knowledge and except as disclosed in the Berland Declaration, the Auctioneers do not hold or represent any interest adverse to the Debtors or their estates, the Auctioneers are "disinterested person[s]" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and the Auctioneers' employment and retention by the Debtors is necessary and in the best interests of the Debtors and their estates.

31.    Accordingly, the Debtors believe that the Auctioneers' retention on the terms and conditions proposed herein is appropriate and should be approved.

## THE SALE OF THE VACANT PROPERTY PURSUANT TO THE AUCTION AGREEMENT SHOULD BE AUTHORIZED

32.    Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  In general, a debtor may engage in transactions outside the ordinary course of its business where the transaction represents an exercise of the debtor's sound business judgment.

*See, e.g., In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business purpose" test). In determining whether to approve a transaction, the Court should consider the following: (a) whether a sound business justification exists for the transaction; (b) whether accurate and reasonable notice of the transaction was given to interested parties; (c) whether the transaction will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

33.    <u>Sound Business Purpose</u>.  There is a sound business justification for the sale of the Vacant Property on the terms set forth in the Auction Agreement.  As described above, the Debtors have sold substantially all of their assets and are winding down their affairs.  In this context, the Debtors no longer have any need for the Vacant Property they will seek to sell through the Auction.  The Debtors have concluded, in a sound exercise of their business judgment, that the sale of the Vacant Property in the manner contemplated herein will maximize the value of the asset for the benefit of the Debtors' estates and their stakeholders.

34.    <u>Accurate and Reasonable Notice</u>.    Pursuant to the Auction Agreement, the Auctioneers will market the Vacant Property to a wide variety of potentially interested parties, and their payment structure incentivizes them to do so in order to obtain the highest possible price for the asset.  The Auctioneers regularly deal in the disposition of real property and have developed a substantial list of potential purchasers for the Vacant Property to which they will directly market the upcoming sale and Auction.  In addition, as needed, the Auctioneers will

advertise the sale of the Vacant Property utilizing appropriate marketing techniques to ensure that the widest possible audience will receive notice of the sale and Auction.

35.    <u>Fair and Reasonable Terms</u>.  Pursuant to the terms of the Auction Agreement, the Auctioneers are to receive reimbursement of their Marketing Expenses in an amount not to exceed $9,200 and the ten percent (10%) Buyer's Premium, which equates to 9.09% of the purchase price algebraically.  The Debtors have been advised by their asset disposition advisor Malfitano Advisors, LLC that the Marketing Expenses and the Buyer's Premium are market rates for the sale and auction of vacant land for a transaction of this size.  As such, the Debtors determined, in consultation with their advisors, that the terms of the Auction Agreement with the Auctioneers are fair and reasonable.

36.    <u>Good Faith.</u>  Courts generally conclude that parties have acted in good faith with respect to a proposed transaction if the consideration is adequate and reasonable and the terms of the transaction are fully disclosed.    *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986).  Pursuant to the Auction Agreement, the Auctioneers will conduct the sale process to ensure that the sale and Auction transaction is at arm's-length, without collusion or fraud, and in good faith and will ensure that the Vacant Property will be sold to the highest or otherwise best bidder.  At the conclusion of the Auction, the Auctioneers shall prepare, and the Debtors shall file, a report with the Court that identifies the buyer, the price paid for the Vacant Property and the amount of the Buyer's Premium.

## REQUEST TO SELL THE ASSET FREE AND <u>CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS</u>

37.    The Debtors further submit that it is appropriate that the Vacant Property be sold free and clear of any liens, claims, encumbrances and other interests, pursuant to section 363(f) of the Bankruptcy Code.  Section 363(f) of the Bankruptcy Code provides as follows:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 .S.C. § 363(f).

38.    The court may also authorize the sale of a debtor's assets free and clear of any liens, claims or encumbrances under section 105 of the Bankruptcy Code.    *See In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003); *see also Volvo White Truck Corporation v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].")

39.    The Debtors submit that they should be authorized to sell the Vacant Property free and clear of any and all liens, claims and encumbrances, with such liens to be transferred and attached to the proceeds of the sale with the same validity and priority, and subject to the same defenses, that such liens had against the Vacant Property.

40.    To the extent there is a lien, claim, encumbrance or interest, the Debtors believe that they would satisfy at least one of the five conditions of section 363(f), and the Debtors submit that any such lien, claim, encumbrance or interest will be adequately protected by attachment to the proceeds of the sale, subject to any claims and defenses that the Debtors may

possess with respect thereto.  The Debtors believe that the parties holding liens on the Vacant Property could be compelled to accept a monetary satisfaction of such interests, satisfying section 363(f)(5) of the Bankruptcy Code.  Moreover, the agent under the Debtors' prepetition asset-based facility and prepetition term loan facility (the "Prepetition Agent") has consented to the sale of the Vacant Property pursuant to the Auction Agreement as set forth herein.

## **NOTICE AND NO PRIOR REQUEST**

41.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Creditors' Committee; (c) the Prepetition Agent; (d) counsel to the Prepetition Agent; and (e) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice need be given.

42.     No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein, and granting such other and further relief as is just and proper.

Dated:  April 25, 2019
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:      (302) 467-4400
Facsimile:       (302) 467-4450
Email:            landis@lrclaw.com
                      mcguire@lrclaw.com
                      brown@lrclaw.com
                      pierce@lrclaw.com

-and-

**KIRKLAND & ELLIS LLP**
Christopher T. Greco, P.C. (admitted _pro hac vice_)
Derek I. Hunter (admitted _pro hac vice_)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900
Email:            christopher.greco@kirkland.com
                      derek.hunter@kirkland.com

-and-

KIRKLAND & ELLIS LLP
Spencer A. Winters (admitted pro hac vice)
Catherine Jun
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200
Email:            spencer.winters@kirkland.com
                      catherine.jun@kirkland.com

_Co-Counsel for the Debtors and Debtors in Possession_