IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RMBR LIQUIDATION, INC., *et al.*,[1] | ) | Case No. 19-10234 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Ref. Nos. 420 & 421** |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING
THE DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING THE
JOINT CHAPTER 11 PLAN OF RMBR LIQUIDATION, INC. AND ITS DEBTOR
AFFILIATES**

The above-captioned debtors and debtors-in-possession (the "Debtors") having:

a.   filed, on April 24, 2019, the *Joint Chapter 11 Plan of RMBR Liquidation, Inc. and its Debtor Affiliates* [D.I. 383] (as further modified, supplemented and amended including all attachments and exhibits thereto, the "Plan");[2]

b.   filed, on April 24, 2019, the *Disclosure Statement for the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and its Debtor Affiliates* [D.I. 384] (as further modified, supplemented and amended, the "Disclosure Statement");

c.   filed, on May 6, 2019, the revised Disclosure Statement and Plan [D.I. Nos. 420, 421];

d.   filed, on May 7, 2019, the *Notice of (A) Interim Approval of the Disclosure Statement and (B) Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of the Plan and the Objection Deadline Related Thereto* [D.I. 432] (the "Confirmation Notice");

e.   distributed solicitations materials, including the ballot for voting on the Plan (the "Ballot") on or about May 10, 2019 in the form approved in that certain *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  RMBR Liquidation, Inc. (2696); RMBR Liquidation Holdco Corp. (5858); and RMBR Liquidation Holdings Corporation (2354).  The location of the Debtors' service address is: 5500 Avion Park Drive, Highland Heights, Ohio 44143.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The rules of interpretation set forth in Article I.B of the Plan shall apply to this order (the "Confirmation Order").

*Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 428] (the "Interim Approval/Procedures Order"), to holders of Claims and Interests and contract and lease counterparties, and parties in interest, in compliance with the procedures contained in the Interim Approval/Procedures Order, title 11 of the United States Code (as amended, the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as set forth in the *Affidavit of Service of James Daloia* (and any supplements thereto), dated May 16, 2019 [D.I. 452] (the "Solicitation Affidavit");

f.  filed, on June 10, 2019, the *Declaration of Craig Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Chapter 11 Plan of RMBR Liquidation, Inc. and Its Debtor Affiliates* [D.I. 491] (the "Voting Certification"); and

g.  filed, on June 10, 2019, the *Debtors' Memorandum of Law in Support of (A) Final Approval of the Disclosure Statement; and (B) Confirmation of the Plan* [D.I. 493];

The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") having:

a.  entered the Interim Approval/Procedures Order on May 7, 2019;

b.  by the Interim Approval/Procedures Order set the deadline to object to the Plan and final approval of the Disclosure Statement as June 5, 2019 at 4:00 p.m. prevailing Eastern Time and the Plan voting deadline as June 5, 2019 at 11:59 p.m. prevailing Eastern Time;

c.  reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Certification, and all other pleadings, exhibits, statements, affidavits, declarations and comments regarding Confirmation of the Plan, including all objections, statements and reservations of rights made with respect thereto;

d.  heard the statements, arguments and objections, if any, made by counsel and parties in interest in respect of final approval of the Disclosure Statement and Confirmation of the Plan;

e.  considered all oral representations, testimony, documents, filings and other evidence regarding final approval of the Disclosure Statement and Confirmation of the Plan;

f.  overruled any and all objections to final approval of the Disclosure Statement, the Plan and Confirmation thereof and all statements and reservations of rights not

consensually resolved or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Confirmation Hearing; and

g.    taken judicial notice of the papers and pleadings filed in this chapter 11 cases (the "Chapter 11 Cases").

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to final approval of the Disclosure Statement and Confirmation have been adequate and appropriate as to all entities affected or to be affected by the Disclosure Statement, the Plan and the transactions contemplated thereby, that the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure Statement and Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein, and that after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    _Findings and Conclusions_. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    _Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))_. The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334, and the _Amended Standing Order of Reference from the United States District Court for the District of Delaware_, dated as of February 29, 2012. Approval of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a

final order with respect thereto. Venue was proper as of the Petition Date and is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Eligibility for Relief. Each Debtor qualifies as a "debtor" under Bankruptcy Code section 109. As such, the Debtors are proper proponents of the Plan.

D.    Commencement of these Chapter 11 Cases. On February 6, 2019 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases. On February 15, 2019, the U.S. Trustee appointed an official committee of unsecured creditors.

E.    Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

F.    Claims Bar Date. On May 7, 2019, the Bankruptcy Court entered the *Order Granting Motion of the Debtors for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim (B) Approving the Form and Manner for Filing Proofs of Claim; and (C) Approving Notice Thereof* [D.I. 426] (the "Bar Date Order"). Pursuant to the Bar Date Order, the Court established May 31, 2019 at 4:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the deadline for each person or entity, other than governmental units, asserting (i) any right to payment arising (or deemed to arise) before the Petition Date that is secured by property of the

Debtors' Estates, (ii) any right to payment constituting a secured claim or a priority claim under Bankruptcy Code section 507(a) against the Debtors arising (or deemed to arise) before the Petition Date, (iii) any right to payment constituting a cost or expense of administration of the Debtors' chapter 11 cases arising under Bankruptcy Code sections 503(b) and 507(a)(2) against the Debtors that may have arisen, accrued or otherwise become due and payable at any time on and subsequent to the Petition Date through April 30, 2019, and (iv) any right to payment under Bankruptcy Code section 503(b)(9). In addition, the Bar Date Order set August 5, 2019 at 4:00 p.m. (prevailing Eastern Time) as the deadline for all governmental units holding such claims to file proofs of claim.

G.    Burden of Proof. The Debtors have the burden of proving the elements of Bankruptcy Code sections 1129(a) and (b) by a preponderance of the evidence. The Debtors have met their burden with respect to each applicable element of Bankruptcy Code section 1129. Each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**Adequacy of the Disclosure Statement**

H.    The Disclosure Statement. The information contained in the Disclosure Statement contained extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. Additionally, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125 and complies with any additional requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law. Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently

describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions. The Debtors' use of the Disclosure Statement to solicit votes to accept or reject the Plan was authorized by the Interim Approval/Procedures Order and was appropriate. Solicitation of votes on the Plan was in compliance with the Interim Approval/Procedures Order.

**The Solicitation Process**

I.    <u>Solicitation</u>.    Each of the Plan, the Disclosure Statement, the Ballots and the Confirmation Notice were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Interim Approval/Procedures Order.    The form of the Ballot adequately addresses the particular needs of these Chapter 11 Cases and is appropriate for the holders of Claims in Class 4 (Revolver Claims) – the only Class of Claims entitled to vote to accept or reject the Plan.    The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan, and was in accordance with the Interim Approval/Procedures Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation.    The Debtors were not required to solicit votes from the holders of Claims or Interests in Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims), Class 3 (Other Priority Claims), Class 5 (Term Loan Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Interests) or Class 8 (Interests in Holdco) as these Classes and Interests are (i) unimpaired under the Plan, and thus, the holders of such Claims or Interests are deemed to have

accepted the Plan; or (ii) not receiving or retaining any property under the Plan, and thus, the holders of such Claims or Interests are deemed to reject the Plan. As described in and as evidenced by the Voting Certification, the transmittal and service of the Plan, the Disclosure Statement, the Ballot, and the Confirmation Notice (the "Solicitation") were timely, adequate and sufficient under the circumstances.

J.    Notice. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) were served with the Confirmation Notice and have been given due, proper, timely, and adequate notice in accordance with the Interim Approval/Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice or resolicitation is required.

K.    Good Faith Solicitation. Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Debtors, their current members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) in compliance with the applicable provisions of the Interim Approval/Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in Bankruptcy Code section 1125 and are entitled to the protections afforded by Bankruptcy Code section 1125(e) and, to the extent such parties are listed therein, the exculpation provisions set forth in Article VIII of the Plan.

L.    <u>Voting</u>.  As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Plan, the Interim Approval/Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation.  As set forth in the Voting Certification, Class 4 voted to accept the Plan.  Based on the foregoing, and as evidenced by the Voting Certification, at least one Impaired Class of Claims has voted to accept the Plan in accordance with the requirements of Bankruptcy Code sections 1124 and 1126.

M.    <u>Releases, Exculpation and Injunction</u>.  Pursuant to Bankruptcy Code section 1123(b)(3) and Bankruptcy Rule 9019(a), the releases[3], settlements, compromises, exculpations and injunctions set forth in Article VIII of the Plan and as modified (as applicable) and implemented by this Confirmation Order, are fair, equitable, reasonable and in the best interests of the Debtors, their Estates, Creditors and Interest holders.  The Debtor Releases and the Consensual Third Party Releases are warranted, necessary and appropriate, and are, in the case of the Consensual Third Party Release, consensual, and such releases are supported by the facts and the circumstances of these Chapter 11 Cases and are consistent with Bankruptcy Code sections 105, 1123(b)(6), and 1129 and applicable law in this jurisdiction.  The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the settlements, releases, exculpations, and injunctions provided for in Article VIII of the Plan.

**Compliance with the Requirements of Bankruptcy Code Section 1129**

N.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy

---

[3]    "Debtor Releases" means the releases set forth in Article VIII.C of the Plan and "Consensual Third Party Releases" means the releases set forth in Article VIII.D of the Plan.

Rule 3016, the Plan is dated and identifies the Debtors as the proponents of the Plan, thereby satisfying Bankruptcy Code section 1129(a)(1).

(i) <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. With the exception of the Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which need not be classified, Article III of the Plan classifies eight (8) Classes of Claims and Interests in the Debtors. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. Accordingly, the Plan satisfies Bankruptcy Code sections 1122 and 1123(a)(1).

(ii) <u>Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2))</u>. Articles III.B and III.C of the Plan specify that Claims or Interests in Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims) and Class 3 (Other Priority Claims) (collectively referenced as the "<u>Unimpaired Classes</u>") are unimpaired under the Plan within the meaning of Bankruptcy Code section 1124, thereby satisfying Bankruptcy Code section 1123(a)(2).

(iii) <u>Specified Treatment of Impaired Class (11 U.S.C. § 1123(a)(3))</u>. Articles III.B and III.C of the Plan designate Claims in Class 4 (Revolver Claims), Class 5 (Term Loan Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Interests) and Class 8 (Interests in Holdco) (the "<u>Impaired Classes</u>") as impaired within the meaning of Bankruptcy Code section 1124 and clearly specifies the treatment of such Claims in that Class, thereby satisfying Bankruptcy Code section 1123(a)(3).

(iv)   <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment for each Claim or Interest in each respective Class thereby satisfying Bankruptcy Code section 1123(a)(4).

(v)   <u>Adequate Means for Plan Implementation (11 U.S.C. § 1123(a)(5))</u>.  The Plan provides adequate and proper means for the implementation of the Plan, including, without limitation, (i) the appointment of the Plan Administrator; and (ii) the procedures for making distributions to holders of Allowed Claims and Interests.  Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(5).

(vi)   <u>Prohibition of Issuance of Non-Voting Securities (11 U.S.C. § 1123(a)(6))</u>.  Bankruptcy Code section 1123(a)(6) does not apply to the Plan because the Debtors do not propose to issue any non-voting equity securities under the Plan and any charter of the Debtors will, after the Effective Date, no longer be valid and existing, except as otherwise set forth in Article IV.F of the Plan.

(vii)   <u>Designation of Officers, Directors or Trustees (11 U.S.C. § 1123(a)(7))</u>. The Plan does not appoint any officers or directors of the Debtors, except as otherwise set forth in Article IV.E.  Section 1123(a)(7) is thus inapplicable.

(viii)   <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>.  Bankruptcy Code section 1123(a)(8) applies only to individual debtors and is not applicable to these Chapter 11 Cases.

(ix)   <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>.  As permitted by Bankruptcy Code section 1123(b)(1), pursuant to Articles III.A and III.B of the Plan, Claims or Interests in the Impaired Classes are impaired and, pursuant to Articles III.A and III.B of the Plan, Claims in the Unimpaired Classes, are unimpaired.

(x)    <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  As permitted by Bankruptcy Code section 1123(b)(2) and Article V of the Plan, all executory contracts and unexpired leases, except as set forth in Article V.C & V.D of the Plan, shall be deemed rejected as of the Effective Date, unless such executory contract or unexpired lease: (i) was assumed and assigned previously or rejected previously by the Debtors, (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume filed on or before the Effective Date.  Rejection of these executory contracts and unexpired leases pursuant to the Plan satisfies the requirements of Bankruptcy Code section 365, and is expressly authorized by Bankruptcy Code section 1123(b)(2).  The Debtors have exercised reasonable business judgment in determining to reject the executory contracts and unexpired leases to be rejected under the Plan.  The rejection of each executory contract or unexpired lease rejected under the Plan shall be binding on the Debtors and each non-debtor party to each such executory contract or unexpired lease.

(xi)    <u>Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3))</u>. Except as otherwise provided for in this Confirmation Order, pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of this Confirmation Order constitutes the Court's approval of all the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates and all holders of Claims and Interests, and

are fair, equitable and well within the range of reasonableness. In concluding that the compromises and settlements contained in the Plan are substantively fair, the Court considered the following factors: (i) the probability of success of potential litigation compared to the benefit of such compromises and settlement; (ii) the likelihood of complex and protracted litigation and the risk and difficulty of collecting on the judgment; (iii) the proportion of creditors and parties in interest that support the compromises and settlements; (iv) the competency of counsel; and (v) the extent to which the compromises and settlement are the product of arm's length negotiations. The Court finds that each of these factors weigh in favor of approving the compromises and settlements embodied in the Plan. With respect to retention of Claims and Interests, as permitted by Bankruptcy Code section 1123(b)(3), Article IV of the Plan provides that, from and after the Effective Date, except as otherwise expressly provided in the Plan, the Plan Administrator may pursue (i) objections to, estimation of and settlements of Claims and Interests, other than Claims or Interests that are Allowed pursuant to the Plan and (ii) any cause of action of the Debtors' Estates not otherwise released under the Plan.

(xii)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). As permitted by Bankruptcy Code section 1123(b)(6), the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in Article VIII of the Plan. Based upon the facts and circumstances of these Chapter 11 Cases, the release, exculpation, and injunction provisions in the Plan, including the releases set forth in Article VIII.C and VIII.D of the Plan (to the extent modified herein), are fair, equitable, and reasonable, are supported by sufficient and valuable consideration, are an integral component of compromises and settlements underlying the Plan, are necessary for the realization of value for stakeholders, are the product of

extensive arm's length negotiations, or based on consent, were necessary to the formation of the consensus embodied in the Plan documents, are in the best interests of the Debtors and their Estates, Creditors, and Interest holders, and are, in light of the foregoing, appropriate.  The failure to implement the release, exculpation, and injunction provisions would seriously impair the Debtors' ability to confirm and consummate the Plan, and would possibly lead to the conversion of the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. Each Exculpated Person and Released Party afforded value to the Debtors and aided in the plan process.  Each Exculpated Person and Released Party played an integral role in the formulation of the Plan and has expended significant time and resources analyzing and negotiating the issues presented by these Chapter 11 Cases.  In addition, the Consensual Third Party Releases set forth in Article VIII.D of the Plan are consensual and the exculpations in Article VIII.E of the Plan do not relieve any party of liability for fraud, gross negligence or willful misconduct.  Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

O.    The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). Except as otherwise provided for or permitted by order of the Bankruptcy Court, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Interim Approval/Procedures Order in transmitting the Plan, the Disclosure Statement, the Ballot, and related documents and notices and in soliciting and tabulating the votes on the Plan.  Accordingly, the requirements of Bankruptcy Code section 1129(a)(2) are satisfied.

P.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).    The Debtors have proposed the Plan, including all documents necessary to effectuate the Plan, in good faith and not by any means forbidden by law, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(3).    The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.    The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.    The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to maximize distributions to all Creditors and Interest holders.    Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with Bankruptcy Code sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142, and are integral to the Plan and supported by valuable consideration.

Q.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).    Any payment made or to be made by the Debtors, or by any other person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or shall be subject to the approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(4).

R.    Directors, Officers, and Successors (11 U.S.C. § 1129(a)(5)).    The Plan does not appoint any officers or directors of the Debtors, except as otherwise set forth in Article IV.E.

S.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, Bankruptcy Code section 1129(a)(6) is not applicable in these Chapter 11 Cases.

T.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The liquidation analysis (attached as Exhibit C to the Disclosure Statement) and other evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of a Claim in an Impaired Class either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. The liquidation analysis provided in the Disclosure Statement, including the methodology used and estimations and assumptions made therein, and the evidence related thereto that was proffered at the Confirmation Hearing (a) is persuasive and credible as of the dates such evidence was prepared, presented, or proffered, (b) either has not been controverted by other persuasive evidence or has not been challenged, (c) is based upon reasonable and sound assumptions, and (d) provides a reasonable estimate of the liquidation value of the Debtors' Estates upon a conversion to a chapter 7 case. Recoveries pursuant to the Plan are equal to or in excess of those that would be available if the Debtors were liquidated pursuant to chapter 7 and, therefore, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

U.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Claims and Interests in Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims) and Class 3 (Other Priority Claims) are unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to Bankruptcy Code section

1126(f). Holders of Claims in Class 4 (Revolver Claims) voted to accept the Plan by at least two-thirds in amount and one-half in number. *See* Voting Certification, Exhibit A. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(8).

V.    Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Claims under the Plan of the type specified in Bankruptcy Code sections 507(a)(1) through 507(a)(8), if any, complies with the provisions of Bankruptcy Code section 1129(a)(9) because Article II of the Plan provides that, except to the extent an entity agrees to less favorable treatment: (i) each holder of an Allowed Administrative Claim (except with respect to Professional Fee Claims, which shall be paid upon Final Order of allowance by the Bankruptcy Court) shall be satisfied from the Priority Claims Reserve and (ii) each holder of an Allowed Priority Tax Claim shall either (a) be satisfied from the Priority Claims Reserve or (b) receive such other treatment as may be agreed upon by such holder and the Plan Administrator or otherwise determined upon an order of the Bankruptcy Court. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

W.    Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). The requirements of Bankruptcy Code section 1129(a)(10) are met with respect to the Debtors. *See* Voting Certification, Exhibit A. Claims and Interests in Class 1 (Secured Tax Claims), Class 2 (Other Secured Claims) and Class 3 (Other Priority Claims) are unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to Bankruptcy Code section 1126(f). Holders of Claims in Class 4 (Revolver Claims) voted to accept the Plan by at least two-thirds in amount and one-half in number. *See* Voting Certification, Exhibit A. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(10).

{1229.002-W0056335.2}

X.    Feasibility (11 U.S.C. § 1129(a)(11)).  The Plan satisfies Bankruptcy Code section 1129(a)(11).  The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Debtors being able to meet their financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(11).

Y.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  Pursuant to Article VII.C of the Plan, the Debtors are required to pay all statutory fees due and owing to the U.S. Trustee at the time of Confirmation on or before the Distribution Date.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(12).

Z.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  With respect to the Impaired Classes deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code even though the requirements of section 1129(a)(8) have not been met. The Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Classes that were deemed to reject the Plan.  The Plan is "fair and equitable" with respect to the non-accepting Claimants because no junior Class of Claims or Interests will receive or retain any property from the Debtors' Estates under the Plan on account of such Claims or Interests.  The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with the Confirmation Hearing regarding the Debtors' classification and treatment of

Claims: (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence. The Plan, therefore, satisfies the requirements of section 1129 of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

AA.  Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan that was solicited and brought to the Bankruptcy Court for confirmation in these Chapter 11 Cases. Accordingly, Bankruptcy Code section 1129(c) is inapplicable in these Chapter 11 Cases.

BB.  Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 and no governmental entity has objected to the confirmation of the Plan on any such grounds. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(d).

CC.  Non-Applicability of Certain Sections (11 U.S.C. §§ 1123(c), 1129(a)(13) - (16), 1129(e)). The Debtors are not individuals and do not owe any domestic support. The Debtors also have no obligation to pay for retiree benefits and are neither a nonprofit corporation nor a "small business." Accordingly, Bankruptcy Code sections 1123(c), 1129(a)(13) - (16) and 1129(e) do not apply to these Chapter 11 Cases.

DD.  Modifications of the Plan (11 U.S.C. § 1127). The modifications made to the Plan since the Solicitation do not constitute changes that materially or adversely change the treatment of any Claims or Interests and do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of acceptances or rejections of the Plan under Bankruptcy Code section 1126, nor do they require that holders of Claims or Interests against the Debtors be

afforded an opportunity to change previously cast acceptances or rejections of the Plan. Thus, the Debtors have complied in all respects with Bankruptcy Code section 1127 and Bankruptcy Rule 3019.

EE.    <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan, and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

FF.    <u>Implementation</u>. All documents and agreements necessary to implement the Plan, and all other relevant and necessary documents, have been negotiated in good faith and at arm's length, do not inappropriately conflict with applicable non-bankruptcy law, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

GG.    <u>Good Faith</u>. Based on the record before this Bankruptcy Court in these Chapter 11 Cases, the Debtors will be acting in good faith within the meaning of Bankruptcy Code section 1125(e) if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by this Confirmation Order, and shall not be liable under any applicable law, rule, or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale, or purchase of securities.

HH.    <u>Additional Findings Regarding Releases</u>. The releases provided pursuant to Article VIII of the Plan and as modified herein: (i) represent a sound exercise of the Debtors' business judgment; (ii) were negotiated in good faith and at arms' length; and (iii) are (a) in exchange for good and valuable consideration, (b) a good faith settlement and compromise of the

claims released thereby, (c) in the best interest of the Debtors and their Estates and (d) fair, equitable, and reasonable under the circumstances of these Chapter 11 Cases.

II.    Retention of Jurisdiction. Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

### General Decrees and Implementation

1.    Adequacy of the Disclosure Statement. The Disclosure Statement hereby is APPROVED on a final basis as containing adequate information within the meaning of Bankruptcy Code section 1125 and contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules and regulations.

2.    Confirmation of the Plan. The Plan, attached hereto as Exhibit A, and each of its provisions, shall be, and hereby is, CONFIRMED pursuant to Bankruptcy Code section 1129. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3.    Objections Overruled. All objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice or resolved in their entirety prior to, or on the record at, the Confirmation Hearing,

shall be, and hereby are, OVERRULED and DENIED in their entirety. All withdrawn objections are deemed withdrawn with prejudice.

4.    Plan Classification Controlling.    Unless otherwise set forth herein, the classifications of Claims and Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for the purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon by any Creditor or Interest holder as representing the actual classification of such Claims or Interests under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan), and (d) shall not be binding on the Debtors or holders of Claim or Interests for purposes other than for voting.

5.    Compromise and Settlement of Claims, Interests and Controversies. Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases and exculpation provisions set forth in Article VIII, constitute a good-faith compromise and settlement of all Claims and Interests, disputes, or controversies relating to the contractual, legal and subordination rights that holders of Claims or Interests may have against the Debtors with respect to any Allowed Claim or Interest and all Claims, Interests and controversies belonging to the Debtors or their Estates including any derivative claims; *provided, however*, that the settlement of Claims pursuant to Bankruptcy Rule 9019 shall only be applicable to Claimants whose Claims are (i) Unimpaired or (ii) did not opt-out of the releases thereunder. The entry of

this Confirmation Order shall constitute approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors and their Estates and holders of Claims and Interests, and is fair equitable and reasonable. Notwithstanding anything to the contrary in the Plan, Article IV.A thereof shall be read to solely apply to the Claims and Interests that are (i) Unimpaired; or (ii) held by parties who did not elect to opt-out of the Consensual Third Party Releases.

6. _Confirmation Notice_. The Debtors provided good and sufficient notice of the Confirmation Hearing and the deadlines for filing and serving objections to the Plan, which notices are hereby approved.

7. _Implementation of the Plan_. The Debtors, Post-Effective Date Debtors and the Plan Administrator each to the extent applicable and in accordance with the terms and conditions of the Plan, are authorized to (i) execute, deliver, file, and/or record such documents, contracts, instruments, releases, and other agreements, (ii) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the Plan, and (iii) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.

8. _No Action_. To the extent that, under applicable non-bankruptcy law, any action to effectuate the terms of the Plan would otherwise require the consent or approval of the members, managers, directors or officers of the Debtors, this Confirmation Order shall, pursuant to Bankruptcy Code sections 1123(a)(5) and 1142, constitute the consent or approval, and such actions are deemed to have been taken by unanimous action of the members, managers, directors and officers of the Debtors.

{1229.002-W0056335.2}

9.   Binding Effect.  From and after entry of this Confirmation Order, and subject to the occurrence of the Effective Date, except to the extent otherwise provided in the Plan or this Confirmation Order, the provisions of the Plan, as applicable, shall be binding on and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, all holders of Claims and Interests of the Debtors (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, and all other parties in interest in these Chapter 11 Cases.

10.   Vesting of Assets in the Post-Effective Date Debtors.   Notwithstanding Bankruptcy Code section 1141(b), the Debtors' assets shall vest in the Post-Effective Date Debtors, under the exclusive control of the Plan Administrator, in accordance with the provisions of the Plan and this Confirmation Order.

11.   Waiver of Certain Causes of Action.  Notwithstanding anything herein or in the Plan to the contrary, (a) the Post-Effective Date Debtors have not retained and, accordingly, shall not prosecute any Causes of Action (including Avoidance Actions) against current or former suppliers to, or landlords and customers of, the Debtors, their non-Debtor Affiliates, or the Purchaser, and (b) as of the Effective Date, any such Causes of Action (including Avoidance Actions) against current or former suppliers to, or landlords and customers of, the Debtors, their non-Debtor Affiliates, or the Purchaser, shall be deemed released and waived.

12.   Cancellation of Outstanding Interests.  As of the Effective Date, and as except as otherwise provided for in the Plan, except for purposes of evidencing a right to a distribution under the Plan or as otherwise provided for in the Plan or herein, (a) all agreements and other

23

documents evidencing the Claims or rights of any holders of such Claims against the Debtors, including, but not limited to, all contracts, notes and guarantees, and (b) all Interests, shall be deemed automatically cancelled and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Claims or Interests, shall be released.

13. _Cancellation of Existing Securities._  Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released.

14. _Directors, Officers and Board Members of the Debtors._  As of the Effective Date, except for purposes of evidencing a right to a distribution under the Plan or as otherwise provided for in the Plan or herein, all officers, directors and members of the Board of the Debtors shall be deemed to have resigned.

15. _Appointment of Plan Administrator._  As of the Effective Date, pursuant to the Plan, Matthew Kahn shall be appointed as Plan Administrator.

**Treatment of Executory Contracts and Unexpired Leases**

16. The provisions of Article VI of the Plan governing executory contracts and unexpired leases are hereby approved in their entirety.

17.    <u>Rejection of Contracts and Leases</u>.  On the Effective Date, except as otherwise provided under the Plan, and except to the extent that the Debtors either previously has assumed, assumed and assigned, or rejected an executory contract or unexpired lease by an order of the Bankruptcy Court or has filed a motion to assume or assume and assign an executory contract or unexpired lease prior to the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Bankruptcy Code section 365. This Confirmation Order shall constitute approval of any such rejections pursuant to Bankruptcy Code sections 365(a) and 1123.

18.    <u>Claims Based on Rejection of Contracts or Leases</u>.  Claims, if any, created by the rejection of executory contracts and unexpired leases, must be filed with the Bankruptcy Court and served on the Plan Administrator no later than: (i) any deadline established for creditors holding General Unsecured Claims to file proofs of claim against the Debtors; and (ii) twenty-one (21) days after the date of an order of the Bankruptcy Court approving such rejection.  Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of claim are not timely filed within that time period will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Any such Claims that are timely filed as provided herein shall be treated, to the extent Allowed, as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

19.    <u>Objections to Claims</u>.  Any objections to a proof of Claim, other than other than Professional Fee Claims or Claims or Interests that are Allowed pursuant to the Plan, shall be filed on or before the one hundred and eightieth (180th) day after the Effective Date, or such later

deadline for objecting to claims as may be fixed by an order of this Bankruptcy Court upon motion filed by the Plan Administrator (the "Claims Objection Bar Date"). Absent further order of this Bankruptcy Court, any objection not filed by such deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the proof of claim filed by the holder of such Claim. With respect to any Claim objection that was filed by the Debtors but not yet resolved by entry of a Final Order prior to the Effective Date, the Plan Administrator, shall be substituted in the place of the Debtors, as of the Effective Date, and shall have the right to continue to prosecute or to settle such objections in accordance with the terms of the Plan and this Confirmation Order.

20.    Setoffs and Recoupment.   Except with respect to Professional Fee Claims or Claims or Interests that are Allowed pursuant to the Plan, the Plan Administrator may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to Bankruptcy Code section 558 or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Post-Effective Date Debtors of any such Claim it may have against the holder of such Claim.

21.    Administrative Claim Bar Date.   Except as otherwise provided in the Plan, requests for payment of Administrative Claims must have been or be filed on or before the Administrative Claims Bar Date, which (i) was May 31, 2019 at 4:00 p.m. prevailing Eastern Time for Administrative Claims arising from the Petition Date through and including April 30, 2019 and (ii) is twenty-one (21) days after the Effective Date for Administrative Claims arising from April 30, 2019 through and including the Effective Date. Holders of Administrative Claims that are or were required to, but did not or do not, file and serve a request for payment of such

Administrative Claims by such applicable dates shall be entitled to no distribution under the Plan. Administrative Claims shall be deemed allowed upon the expiration of the Administrative Claim Objection Bar Date, unless (1) the Debtors have filed an objection to an Administrative Claim; or (b) sought relief from the Court to extend the Administrative Claim Objection Bar Date.

22.   _Professional Fee Claims_.   All final requests for Payment of Professional Fee Claims must be filed and served on the Post-Effective Date Debtors, the Plan Administrator, and such other entities who are designated by the Bankruptcy Rules, the Interim Compensation Order or any other applicable order of the Bankruptcy Court, and other necessary parties in interest no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court; _provided_, _however_, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Fee Claim must be Filed and served on the Post-Effective Date Debtors, the Plan Administrator and the requesting party no later than fourteen (14) days from the service of an application for final allowance of a Professional Fee Claim. To the extent necessary, the Plan and this Confirmation Order shall amend and supersede any previously entered order regarding the payment of Professional Fee Claims.

23.   _Post-Effective Date Expenses_.   From and after the Effective Date, the payment of the fees and expenses of the retained professionals of the Plan Administrator shall be paid solely from the Wind Down Amount and shall not be subject to an application and shall be made in the ordinary course of business and without approval of the Bankruptcy Court.

{1229.002-W0056335.2}

**Releases, Injunction and Exculpation**

24.    All release, injunction and exculpation provisions contained in the Plan, including, without limitation, those contained in Article VIII of the Plan, are hereby authorized, approved and shall be effective and binding on all persons and entities, to the extent expressly described in the Plan.

25.    <u>Debtor Releases</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Credit

Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released; provided, however, that neither the Debtors nor Enesco are releasing any claims related to claims arising under, or the enforcement of, the Purchase Agreement.

26.    Consensual Third Party Releases. As of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtors, and Released Party from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date

Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court sale and restructuring efforts, intercompany transactions, the Credit Agreement Documents, the Sale Transaction(s), the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that any right to enforce the Plan, the Confirmation Order, the Agency Agreement, and the Asset Purchase Agreement is not so released.  The parties listed on Exhibit B have elected to opt-out of the Consensual Third Party Releases and are neither Releasing Parties nor Released Parties pursuant to the Plan.

27.    Injunction. Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are

subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

28.    _Exculpation._ None of the Exculpated Persons shall have or incur any liability to any holder of a Claim or Interest for any Exculpated Claim, except for actual fraud, willful misconduct or gross negligence, and in all respects, the Exculpated Person shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

{1229.002-W0056335.2}

**Payment of Statutory Fees and Tax Issues**

29.    _Payment of Statutory Fees_.  All quarterly fees payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors on or before the Effective Date.  On and after the Effective Date, the Plan Administrator shall be responsible for (i) filing a post-Confirmation quarterly reports for the substantively consolidated Post-Effective Date Debtors and any pre-Confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all applicable U.S. Trustee fees for the Chapter 11 Cases until the entry of a final decree or until such Chapter 11 Cases are closed or dismissed.

30.    _Compliance with Tax Requirements_.  The Plan Administrator, and the Post-Effective Date Debtors, to the extent applicable, shall comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions made pursuant to the Plan shall be subject to any such withholding and reporting requirements.  The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the holder of an Allowed Claim or Interest complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder.  Notwithstanding any other provision of the Plan, (i) each holder of an Allowed Claim or Interest that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income and other tax obligations, on account of such distribution, and (ii) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements

satisfactory to the Plan Administrator to allow it to comply with its tax withholding and reporting requirements. To the extent arrangements have not been made or any necessary documentation has not been provided by such holder to the Plan Administrator, the distribution on such Allowed Claim or Allowed Interest shall be deemed Unclaimed Property.

31.    Exemption from Certain Taxes and Fees. Pursuant to Bankruptcy Code section 1146(a), any transfers from the Debtors to the Post-Effective Date Debtors or any other Person pursuant to, in contemplation of, or in connection with the Plan, and the issuance, transfer, or exchange of any debt, equity securities or other interest under or in connection with the Plan, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or government assessment. This Confirmation Order directs all relevant state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan and all documents necessary to evidence and implement any of the transactions and actions described in the Plan.

32.    Substantive Consolidation. In accordance with section 1141 of the Bankruptcy Code and Article VII.G. of the Plan, and pursuant to sections 105(a), 1123(a)(5)(B) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, all of the Debtors assets and liabilities, including Claims, shall be substantively consolidated for all purposes associated with confirmation and consummation of the Plan. Accordingly, for all purposes associated with the confirmation and consummation of the Plan, all assets and liabilities of the

Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of any other Debtor, to the extent such exist, shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligations of the Debtors. Moreover, (a) no Distribution shall be made under the Plan on account of any Claim held by one of the Debtors against any of the other Debtors, (b) no Distribution shall be made under the Plan on account of any Intercompany Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein, (c) all guarantees of any one of the Debtors of the obligations of any of the other Debtors, to the extent such exist, shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be the obligation of the consolidated Debtors' Estates, and (d) every Claim that is timely filed or to be filed in the Chapter 11 Cases of any of the Debtors shall be deemed Filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

**Resolution of Objections**

33.    _Maricopa County, Arizona_.    On the Effective Date, or as soon thereafter as reasonably practicable, the Debtors shall pay to Maricopa County, Arizona $262.18, on account of 2019 personal property taxes (the "_Maricopa Tax Claim_") in full and final satisfaction of Maricopa County's Allowed Secured Tax Claim.

34.    _Texas Franchise Tax Claims_.    The Texas Comptroller of Public Accounts (the "_Texas Comptroller_") and the Debtors genuinely dispute the legal and factual bases of the franchise tax audit claims asserted in Claim Nos. 487 and 488 (amended by Claim Nos. 570 and

575) in the aggregate amount of $287,426.55 (the "Franchise Tax Audit Claims"). Without either party admitting the facts relied on by the other or conceding the legal positions respectively asserted by them, the Debtors agree not to assert any tax refund claims against the State of Texas based on the Debtors' filed tax returns, whether for franchise taxes or otherwise, and the Texas Comptroller agrees to waive the Franchise Tax Audit Claims and any other audit claims based on the Debtors' filed tax returns. Upon the Texas Comptroller's acceptance of the Debtors' final franchise tax return (the "Final TX Tax Return"), the Debtors will pay any agreed outstanding liability thereunder within ten (10) business days after the Texas Comptroller notifies counsel for the Debtors that such return has been accepted. To the extent a dispute arises with respect to the Debtors' Final TX Tax Return and any obligations owed thereunder, all parties' rights, claims and defenses are reserved. Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts: (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Comptroller in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Texas Comptroller to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Texas Comptroller's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Comptroller, the interest rate shall be the statutory rate of interest, currently 6.5% per annum; and (5) the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D);

{1229.002-W0056335.2}

the Texas Comptroller's administrative expense claims are allowed upon filing, subject to objection on any grounds.

35.   _Local Texas Taxing Authorities._   Notwithstanding any other provisions contained in the Plan or this Confirmation Order, with respect to the claims filed by Local Texas Taxing Authorities[4], the Post-Effective Date Debtors shall pay the Local Texas Taxing Authorities' Allowed Secured Tax Claims no later than thirty (30) days after the expiration of the Claims Objection Bar Date if no objection to the Local Texas Taxing Authorities' Secured Tax Claims has been Filed; _provided_ that, if an objection to the Local Texas Taxing Authorities' Secured Tax Claims is filed, any such Claim shall be paid no later than fifteen (15) days following the date, if any, the Bankruptcy Court enters a Final Order determining such Claim is an Allowed Secured Tax Claim. The Local Texas Tax Authorities shall retain their valid and enforceable liens for these taxes (as ultimately allowed) with the same validity, extent and priority under Texas state law upon the proceeds from the sale of their collateral, regardless of whether such proceeds are held by the Debtors or another party, until all the Local Texas Taxing Authorities' Allowed Secured Tax Claims are paid in full.  If the Local Texas Taxing Authorities' Allowed Secured Tax Claims are not paid in full on or before January 31, 2020, then they shall be entitled to be paid with interest according to applicable non-bankruptcy law.

36.   _Landlord Objections._   Notwithstanding any of the releases, discharges, injunctions or waivers set forth in the Plan, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to an unexpired lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy

---

[4]   For purposes of this paragraph, the "Local Texas Taxing Authorities" are Bexar County, Cameron County, Cypress-Fairbanks ISD, Dallas County, Ector CAD, El Paso, Fort Bend County, Frisco, Galveston County, Harris County, Hidalgo County, Irving ISD, Jefferson County, Lewisville ISD, McAllen, McLennan County, Montgomery County, Nueces County, Tarrant County, Travis County and Victoria County, Texas, _Denton, Texas, Williamson, Texas and Midland Central Appraisal District._

or non-bankruptcy law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease with the Debtors or the Post-Effective Date Debtors.

37.    <u>United States</u>.  Notwithstanding any provision to the contrary in the Plan, this Order or any supplementing plan documents (collectively, "<u>Documents</u>"), as to the United States:

(a)    nothing in the Documents shall: (1) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; (2) release, enjoin or discharge any non-Debtor from any claim, liability, suit, right or cause of action of the United States; (3) require the United States to file a request for payment of an expense described in Section 503(b)(1)(B) and (C) as a condition of its being an Allowed Administrative Claim as provided in Section 503(b)(1)(D) of the Bankruptcy Code; (4) affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Post-Effective Date Debtors or any non-Debtor; (5) cause a late filed claim of the United States to be disallowed pursuant to the Plan if it would otherwise be allowed pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or order of the Bankruptcy Court; (6) be construed as a compromise or settlement of any claim, liability, suit, cause of action or interest asserted by the United States; and (7) cause any proof of claim, whether amended or not, to be disallowed or expunged pursuant to the procedures set forth in Article VII.G of the Plan;

(b)    Administrative Claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall be paid on the effective date of the Plan cash equal to the allowed amount of such claim and shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  To the extent the Allowed Priority Tax Claims of the United

States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date as set forth in Section 1129(a)(9) and Section 511(b) of the Bankruptcy Code;

(c)    Nothing in the Documents shall effect a release, injunction or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any liability arising (i) out of pre-petition or post-petition tax periods for which a required return has not been filed; or (ii) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability (i) arising out of pre-petition or post-petition tax periods for which a required tax return has not been filed or (ii) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any liability of the Debtors to the United States arising (i) out of pre-petition or post-petition tax periods for which a required return has not been filed or (ii) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code;

(d)    Without limiting any of the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Post Effective Date Debtors, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan;

(e)     Notwithstanding the forgoing, the Debtors retain all of their rights to object to any Claims asserted by the United States; and

(f)     With respect to the Army and Air Force Exchange Service ("AAFES"), the Navy Exchange Service Command ("NEXCOM") and the Marine Corps Community Services ("MCCS"), the Debtors, AAFES, NEXCOM and MCCS have reached an agreement in principle regarding the *Debtors' Motion for Entry of an Order Authorizing the Debtors to (I) Reject Certain License Agreements Nunc Pro Tunc And (II) Granting Related Relief* [Docket No. 224] (the "Rejection Motion"). To the extent that the Debtors, AAFES, NEXCOM and MCCS are unable to formally and finally memorialize their agreement in principle, the parties respective rights, claims and defenses related to the Rejection Motion are hereby preserved.

**Miscellaneous**

38.     Immaterial Modifications. Without need for further order or authorization of the Bankruptcy Court, but subject to any limitations set forth in the Plan, the Debtors are authorized and empowered to make any and all modifications to any and all documents that is necessary to effectuate the Plan that does not materially modify the terms of such documents and are consistent with the Plan and this Confirmation Order.

39.     Effect of Confirmation on Modifications. Entry of this Confirmation Order means that all modification or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

40.     Documents and Instruments. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and

instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

41. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived pursuant to Article IX of the Plan.

42. <u>Vacatur of Order</u>. If this Confirmation Order is vacated or deemed vacated, then the Plan shall be deemed null and void in all respects, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the holder of any Claim against, or Interest in, the Debtors, (iii) prejudice in any manner any right, remedy or claim of the Debtors, or (iv) be deemed an admission against interest by the Debtors or any other Person or Entity.

43. <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain and have jurisdiction over any matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to Bankruptcy Code sections 105(a) and 1142, including, but not limited to the matters set forth in Article XI of the Plan.

44. <u>Forum for Actions</u>. Without permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Plan Administrator in its capacity as such, with respect to its status, duties, powers, acts or omissions in such capacity in any other forum than the Bankruptcy Court.

45. <u>Conflicts</u>. To the extent that any provisions of the Disclosure Statement or any other order (other than this Confirmation Order) entered in these Chapter 11 Cases (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict

with or are in any way inconsistent with any provision of the Plan, this Confirmation Order shall govern and control except as expressly set forth herein or in the Plan.

46.   Severability of Plan Provisions.  Each term and provision of the Plan, as it may have been amended by this Confirmation Order, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) non-severable and mutually dependent.

47.   Waiver or Estoppel.  Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, papers filed with this Bankruptcy Court, or stated on the record at the Confirmation Hearing, prior to the Confirmation Date.

48.   Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

49.   Applicable Non-Bankruptcy Law.  Pursuant to Bankruptcy Code sections 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, and related documents or any

amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

50.    Notice of Order. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as Exhibit C, to all parties who currently hold a Claim or Interest in this case, including the U.S. Trustee, the Internal Revenue Service, the United States attorney for the District of Delaware, the SEC, and any party filing a notice pursuant to Bankruptcy Rule 2002. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and occurrence of the Effective Date.

51.    Term of Injunctions or Stays. The injunctions contained in the Plan, including, but not limited to those provided in Article VIII of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays pursuant to Bankruptcy Code sections 105 or 362 arising under or entered during these Chapter 11 Cases, or otherwise, and in existence on the date hereof, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of the Plan or this Confirmation Order, as applicable.

52.    No Waiver. The failure to specifically include or refer to any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

53.    <u>Waiver of Stay</u>.  The requirement under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order is hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or other applicable rule.


Dated:  June 12, 2019
        Wilmington, Delaware

                                        Kevin Gross
                                        United States Bankruptcy Judge